## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| PAUL WEIDMAN, RAUL VALENTIN, ERICA GOMEZ, PERRY BURTON, AND TERESA PERRY, individually and on behalf of all others similarly situated; | Case No.: |
| | **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| FORD MOTOR COMPANY, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiffs Paul Weidman, Raul Valentin, Erica Gomez, Perry Burton, and Teresa Perry (collectively, "Plaintiffs"), individually and on behalf of the other members of the below-defined nationwide and statewide classes they respectively seek to represent (collectively, the "Class"), hereby allege against Ford Motor Company ("Defendant" or "Ford"), upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon investigation, as follows:

## I.  <u>NATURE OF THE CASE</u>

1.     Plaintiffs bring this case, seeking damages and equitable relief, individually and on behalf of the other Class members, each of whom purchased or leased one or more model year 2013-2018 Ford F-150 trucks (the "Class Vehicles").

2.     Each of the Class Vehicles contains a defective Hitachi front brake master cylinder ("Master Cylinder") that places it at risk of suddenly and unexpectedly losing braking ability.

3.     A brake master cylinder is an essential component of hydraulic brake systems that controls the amount of brake fluid pushed to brake calipers located on each wheel. When properly functioning, the master cylinder ensures that enough hydraulic pressure from the brake fluid is supplied to the calipers so that they can clamp shut on the wheel rotors in response to the driver's application of the brake pedal.

4.     In the Class Vehicles, piston cup seals within the Master Cylinders roll within their grooves and become unseated, allowing brake fluid to escape from the Master Cylinder (the "Master Cylinder Defect"). This loss of brake fluid leads to a loss of hydraulic pressure and a resulting loss of brake function for the Class Vehicles' front brake circuits. Front brake circuits are responsible for 75% of a vehicle's braking force, and thus the Master Cylinder Defect results in an almost complete loss of stopping power.

5.     Owners and lessees of Class Vehicles, including Plaintiffs Paul Weidman and Teresa Perry, have experienced sudden loss of braking force in life-threatening situations, such as while driving on highways or in congested traffic, and have recounted rolling through stop signs and red lights due to brake failure, caused by the Master Cylinder Defect.

6.     Scores of complaints documenting the effects of the Master Cylinder Defect have been submitted to the National Highway Traffic Safety Administration ("NHTSA"), as well as other websites and Ford owner forums. On information and belief, these complaints represent only a small fraction of the number of actual incidents experienced by consumers.

7.     The Master Cylinder Defect should not have come as a surprise to Ford, given the unique design of the Master Cylinders. Prior to the use of the Master Cylinder in the F-150, Ford used brake master cylinders manufactured by Bosch instead. The Bosch master cylinders used two, balanced, cup seals per piston to contain brake fluid, which were tightly fitted around the outside of the piston bodies, rather than seated inside the master cylinder bore. The Master Cylinders supplied by Hitachi, on the other hand, rely on a single cup seal per piston that is fitted within a groove in the Master Cylinder bore. Given the lack of concern that the Hitachi design shows for brake fluid containment, Ford should have expected the resultant Master Cylinder failures.

8.     Beginning with model year 2013 F-150s, there was a dramatic spike in online complaints and warranty claims for loss of braking power due to the Master Cylinder Defect. Despite this, Ford has continued installing the same Master Cylinder in its F-150s through the present day.

9.     The rash of complaints concerning the loss of braking power, including in potentially deadly circumstances, has continued unabated in the Class Vehicles. Purchasers who complain to Ford about the effects of the Master Cylinder Defect are frequently told by Ford service professionals that failure events are commonplace among the Class Vehicles.

10.    In February 2016, the National Highway Traffic Safety Administration's ("NHTSA") Office of Defects Investigation opened a preliminary evaluation into reports of brake fluid leaking from the Master Cylinder in 2013-14 Ford F-150s with 3.5L Engines. In response, in May 2016, Ford Motor Company issued a safety recall 16S24 to address loss of the front brake circuit function in a subset of model year 2013 and 2014 Ford F-150, specifically those F-150s with 3.5L Ecoboost engines that were built between August 1, 2013 and August 31, 2014.

11.    In Safety Recall 16S24, Ford *admitted* the existence of the Master Cylinder Defect. Ford cited risk of a "compromised" primary cup seal and the corresponding loss of brake fluid "into the brake booster." The recall also notified dealers that "the driver may experience a change in brake pedal travel and feel, and

4

reduced brake function in the front wheels. . . ." Ford warned, "[r]educed brake function in the front wheels can extend stopping distance, increasing the risk of a crash."

12.     The recall, however, was grossly inadequate. Not only did the recall not even address all affected model year 2013-14 F-150s, it did not address any model year 2015-18 vehicles, even though all model year 2013-18 F-150s vehicles share the same Master Cylinder as the recalled vehicles, and all model year 2013-18 F-150s have the Master Cylinder Defect. Further, the recall provides an ineffective remedy even for the vehicles that it does address. It merely calls for the replacement of the Master Cylinder with a new Master Cylinder that is internally identical to that which failed. In other words, the recall simply calls for the replacement of one defective part with another defective part.

13.     Based on the number of Master Cylinder failures reported in 2013 F-150s through unabated complaints and warranty repair requests, Ford has known about the Master Cylinder Defect since no later than 2013. The smattering of internal documents that Ford produced to NHTSA further reveal Ford's knowledge of the Master Cylinder Defect. For example, in June 2015, Jessica Ruiz, an engineer at Ford's Dearborn Truck Plant, sent an email entitled: "Hitachi Master Cylinders – F150 ECBs and Concerns," marked "High" importance. She stated: "Master Cylinder leaks are getting a lot of attention at Ford."

14. Despite its awareness of the Master Cylinder Defect, Ford sold hundreds of thousands of Class Vehicles. Ford did so despite knowing that the dangerously unreliable Master Cylinders fail suddenly and unexpectedly, posing a safety hazard to Plaintiffs, the other Class members, and others sharing the road with Class Vehicles.

15. As a result of Ford's unfair, deceptive, and fraudulent business practices, Plaintiffs and the other Class members were damaged in that they purchased Class Vehicles that they would not have purchased, or at least paid more for their Class Vehicles than they would have paid, had they known about the Master Cylinder Defect.

## II. <u>JURISDICTION AND VENUE</u>

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) and (d) because Plaintiffs are citizens of a different state than Defendant, there are more than 100 Class members nationwide, and the amount in controversy for the Class exceeds $5,000,000 exclusive of costs and interest.

17. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs assert claims under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

18. This Court has personal jurisdiction over Ford because Ford has its principal place of business in the State of Michigan and in this district.

19.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Ford resides in this district. Additionally, Ford has marketed, advertised, sold, and leased Class Vehicles within this district.

### III.   PARTIES

**A.     Plaintiffs**

    **1.     Alabama**

20.     Plaintiff Paul Weidman is a citizen of Alabama and a resident of Pelham, Alabama. Mr. Weidman owns a 2017 Ford F-150, which he purchased new from Stivers Ford in Montgomery, Alabama in 2017.

21.     Before purchasing his F-150, Mr. Weidman reviewed Ford's promotional materials regarding the vehicle and interacted with at least one sales representative at an authorized Ford dealership. Also prior to purchase, Mr. Weidman discussed the vehicle's features with sales representatives at Stivers Ford and two other Alabama authorized Ford dealerships, Long Lewis Ford and Ernest McCarty Ford.

22.     Ford failed to disclose the Master Cylinder Defect to Mr. Weidman before he purchased his F-150, despite Ford's knowledge of the defect, and Mr. Weidman, therefore, purchased his F-150 with the incorrect understanding that it would be a safe and reliable vehicle. Had Mr. Weidman known about the Master

Cylinder Defect, he would not have purchased his F-150, or certainly would not have paid as much for it as he did.

23.     Within five months of purchasing his vehicle, the brakes on Mr. Weidman's F-150 suddenly failed. After pulling off the road to assess his vehicle's condition, Mr. Weidman cautiously proceeded to Ernest McCarty Ford for diagnosis and repair, using only the rear brakes to stop. Technicians at Ernest McCarty diagnosed a failed master cylinder. He had less than 6,000 miles on his vehicle at the time of Master Cylinder failure.

### 2.     Florida

24.     Plaintiff Raul Valentin is a citizen of Florida and a resident of Davenport, Florida. Mr. Valentin owns a 2017 Ford F-150, which he purchased new from Sun State Ford in Orlando, Florida in 2017.

25.     Before purchasing his F-150, Mr. Valentin reviewed Ford's promotional materials regarding the vehicle and interacted with at least one sales representative at an authorized Ford dealership.

26.     Ford failed to disclose the Master Cylinder Defect to Mr. Valentin before he purchased his F-150, despite Ford's knowledge of the defect, and Mr. Valentin, therefore, purchased his F-150 with the incorrect understanding that it would be a safe and reliable vehicle. Had Mr. Valentin known about the Master

Cylinder Defect, he would not have purchased his F-150, or certainly would not have paid as much for it as he did.

27.    Plaintiff Erica Gomez is a citizen of Florida and a resident of Belle Glade, Florida. Ms. Gomez owns a 2016 Ford F-150, which she purchased new from Al Packer Ford Lincoln in West Palm Beach, Florida in 2016.

28.    Before purchasing her F-150, Ms. Gomez reviewed Ford's promotional materials regarding the vehicle and interacted with at least one sales representative at an authorized Ford dealership.

29.    Ford failed to disclose the Master Cylinder Defect to Ms. Gomez before she purchased her F-150, despite Ford's knowledge of the defect, and Ms. Gomez, therefore, purchased her F-150 with the incorrect understanding that it would be a safe and reliable vehicle. Had Ms. Gomez known about the Master Cylinder Defect, she would not have purchased her F-150, or certainly would not have paid as much for it as she did.

**3.    Georgia**

30.    Plaintiff Perry Burton is a citizen of Georgia and resident of St. Mary's, Georgia. Mr. Burton owns a 2016 Ford F-150, which he purchased new from Murray Ford in Kingsland, Georgia in 2016.

31.     Before purchasing his F-150, Mr. Burton reviewed Ford's promotional materials regarding the vehicle and interacted with at least one sales representative at an authorized Ford dealership.

32.     Ford failed to disclose the Master Cylinder Defect to Mr. Burton before he purchased his F-150, despite Ford's knowledge of the defect, and Mr. Burton, therefore, purchased his F-150 with the incorrect understanding that it would be a safe and reliable vehicle. Had Mr. Burton known about the Master Cylinder Defect, he would not have purchased his F-150, or certainly would not have paid as much for it as he did.

### 4.     Texas

33.     Plaintiff Teresa Perry is a citizen of Texas and resident of Palacios, Texas. Ms. Perry owns a 2017 Ford F-150, which she purchased new from Port LaVaca Ford in Port LaVaca, Texas in 2017.

34.     Before purchasing her F-150, Ms. Perry reviewed Ford's promotional materials regarding the vehicle and interacted with at least one sales representative at an authorized Ford dealership.

35.     Ford failed to disclose the Master Cylinder Defect to Ms. Perry before she purchased her F-150, despite Ford's knowledge of the defect, and Ms. Perry, therefore, purchased her F-150 with the incorrect understanding that it would be a safe and reliable vehicle. Had Ms. Perry known about the Master Cylinder Defect,

she would not have purchased her F-150, or certainly would not have paid as much for it as she did.

36.     On October 1, 2017, Ms. Perry was on the highway, driving from Texas to Idaho for work, pulling a trailer and travelling alone. The brakes on her F-150 suddenly failed. She pumped her brakes and the vehicle did not stop. After a moment of intense fear, she was able to use the trailer brake controller to stop her vehicle. A dealership, Roswell Ford, informed her that her master cylinder had failed. She was stranded in Roswell, New Mexico for two days, stuck in her trailer, with little funds and fear for her safety. She had less than 20,000 miles on her vehicle at the time of Master Cylinder failure.

**B.     Defendant**

37.     Defendant Ford Motor Company is a Delaware corporation with its principal place of business at One American Road in Dearborn, Michigan. Ford manufactured, sold, and warranted the Class Vehicles.

## IV.     FACTUAL ALLEGATIONS

**A.     Master Cylinder Design and Function.**

38.     A master cylinder is the component in vehicle braking systems that controls the amount of brake fluid sent to the brake calipers in response to the driver's compression or release of the brake pedal.

39.     As the driver depresses the brake pedal, pistons within the master cylinder slide forward within their bore. As the pistons slide, they force brake fluid toward the calipers, causing an increase in hydraulic pressure.

40.     The hydraulic pressure activates larger pistons connected to the brake calipers, causing them to clamp down on the wheel rotors, stopping wheel rotation. Upon release of the brake pedal, brake fluid pressure decreases as the fluid travels back toward the master cylinder and its reservoir via the brake lines.

41.     A master cylinder comprises a metal housing divided into two chambers, which each house a single piston that controls the flow of brake fluid through the brake lines, to and from the brake calipers. A plastic reservoir sits atop the housing and stores brake fluid required to drive the hydraulic braking system.

42.     The image below depicts a Hitachi F150 Master Cylinder and its associated elements:



43.     Master cylinders must handle brake fluid pressures of up to 1,500 pounds per square inch (PSI). A loss of brake fluid will result in a loss of hydraulic pressure, and thus a loss in braking force.

44.     The pistons within a master cylinder are fitted with piston cup seals, which are responsible for keeping the brake fluid within the master cylinder's bore and preventing the fluid from escaping upstream toward the brake booster (a mechanism connected to the master cylinder that provides a pneumatic boost to the braking force applied by the driver) and the pedal linkage. Properly fitted piston cup seals are required to maintain hydraulic pressure within each (front and rear) brake circuit.

**B.      The Master Cylinder's Unique Design.**

45.     All 2013-18 Ford F-150s use Master Cylinders of the same design, supplied by Hitachi.

46.     The pistons within these Master Cylinders are fitted with just a single cup seal responsible for containing pressurized brake fluid within the Master Cylinders. This is unusual, as the pistons within master cylinders are usually fitted with two cup seals to ensure that fluid does not leak out of the master cylinders. The Master Cylinder places twice the sealing load on its single piston cup seal compared to the load borne by the dual seals in more common two-seal-per-piston designs. Simply put, Hitachi asks its one piston cup seal to do the job that is typically

13

performed by two seals working in tandem (as in the Bosch design explained in Section IV.C, below).

47.     Not only does the Master Cylinder use one seal per piston, it also relocates the usual placement of the cup seal from the piston to the Master Cylinder's bore. Rather than surrounding the piston, like a rubber band around a baseball bat, the single cup seal rests in a groove machined into the bore of the Master Cylinder.

48.     The images below show an exploded view of the Master Cylinder and the primary piston cup seal as installed in and removed from the Master Cylinder.



Exploded view of the Master Cylinder used in the Class Vehicles



Primary (front brake circuit) piston cup seal that rolls/twists in its groove.



Piston cup seal removed from the Master Cylinder.



Single piston seal visible as the black rubber ring seated in groove within the Master Cylinder's bore.

### C. The Bosch Master Cylinder Previously Installed In F-150s Offers a Contrasting Design That Is Less Susceptible to Cup Seal Roll and Brake Fluid Leakage.

49.    Before it switched to the Master Cylinders, Ford installed brake master cylinders manufactured by Bosch in its F-150 trucks. A review of online complaints available in the NHTSA complaint database and aggregated at carcomplaints.com reveals few, if any, instances of fluid leaking from the master cylinder. The failure complaint volume disparity can be attributed to the way the unique Hitachi design deviates from the Bosch design with respect to piston sealing.

50.    The Bosch design shown immediately below features pistons that are balanced by piston cup seals positioned at each end of the piston body. The piston cup seals ensure that the pistons travel smoothly within the piston bore, while maintaining proper horizontal alignment.





51.	Unlike the Hitachi design that only uses a single cup seal per piston, the Bosch design uses two cup seals per piston to contain brake fluid pressures. Further, Bosch installed the cup seals on the outside of the piston bodies, rather than in the master cylinder bore. The Bosch piston cup seals are also robust and well secured to the piston bodies. The image below shows the Bosch-designed piston cup seals.



Bosch Primary Piston and Secondary Piston with balanced cup seals

52.     The Bosch piston cup seals are not susceptible to rolling/twisting during operation, and the robust build greatly decreases their vulnerability to foreign particles/contaminants or machining remnants.

**D.     Failure of the Master Cylinder Throughout Model Year 2013-18 Ford F-150s.**

53.     The Master Cylinder Defect involves failure of the piston cup seals in the Master Cylinders. Specifically, the seals roll and become unseated in their grooves, losing perfect union with the pistons, and allowing pressurized brake fluid to escape out of the Master Cylinder and back toward the brake booster. Perfect

union between piston and seal is required to keep pressurized brake fluid within the Master Cylinders and maintain hydraulic braking force.

54.     Inspection reveals that model year 2013-18 F-150s all have internally identical Master Cylinders. Thus, the Master Cylinder Defect is a uniform defect that exists throughout the Class Vehicles. This is also evident from the uniformity of the complaints, and diagnoses, which show brake failure and Master Cylinder leakage at extraordinarily low mileages.

55.     Beginning with model year 2013 F-150s, online resources reveal an exceptionally high number of consumer complaints regarding the Master Cylinder Defect.

56.     For example, a search of the term "master cylinder" in NHTSA's complaint database reveals seventy complaints indicative of the Master Cylinder Defect in model 2013 F-150s, sixty-two complaints indicative of the Master Cylinder Defect in 2014 F-150s, fifty-four complaints indicative of the Master Cylinder Defect in 2015 F-150s, and fifty-three complaints indicative of the Master Cylinder Defect in 2016 F-150s.

57.     These are only complaints recorded in a single database, but the significance of this volume of complaints is evident from a comparison with the number of master-cylinder-related complaints for earlier versions of the Ford F-150 and competing pickup trucks.

58.     For example, while a search for the term "master cylinder" in NHTSA's complaint database reveals 239 complaints indicative of the Master Cylinder Defect in model years 2013-16 F-150s, that same search yields only eleven results for 2009-12 F-150s. This is a 2,072% increase.

59.     A search for the term "master cylinder" in NHTSA's complaint database reveals only three complaints for model years 2013-16 Chevrolet Silverado 1500s. The NHTSA database thus reveals 7,867% more master cylinder complaints for model year 2013-16 F-150s than for Chevrolet Silverado 1500s of the same years.

60.     A search for the term "master cylinder" in NHTSA's complaint database reveals only two complaints for model years 2013-16 Dodge Ram 1500s. The NHTSA database thus reveals 11,850% more master cylinder complaints for model year 2013-16 F-150s than for Dodge Ram 1500s of the same years.

61.     A search for the term "master cylinder" in NHTSA's complaint database reveals zero complaints for model years 2013-16 Toyota Tundras.

62.     A search for the term "master cylinder" in NHTSA's complaint database reveals zero complaints for model years 2013-16 Nissan Titans.

**E.    The Master Cylinder Defect Presents an Unreasonable Safety Risk.**

63.     The Master Cylinder Defect causes a significant decrease in brake power, which results in a significant increase in stopping distance. Further, the

20

Master Cylinder Defect causes an increase in the distance the brake pedal must travel before any braking power is activated. In short, it creates a serious risk to the safety of Class Vehicle occupants and others on the road.

64. When a Class Vehicle's Master Cylinder front braking circuit fails, the driver is left with, at most, 25% braking force, assuming the rear circuit is still fully functional. The spontaneous loss of 75% of braking force dramatically increases stopping distances and crash risks.

65. Examples of the dangers posed by Master Cylinder Defect are included within this complaint, starting at paragraph 86.

**F.     Ford Admits the Master Cylinder Defect, But Issues an Inadequate Recall.**

66. On May 23, 2016, Ford instituted a safety recall, recall number 16S24, for certain F-150s because of a loss of brake fluid from the Master Cylinder reservoir leaking into the brake booster.

67. In connection with the recall, Ford identified a rolling of the primary piston cup seal in the Master Cylinder as the cause of the leakage.

68. Ford stated, in connection with the recall, that it was aware of nine accident allegations relating to the defect. Ford admitted that the defect can lead to "extended stopping distance, increasing the risk of a crash."

69. Ford, however, limited the recall to a subset of model year 2013-14 F-150s. Specifically, it limited the recall to model year 2013-14 F-150s equipped with

3.5L Ecoboost engines that were manufactured between August 1, 2013 and August 31, 2014. Ford's 16S24 recall excluded all other F-150 trucks equipped with 3.7L TI-VCT, 5.0L TI-VCT and 6.2L 2-Valve engines, yet were manufactured during the same window.

70.    The recall was inadequate. 2013-14 F-150s that were not recalled have the same Master Cylinder as the recalled vehicles and are equally plagued by the Master Cylinder Defect. This is evident from numerous complaints regarding the Master Cylinder Defect in 2013-14 F-150s that were excluded from the recall. For example:

- *NHTSA ID Number 1120934, 2014 F-150 (3.5L GTDI Ecoboost manufactured after August 31, 2014), 22,901 miles*

  I WAS DRIVING ABOUT 35 MPH AND COMING TO A RED LIGHT. I PRESSED THE BRAKE PEDDLE AND IT WENT ALL THE WAY TO THE FLOOR. THERE WAS A WARNING CHIME AND THE DASH ILLUMINATED A BRAKE SERVICE WARNING AND A LOW BRAKE FLUID LEVEL WARNING. THERE WERE VIRTUALLY NO BRAKES AND I HAD TO DOWN SHIFT THE TRANSMISSION AND USE THE EMERGENCY BRAKE TO COME TO A STOP. JUST IN TIME BEFORE GOING THROUGH THE INTERSECTION UNDER A RED LIGHT. WE HAD THE TRUCK TOWED TO A FORD DEALERSHIP AND THEY STATED THAT ALL OF THE FLUID IN THE MASTER CYLINDER HAD LEAKED INTO THE BRAKE BOOSTER. THEY SAID THAT OUR TRUCK DID NOT MEET THE PROPER DATE TO BE TAKEN CARE OF UNDER THE KNOWN RECALL . . .FOR THE EXACT SAME PROBLEM. THAT RECALL ENDED ON TRUCKS BUILT UP TO 8/14 AND OUR TRUCK WAS BUILT ON 12/14.

- *NHTSA ID Number 10839847, 2013 F-150 (5.0L 4V) 14,813 miles*

  BRAKE MASTER CYLINDER FAILED RESULTING IN TOTAL LOSS OF BRAKING. THE VEHICLE HAS A 5.0L V8 ENGINE. I WAS APPROACHING A LEFT TURN AND APPLIED PRESSURE TO MY BRAKE PEDAL AND LOST BRAKING AT THAT POINT. VERY LOW MILEAGE ON THE VEHICLE WHEN IT FAILED, 14,813.

- *NHTSA ID Number 10855278, 2013 F-150 (5.0L 4V) 30,000 miles*

  ON JANUARY 13, 2015 I WAS INVOLVED IN A HEAD COLLISION WITH A 18 WHEELER. THE SCENARIO WAS A TWO LANE HIGHWAY (HWY 67, LAKESIDE , CA), THERE IS MINIMAL ROOM FOR ERROR AND UPON IMPACT. I REMEMBER MY BRAKES DEPRESSING COMPLETELY TO THE FLOOR BOARD, YET AS THOUGH THERE WAS NO AIR LINES. IT HAS BEEN A LONG RECOVERY, WHICH IS WHY CERTAIN THINGS ARE RETURNING SLOWLY. YET, I REMEMBER THAT MY BRAKES FELT OFF OR UN-RESPONSIVE BEFORE IMPACT.

- *NHTSA ID Number 10991703, 2014 F-150 (5.0L 4V) 11,771 miles*

  THERE WAS A SUDDEN LOOSE OF BRAKING IE THE PEDAL SUDDENLY WENT TO THE FLOOR AND A CHECK OF THE MASTER CYLINDER SHOWED ALL FLUID WAS GONE, THIS HAPPEN AFTER I PARKED THE TRUCK ... ADDED A PINT AND CONTINUED TO MY APPOINTMENT (2 MILES) AFTER PARKING ... I HAD NO BRAKES AGAIN ... CALLED TOW TRUCK AND HAD TRUCK TAKEN TO A FORD DEALER FOR REPAIR, UNDER WARRENTY ... ONLY 11,771 MILES ON THE TRUCK ... LUCKLY THIS DID NOT HAPPEN ON THE HIGHWAY OR MIGHT HAVE HAD AN ACCIDENT.

71.    Further, the recall provides for the replacement of the Master Cylinder

with a new Master Cylinder that is identical to that which failed. ***In other words, the***

*recall simply calls for the replacement of one defective part with another defective part*.

72.     Further still, the recall provides no relief to owners and lessees of model year 2015-18 F-150s, which share the exact same Master Cylinder as the recalled vehicles. The omission of these later model vehicles is unconscionable, as there has been no decrease in reported complaints of the Master Cylinder Defect for model year 2015-16 F-150s, and it is clear that the Master Cylinder Defect which formed the basis for safety recall 16S24 still exists in all of the Class Vehicles.

73.     Notably, owners of post-2014 model year F-150s have reported long delays for repair when their Master Cylinders fail because the recall has created a significant backorder for Master Cylinders:

- *NHTSA ID Number 10881590, 2015 F-150, 15,000 miles*

  TRUCK HAS BEEN AT DEALER FOR A WEEK DUE TO MASTER CYLINDER BEING ON BACKORDER. APPARENTLY THE ISSUE AFFECTING 2013-2014 F-150S IS ALSO AFFECTING 2015S AS WELL. TRUCK HAS APPROX. 15K MILES.

- *NHTSA ID Number 10894844, 2015 F-150, 43,000 miles*

  BRAKE PEDAL DROPPED TO FLOOR AND SIGNIFICANTLY LOST ABILITY TO STOP. MECHANIC SAYS NEEDS TO REPLACE MASTER CYLINDER AND BRAKE BOOSTER. PARTS ARE ON BACKORDER WHICH INDICATES THERE IS A PROBEM – PARTS DEPARTMENT SAID THERE ARE 700 ON BACKORDER AND IT WILL TAKE OVER A MONTH TO GET THEM.

74.    This reported backlog indicates that all Class Vehicles are receiving the same defective Master Cylinder provided by the recall when presented for warranty repair. In short, Ford is essentially refusing to provide an adequate warranty repair for the Class Vehicles.

**G.    Ford Has Long Been Aware of the Master Cylinder Defect.**

75.    Ford learned of the Master Cylinder Defect through, at least, its engineering knowledge, internal testing, online complaints, and the presentment of vehicles for repair.

76.    As discussed above in Sections IV.B-C, Ford was on notice that the Master Cylinder's design, using only one seal, was inferior to the design of the master cylinder supplied by Bosch, using two seals, for earlier models of the F-150.

77.    Furthermore, based on the number of complaints of Master Cylinder failure in model year 2013 F-150s, Ford has likely known of the Master Cylinder Defect since, at least, 2013.

78.    Internal documents provided by Ford to NHTSA confirm Ford's knowledge of the Master Cylinder Defect.

79.    On June 16, 2015, Jessica Ruiz, an engineer at Ford's Dearborn Truck Plant, sent an email entitled: "Hitachi Master Cylinders – F150 ECBs and Concerns," marked "High" importance. She stated: "Master Cylinder leaks are getting a lot of attention at Ford."

80.     On July 21, 2015, Ms. Ruiz sent an email entitled: "Hitachi – Master Cylinder On Line Leaks at DTP." She stated: "Hitachi (Farmington Hills) found the root cause of the master cylinder leakers we have been finding at DTP. More parts failed on the line this morning and they completed their investigation with those samples."

81.     In September 2015, Alejandro Rojas with Hitachi sent an email to his Hitachi colleagues stating: "[W]e have a big brake issue at [Ford's Dearborn Truck Plant]. The issue is a leak in the master cylinder. There are between 20-25 vehicles that have failed."

82.     In July 2016, Martin Kapanowski, a Ford engineer, sent an email to his colleagues stating: "[I]t has been stated that [master cylinder] repairs are increasing. We are having Hitachi in to discuss."

83.     In September 2016, Dan Williams, an engineer at Ford's Kansas City Assembly Plant, sent an email entitled: "Master Cylinder reservoir seal partially not seated." He stated: "Are you already aware of what looks like rolled seals on master cylinder assemblies that [Dearborn Truck Plant] found? If that is indeed the defect, this is something we have seen in the past."

84.     In October 2016, Saif Siddiqui, an engineer at Ford's Dearborn Truck Plant, sent an email to Hitachi regarding a Hitachi master cylinder failure in a 2016 F-150. He stated: "I think we should start sending the [Master Cylinder] claims in

package form instead of sending separately. This is the fourth one from [Dearborn Truck Plant] alone."

85.    Also in October 2016, Mr. Siddiqui emailed his colleague, Jonathan Harris, regarding Hitachi mastery cylinder warranty claims, asking: "Are all these [master cylinder] claims from today or are you catching up some old ones?" Mr. Harris responded: "No believe it or not they are all from today. I'm about ready to scream I can't believe all of these hit at one time." Mr. Siddiqui responded: "Amazing. Something definitely got messed up at Hitachi." Mr. Harris responded: "I've asked for someone from the plant to come down for the PIC this is going to be bloody."

**H.     Online Complaints Provide Examples of the Danger Posed by the Master Cylinder Defect in the Class Vehicles.**

86.    On the NHTSA's official complaint registry, available at www.safercar.gov,[1] there are scores of similar complaints documenting the Master Cylinder Defect across the entire array of models at issue in this litigation. For example:

- *NHTSA ID Number 10809601, 2013 Ford F-150, 18,070 miles*

  ON 5/1/15, WHILE BACKING OUT OF MY DRIVEWAY, AS I ATTEMPTED TO BRAKE, THE BRAKE PEDAL WENT COMPLETELY TO THE FLOOR, AND THERE WAS NO STOPPING POWER. WHILE ATTEMPTING TO PUMP THE

---

[1] All quotations of consumer comments posted on NHTSA and elsewhere are reproduced with spelling and grammatical errors as found in the original.

BRAKE AND USE THE PARKING BRAKE, MY VEHICLE
CROSSED THE STREET, WENT UP THE CURB, AND STRUCK
MY NEIGHBOR'S LANDSCAPE WALL, DAMAGING IT
SEVERELY. TOTAL DISTANCE TRAVELLED WAS
APPROXIMATELY 2.5 TRUCK LENGTHS BEFORE IMPACTING
THE NEIGHBOR'S WALL. UPON INSPECTION BY MYSELF
AND LATER MY INSURANCE INVESTIGATOR, THE BRAKE
FLUID RESERVOIR WAS EMPTY, BUT THERE WERE NO
OBVIOUS SIGNS OF LEAKAGE. NO PUDDLES OR VISIBLE
BRAKE FLUID. TRUCK WAS TOWED TO LOCAL DEALER
WHO DIAGNOSED THE PROBLEM AS 'BRAKE FAILURE DUE
TO LEAK FAULTY BRAKE MASTER CYLINDER'. WITHIN A
FEW DAYS, THE BRAKES AGAIN DID NOT FEEL RIGHT WITH
A STRANGE PEDAL FEEL. GRADUALLY, THE WORSENING
PEDAL FEEL WAS ACCOMPANIED BY A METALLIC
SCRAPING OR GRINDING NOISE. A SECOND TRIP TO A
DEALER REVEALED A FAILED BRAKE BOOSTER DUE TO
BRAKE FLUID INGESTION, WHICH ALSO EXPLAINED WHY
THERE WAS NO VISIBLE EVIDENCE OF A LEAK AFTER THE
CRASH. THE BRAKE BOOSTER OPERATES AT A VACUUM, SO
AS THE MASTER CYLINDER LEAKED CATASTROPHICALLY,
THE BOOSTER SUCKED IN THE FLUID, CAUSING IT TO
ULTIMATELY FAIL AS WELL. BOTH THE BRAKE MASTER
CYLINDER AND THE BRAKE BOOSTER WERE REPLACED
UNDER WARRANTY. I AM SURPRISED THAT THERE AS BEEN
NO ACTION ON THIS ISSUE YET - THE COMPLETE FAILURE
OF THE MOST IMPORTANT SAFETY SYSTEM OF A 2.5+ TON
VEHICLE - AS THERE ARE NUMEROUS NEARLY IDENTICAL
FAILURE MODES WITH THIS MODEL AND YEAR. I TRULY
HOPE NOBODY IS KILLED BY THIS; IT WAS TRULY
TERRIFYING TO BE WITHOUT BRAKES WHILE MOVING IN
REVERSE IN A MASSIVE VEHICLE.

- *NHTSA ID Number 10862331, 2013 Ford F-150, 17,507 miles*

BRAKE FAILURE WHILE PULLING A TRAVEL TRAILER ON I-
95 IN VIRGINIA. THE LOW BRAKE FLUID LIGHT CAME ON
AND THEN THE COMPLETE BRAKE FAILURE LIGHT CAME
ON AND WE HAD NO BRAKES. I WAS ABLE TO COAST TO A
STOP ON AN UPHILL EXIT RAMP. THE VEHICLE AND

TRAILER HAD TO BE TOWED TO A FORD DEALERSHIP. WAS TOLD BY THE SERVICE MANAGER AT THE FORD DEALERSHIP THAT THE MASTER CYLINDER HAD FAILED AND THE FLUID WAS PUMPED INTO THE BRAKE BOOSTER AND CONTAMINATED THE ENTIRE BRAKE SYSTEM.

- *NHTSA ID Number 10725476, 2014 Ford F-150, 18,000 miles*

WHILE DRIVING ON THE INTERSTATE A WARNING FOR LOW BRAKE FLUID APPEARED ON THE DASH. SHORTLY AFTER I LOST PRESSURE IN THE BRAKE PEDAL WHEN TRYING TO BRAKE FOR SLOWER TRAFFIC. I WAS ABLE TO PUMP THE BRAKES TO SLOW DOWN ENOUGH AND WAS ABLE TO GET TO A NEAR BY GAS STATION. THEIR WAS NO BRAKE FLUID LEFT IN THE RESERVOIR AND AFTER ADDING MORE BRAKE FLUID THE RESERVOIR DRAINED WITHIN 5 MINUTES WITH NO VISIBLE LEAK. THE VEHICLE WAS TOWED TO THE DEALERSHIP. THE BRAKE MASTER CYLINDER HAD FAILED AND DRAINED ALL THE BRAKE FLUID INTO THE VACUUM BOOSTER. I WAS LUCKY THAT I ENOUGH ROOM TO PUMP MY BRAKES TO GAIN CONTROL, OTHERWISE THIS COULD HAVE RESULTED IN A MAJOR ACCIDENT. THIS PART SHOULD NOT FAIL IN THIS MANNER NOR AT 18000 MILE OF VEHICLE LIFE. THE MECHANIC AT THE DEALERSHIP CLAIMED HE HAS SEEN THIS ISSUES ON OTHER F150S TOO.

- *NHTSA ID Number 10876359, 2015 Ford F-150, 29,095 miles*

BRAKES WENT OUT WHILE DRIVING. PEDAL WENT COMPLETELY TO THE FLOOR. A WARNING LIGHT CAME ON INDICATING LOW FLUID. I TOOK THE TRUCK TO A LOCAL GARAGE AND THEY DETERMINED THAT THE MASTER CYLINDER HAD FAILED AND ALSO BRAKE FLUID HAD LOOKED INTO THE BOOSTER. THE BRAKE FLUID RESERVOIR WAS COMPLETELY EMPTY. THE VEHICLE HAD BEEN PARKED FOR A FEW DAYS. WE DROVE THE VEHICLE 5 MILES WITHOUT ISSUE. VEHICLE WAS TOWED TO NEAREST FORD DEALER NEARLY 40 MILES AWAY. THAT FORD DEALER HAS FAILED TO BEGIN REPAIRS, CLAIMING THEY ARE BUSY AND CONSEQUENTLY IT WILL TAKE 4 OR

MORE DAYS TO REPAIR. WE ARE 12 HOURS FROM HOME AND STRANDED BY THIS NEW PICKUP. THIS IS PRECISELY THE SAME ISSUE AS RAISED IN THE COMPLAINT WITH NHTSA ID NUMBER 10873438

- *NHTSA ID Number 10906930, 2015 Ford F-150, 9,600 miles*

TL* THE CONTACT OWNS A 2015 FORD F-150. WHILE DRIVING APPROXIMATELY 70 MPH AND UPON SLOWING DOWN TO EXIT THE HIGHWAY, THE BRAKE PEDAL TRAVELED TO THE FLOORBOARD. THE CONTACT MANAGED TO PULL OVER TO THE SIDE OF THE ROAD AND DROVE SLOWLY TO THE DEALER. IT WAS DIAGNOSED THAT THE MASTER CYLINDER CAUSED THE BRAKE FAILURE. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND THE MASTER CYLINDER WAS SENT TO THE MANUFACTURER FOR ANALYSIS. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 9,600.

- *NHTSA ID Number 10888026, 2015 Ford F-150, 5,600 miles*

I WAS ON MY WAY TO WORK ONE MORNING WHEN I NOTICED MY BREAK [SIC] PEDAL SEEMS TO BE GOING LOWER THAN NORMAL. AFTER DRIVING A LITTLE MORE IT SEEMED TO BE OK. AS I GOT ABOUT HAF WAY ACROSS HOUSTON, I WAS COMING TO A RED LIGHT AND WHEN I HIT MY BREAKS [SIC] THEY WENT COMPLETELY TO THE FLOOR AND I WENT THROUGH A RED LIGHT. LUCKILY IT WAS SO EARLY THAT THERE WAS NOT MUCH TRAFFIC. . . . THERE HAS CURRENTLY BEEN NO RECALL ON THESE MODELS, BUT IF THERE IS NOT ONE SOON, SOMEONE IS GOING TO GET SERIOUSLY INJURED OR EVEN KILLED THIS THIS DEFAULT (I ONLY HAVE 5600 MILES ON THIS TRUCK BY THE WAY).

- *NHTSA ID Number 10891826, 2015 Ford F-150, 19,000 miles*

I WAS DRIVING TO WORK AT ~65MPH DURING RUSH HOUR AND THE BRAKES FAILED. FIRST A WARNING LIGHT ABOUT

LOW BRAKE FLUID THEN FOLLOWED IMMEDIATELY BY COMPLETE BRAKE FAILURE. I WAS LUCKY AND GOT TO THE SHOULDER AND COASTED UNTIL STOPPING. THE TRUCK HAS BEEN AT THE DEALERSHIP FOR ALMOST A MONTH (STILL DON'T HAVE THE VEHICLE BACK).

- *NHTSA ID Number 11003801, 2015 Ford F-150, 29,000 miles*

I WAS DRIVING ON THE FREEWAY AT 65 MILES PER HOUR WHEN I HAD A SUDDEN WARMING LIGHT FLASH SAYING BRAKE FLUID PROBLEM. I TESTED THE BRAKES AND THEY WENT TO THE FLOOR. TOTAL BRAKE FAILURE WITH NO WARNING. THE TRUCK HAS 29,000 MILES AND WAS SERVICED WITHIN LAST 2 MONTHS. THIS COULD HAVE VERY BAD AND HAD TRAGIC CONSEQUENCES. I FORTUNATELY WAS ABLE TO DOWN SHIFT USING THE MANUAL SHIFT FEATURE AND SLOW DOWN AND STOP SAFELY. THIS IS A SERIOUS ISSUE. MY FAMILY AND I COULD HAVE BEEN IN A SERIOUS ACCIDENT AND HURT OURSELVES OR OTHERS. FORD NEEDS TO GET THIS FIGURED OUT ASAP. CALL ME WITH ANY QUESTIONS.

- *NHTSA ID Number 10970121, 2016 Ford F-150, 10,000 miles*

IN NOVEMBER 2016 JUST 8 MONTHS AFTER OUR TRUCK WAS PURCHASED MY HUSBAND WAS TRYING TO STOP AT A RED LIGHT IN OUR NEIGHBORHOOD AND THE BRAKES WENT ALL THE WAY TO THE FLOOR AND DID NOT STOP, THE BRAKES DID NOT WORK. LUCKILY THERE WAS NOT AN ACCIDENT OR INJURY THIS TIME. WE TOOK THE VEHICLE TO FORD IN GRAPEVINE AND THEY TOLD US THE MASTER CYLINDER IN THE [TRUCK] NEEDED TO BE REPLACED SO THEY REPLACED IT. 3 MONTHS LATER IN MARCH 2017 MY HUSBAND WAS IN TRAFFIC TURNING AT A LIGHT TO MERGE ONTO THE HIGHWAY, TRAFFIC CAME TO A STOP AND HE TRIED TO STOP AND AGAIN THE BRAKES WENT ALLTHE WAY TO THE GROUND AND THEY DIDN'T WORK NOR DID THEY STOP THE VEHICLE. THIS TIME HE REAR ENDED A LADY IN AN SUV. . . BOTH TIMES THESE

INCIDENTS OCCURRED THERE WAS NO WARNING, NO LIGHTS, NOTHING THAT COULD INDICATE AN ISSUE.

- *NHTSA ID Number 10913643, 2016 Ford F-150, 15,472 miles*

WHILE APPLYING BRAKES THE PEDAL TRAVELS EXCESSIVELY UNTIL IT CONTACTS THE FLOOR BOARD. AS A RESULT, BRAKE APPLICATION IS LOST. CONTACTED FORD ROADSIDE ASSISTANCE AND HAD VEHICLE TOWED TO THE DEALER AND WAS TOLD THE MASTER CYLINDER IS DEFECTIVE. THIS VEHICLE IS A 2016 FORD F150 WITH A 5.0LITER ENGINE AND EQUIPPED WITH FOUR WHEEL DRIVE. VEHICLE HAS ONLY 15,472 MILES. THIS IS ONE OF NINE VEHICLES OF EXACT MAKE AND MODEL WE EMPLOY IN OUR FLEET AND ONE OF TWO WITH THIS PROBLEM.

- *NHTSA ID Number 10914164, 2016 Ford F-150, 3,000 miles*

WHEN TRYING TO STOP AT A STOP SIGN MY BRAKE PEDAL WENT ALL THE WAY TO THE FLOOR NOT ALLOWING ME TO STOP IN TIME AND CAUSING ME TO CROSS A MAJOR ROADWAY . . . ABOUT 10 MINUTES LATER AS I WAS APPROACHING A CROSSWALK BY A SCHOOL, A CHILD STEPPED OUT INTO THE CROSSWALK AND ONCE AGAIN I APPLIED MY BRAKES ONLY TO HAVE THE PEDAL GO ALL THE WAY TO THE FLOOR. THE VEHICLE DOES SLOW DOWN BUT DOE NOT STOP WHERE IT SHOULD. LUCKILY THE CHILD WAS NOT STRUCK BY MY VEHICLE. I THEN TOOK THE TRUCK TO MY LOCAL FORD DEALER [WHERE IT] WAS DIAGNOSED WITH A BAD MASTER CYLINDER FOR THE BRAKE SYSTEM.

- *NHTSA ID Number 10913711, 2016 Ford F-150, 7,000 miles*

I WAS DRIVING DOWN THE INTERSTATE AT ABOUT 70 MPH AND SUDDENLY HAD TO APPLY MY BRAKES BECAUSE A CAR IN FRONT OF ME STOPPSED SUDDENLY AND WHEN I DID THE BRAKE PEDAL WENT STRAIGHT TO THE FLOOR BOARD AND STOPPED AS IF I WAS BARELY PUSHING THE BRAKES. I HAD TO PUSH THE EMERGENCY BRAKE TO STOP

THE VEHICLE. I ALMOST HAD A VERY SERIOUS ACCIDENT AND IF I HAD NOT SWERVED OFF THE ROAD I WOULD HAVE HIT THE CAR IN FRONT OF ME AT CLOSE TO 60 MPH AND MY VEHICLE GAVE NO WARNING LIGHTS OR OTHER INDICATION THAT ANYTHING WAS WRONG. . . . .

- *NHTSA ID Number 10896122, 2016 Ford F-150, 11,000 miles*

BRAKE FAILURE. PEDAL WENT ALL THE WAY TO FLOOR BOARD WITH LOSS OF BRAKING POWER. I WAS DRIVING AT 35 MPH ON SLIGHT GRADE. I APPLIED BRAKE PRESSURE FOR 10 SECONDS DOWN THE GRADE. AS I APPROACHED A STOP SIGN I APPLIED STOPPING PRESSURE. THE BRAKE PEDAL WENT SOFT AND WHEN ALL THE WAY TO THE FLOOR. I HAD TO USE THE EMERGENCY BRAKE TO KEEP ME FROM GOING INTO THE INTERSECTION. THE BRAKES THEN SEEM TO WORK. I TOOK IT TO MY LOCAL FORD DEALER AND THEY STATED THERE IS PROBLEM WITH SOME VIN'S BUT MY IS NOT ONE OF THEM REGARDING THE MASTER CYLINDER. I WAS ALSO TOLD MORE BRAND NEW F-150 ARE HAVING THE SAME ISSUE. MY FAMILY COULD HAVE BEEN KILLED IT IS SITTING AT THE DEALER AND THEY ARE TRYING TO DUPLICATE THE PROBLEM.

- *NHTSA ID Number 11010500, 2017 Ford F-150, 6,600 miles*

I WAS DRIVING AND WHEN I NEED TO MAKE A HARD STOP, THE BRAKE PEDAL WENT TO THE FLOOR. I HAD TO USE THE EMERGENCY BRAKE TO HELP SLOW ME DOWN. WHILE THERE IS SOME BRAKING, IF YOU ARE STOPPED AND PUSH HARD ON THE BRAKES, THE PEDAL GOES TO THE FLOOR.

## I.    Online Complaints Indicate the Master Cylinder Defect's Tendency to Appear Soon after Class Vehicles Enter Service.

87.    Also within NHTSA's official complaint registry is evidence of the frequency at which the Master Cylinder Defect manifests soon after Class Vehicles enter service. For example:

- *NHTSA ID Number 10632103, 2013 Ford F-150, 8,000 miles*

  TL* THE CONTACT OWNS A 2013 FORD F-150. WHILE DRIVING APPROXIMATELY 5 MPH, THE VEHICLE HESITATED TO STOP WHEN THE BRAKE PEDAL WAS DEPRESSED AND THE BRAKE FLUID WARNING INDICATOR ILLUMINATED. THE VEHICLE WAS TOWED TO A DEALER FOR DIAGNOSTIC TESTING WHERE IT WAS DIAGNOSED THAT THE MASTER CYLINDER AND BRAKE BOOSTER PUMP NEEDED TO BE REPLACED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 8,000.

- *NHTSA ID Number 10692723, 2013 Ford F-150, 13,781 miles*

  TRUCK WAS PARKED SEVERAL HOURS IN SON-IN-LAWS DRIVEWAY. WIFE GOT IN TRUCK, AFTER CRANKING AND PLACING IN REVERSE, NO BRAKES! BACKED INTO SON-IN LAWS VEHICLE DAMAGING IT AND DAMAGING F 150. F 150 STILL UNDER WARRANTY, TAKEN TO MULLINAX FORD MOBILE AL. FOUND MASTERCYLINDER DEFECT , FAILED GASKET CAUSED BRAKE BOOSTER TO FAIL. MASTER CYLINDER REPLACED BY MULLINAX FORD, MOBILE AL. *TR

- *NHTSA ID Number 10788369, 2013 Ford F-150, 13,000 miles*

  VEHICLE HAD BEEN PARKED FOR LESS THAN ONE HOUR. RETURNED AND STARTED VEHICLE. DEPRESSED BRAKE PEDAL TO SHIFT AND PEDAL WENT TO THE FLOOR AND THE LOW FLUID LIGHT ILLUMINATED. NO BRAKING ACTION. STOPPED VEHICLE AND CHECKED BRAKE FLUID LEVEL. RESERVOIR HAD LESS THAN ONE QUARTER INCH OF FLUID. CHECKED UNDER AND AROUND VEHICLE AND FOUND NO EVIDENCE OF FLUID LEAK. ADDED 24 OZ. OF FLUID TO RESERVOIR. BRAKES STILL VERY MUSHY WITH VERY LITTLE BRAKING ACTION. DROVE 11 MILES VERY SLOWLY AND PARKED VEHICLE IN DRIVEWAY. RESEVOIR AGAIN ALMOST EMPTY WITH NO VISIBLE LEAKS. VEHICLE TOWED TO DEALERSHIP. DEALERSHIP SAID THEY HAD NOT HEARD

OF THIS PROBLEM BEFORE. APPEARS THE MASTER CYLINDER AND BOOSTER ARE BOTH BAD. TRUCK HAD JUST ROLLED OVER 13,000 MI. WHEN PROBLEM OCCURRED. I HAVE READ AT LEAST 15 SIMILAR REPORTS ON THIS PROBLEM GOING BACK AS FAR AS 2011 F-150 VEHICLES. THIS IS A POTENTIALLY DEADLY PROBLEM.

- *NHTSA ID Number 10873078, 2013 Ford F-150, 9,712 miles*

ON 6/5/2016 THE LOW BRAKE FLUID WARNING LIGHT CAME ON AND THE BRAKE FLUID RESERVOIR WAS EMPTY. WE WERE NEAR HAROLD FORD IN SACRAMENTO, CA, SO WE DROPPED THE TRUCK OFF FOR REPAIR. ON 6/6/2016, THE MASTER CYLINDER AND BRAKE BOOSTER WERE REPLACED.

- *NHTSA ID Number 10881311, 2013 Ford F-150, 11,000 miles*

I DROVE THE VEHICLE TO THE STORE THIS MORNING AND THERE WAS NO PROBLEM WITH THE BRAKES. WHEN I LEFT THE STORE AND STARTED THE VEHICLE I GOT A MESSAGE THAT SAID BRAKE FLUID IS LOW AND WHEN I PRESSED THE BRAKE IT WENT STRAIGHT TO THE FLOOR WITH NO RESISTANCE. I HAD TO PUMP THE BRAKES SEVERAL TIMES TO STOP THE VEHICLE FROM MOVING AS I WAS ATTEMPTING TO BACK OUT OF A PARKING SPACE. I GOT IT TO STOP HOWEVER WHEN I PRESSED THE BRAKE AGAIN IT WENT STRAIGHT TO THE FLOOR AGAIN. I THEN TURNED THE VEHICLE OFF AND CALLED FOR ROADSIDE ASSISTANCE. THE VEHICLE WAS TOWED TO THE DEALERSHIP (IT ONLY HAS 11000 MILES ON IT) AND THEY ADVISED ME THAT THE MASTER CYLINDER WAS DEFECTIVE AND WAS LEAKING FLUID INTO THE BRAKE BOOSTER.

- *NHTSA ID Number 11012839, 2013 Ford F-150, 60 miles*

I AM HAVING BRAKE ISSUES JUST HAD ALL NEW BRAKES AND ROTORS REPLACED AS CHECK BRAKE SYSTEM LIGHT HAS COME ON AFTER REPAIRS WERE MADE I WAS STILL

HAVING ISSUES THAT I WAS HAVING PRIOR TO REPAIR LOSS OF BRAKING SYSTEM ON SEVERAL OCCASIONS WITH KIDS IN THE CAR BRAKE GOES TO THE FLOOR AND SOME TIME LATER RE GAIN BREAKING SYSTEM VERY SCARY I HAVE PAID OVER 40 THOUSAND DOLLAR FOR THIS TRUCK AND WELL OVER 8 THOUSAND IN REPAIRS WHAT HAS TO BE DONE BEFORE RECALL IS ISSUED THE RUN AROUND BETWEEN DEALERSHIPS AND HE SAID SHE SAID. I GUESS SOMEONE HAS TO BE KILLED BEFORE THERE IS A RECALL THIS IS ABSURD.

- *NHTSA ID Number 10745004, 2014 Ford F-150, 7,900 miles*

TL* THE CONTACT OWNS A 2014 FORD F-150. WHILE DRIVING AT 35 MPH, THE LOW BRAKE FLUID WARNING LIGHT ILLUMINATED. THE CONTACT STATED THAT THE BRAKE PEDAL WAS DEPRESSED AND EXTENDED TO THE FLOOR. THE CONTACT WAS ABLE TO SLOW THE VEHICLE DOWN USING THE MANUAL TRANSMISSION AND THE EMERGENCY BRAKES. THE VEHICLE WAS TAKEN TO THE DEALER FOR DIAGNOSTIC TESTING AND INSPECTION. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 7,900.

- *NHTSA ID Number 10747875, 2014 Ford F-150, 14,000 miles*

TL* THE CONTACT OWNS A 2014 FORD F-150. WHILE DRIVING AT AN UNKNOWN SPEED, THE BRAKE PEDAL WAS DEPRESSED AND FAILED TO RESPOND. THE BRAKE FLUID WARNING INDICATOR ILLUMINATED. THE VEHICLE WAS TAKEN TO A DEALER, WHO DIAGNOSED THAT THE MASTER AND BOOST CYLINDERS NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 14,000.

- *NHTSA ID Number 10762034, 2014 Ford F-150, 10,500 miles*

  STARTED VEHICLE AND PUSHED ON BRAKE TO SWITCH TO REVERSE, WARNING MESSAGE THAT VEHICLE WAS LOW ON BRAKE FLUID. VERIFIED BY LOOKING AT MASTER CYLINDER, ADDED BRAKE FLUID AND STARTED DRIVING. WITHIN 3 MILES SAME MESSAGE, PARKED VEHICLE CALLED FORD. THEY PICKED UP THE VEHICLE AND CALLED ME LATER TO ADVISE THAT THE MASTER CYLINDER FAILED AND THE BRAKE BOOSTER SUCKED ALL THE FLUID INTO IT. THEY BOTH NEEDED REPLACED AS WELL AS OTHER BRAKE RELATED STUFF. I RESEARCHED AND I KNOW I AM NOT THE FIRST TO HAVE THIS EXACT SAME PROBLEM, I AM JUST LUCKY I WASNT ON THE FREEWAY AT SPEED WHEN THIS OCCURRED.

- *NHTSA ID Number 10788886, 2014 Ford F-150, 9,684 miles*

  FAILURE OF MASTER CYLINDER AND BOOSTER PUMP. ALL FLUID DRAINED INTO BOOSTER WITH NO WARNING. REPAIRED UNDER WARRANTY. VEHICLE HAS ONLY 9600 MILES. VEHICLE LOST ALL BRAKING ABILITY (EXCLUDING EBRAKE) WITHIN 60 SECONDS OF A LOW FLUID ALERT.

- *NHTSA ID Number 10839985, 2014 Ford F-150, 10,000 miles*

  LOST ALL BRAKING UNEXPECTEDLY. BRAKE PEDAL WENT ALL THE WAY TO THE FLOOR AND I IMMEDIATELY HADE NO BRAKES WHATSOEVER. DESCRIBED EXACTLY AS IN THIS ARTICLE -HTTP://WWW.NBCDFW.COM/NEWS/LOCAL /US-INVESTIGATES-420000-FORD-F-150S-FOR-BRAKE- FAILURE-371060011.HTML I WAS LEAVING MY OFFICE PARKING GARAGE AND WAS VERY LUCKY TO HAVE ACTED QUICKLY TO ENGAGE THE EMERGENCY BRAKE. CO-WORKERS HELPED ME PUSH THE VEHICLE BACK INTO AN EMPTY PARKING SPOT WHERE IT WAS LATER TOWED TO THE DEALERSHIP AT DEALERSHIP'S EXPENSE. AROUND 10K MILES OR LESS AT THE TIME OF THE INCIDENT. FORD DEALERSHIP SAID ALL FLUID HAD LEAKED FROM THE MASTER CYLINDER INTO THE BOOSTER. I VIEW THIS AS A

SERIOUS DEFECT AND AM HIGHLY SUSPECT OF THE SAFETY OF THIS VEHICLE, AS A RESULT. PLEASE ADVISE.

- *NHTSA ID Number 10845840, 2014 Ford F-150, 905 miles*

SINCE I PURCHACED MY TRUCK IN MARCH OF LAST YEAR.TWICE I HAD BRAKE PEDAL ISSUES.WHEN APPLYING THE BRAKES TRYING STOP. THE PEDAL WAS VERY SLOW TO RETURN TO ITS NORMAL POSITION.THE NEXT TIME THE PEDAL WENT COMPLETELY TO THE FLOORBOARD AS IF I WAS BLEEDING THE BRAKES. AFTER BOTH INCIDENTS I TOOK IT TO THE DEALERSHIP'S. BOTH DEALERSHIP'S SAID THEY ARE NORMAL AFTER ROAD TESTING MY TRUCK.

- *NHTSA ID Number 10836611, 2015 Ford F-150, 6,000 miles*

TL* THE CONTACT OWNS A 2015 FORD F-150. WHILE DRIVING APPROXIMATELY 20 MPH, THE BRAKE PEDAL WAS FORCEFULLY ENGAGED WITH BOTH FEET; HOWEVER, THE VEHICLE FAILED TO SLOW DOWN AND CRASHED INTO THE REAR OF THE PRECEDING VEHICLE. THE CONTACT INJURED BOTH LEGS AND KNEES, INCLUDING THE HIP AREA. THE CONTACT DID NOT REQUIRE MEDICAL ATTENTION. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS NOT TOWED. THE VEHICLE WAS DRIVEN WITH CAUTION. THE DAY PRIOR TO THE CRASH, THE BRAKES WERE DEPRESSED NUMEROUS TIMES BEFORE COMING TO A STOP AND THERE WAS A DELAYED RESPONSE. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 6,000.

- *NHTSA ID Number 10873438, 2015 Ford F-150, 13,000 miles*

BRAKE FAILURE. PEDAL WENT COMPLETELY TO THE FLOOR. WARNING LIGHT INDICATED LOW FLUID. TOOK IMMEDIATELY FOR SERVICE AND IT WAS DETERMINED THAT THE MASTER CYLINDER HAD FAILED AND ALSO BRAKE FLUID HAD LEAKED INTO THE BOOSTER. BRAKE FLUID RESERVOIR WAS COMPLETELY EMPTY. THE

VEHICLE HAD BEEN STATIONARY FOR A COUPLE OF DAYS BEFORE DRIVING. WARNING LIGHT CAME ON AFTER FIRST ATTEMPT TO APPLY BRAKES. VEHICLE WAS DRIVEN TO FORD DEALER WITH VERY MINIMAL BRAKING ABILITY BUT NOT COMPLETE LOSS.

- *NHTSA ID Number 10881590, 2015 Ford F-150, 15,000 miles*

COMPLETE BRAKE FAILURE. BRAKE FLUID LOW LEVEL LIGHT ILLUMINATED WHILE DRIVING A VERY BUSY ROAD AND WITHIN 2 MINUTES THE MASTER CYLINDER HAD DEPLETED ALL FLUID AND BRAKE PEDAL WAS GOING ALL THE WAY TO FLOOR BOARD. LUCKILY THE WIFE WAS ABLE TO GET THE TRUCK INTO A PARKING LOT UNSCATHED.

- *NHTSA ID Number 10947317, 2015 Ford F-150, 13,500 miles*

TL* THE CONTACT OWNS A 2015 FORD F-150. THE CONTACT STATED THAT WHILE DRIVING THE VEHICLE AT 70 MPH AND COMING TO A STOP, THE BRAKE PEDAL WOULD PUSH ALL THE WAY TO THE FLOORBOARD. UPON PUMPING THE BRAKE PEDAL, THE BRAKING ACTION WOULD RETURN TO NORMAL AND STOPPED THE VEHICLE. THE VEHICLE WAS TAKEN TO A DEALER WHERE IT WAS DIAGNOSED THAT THE BRAKE MASTER CYLINDER NEEDED TO BE REPLACED AND WAS REPAIRED. AFTER ABOUT 800 MILES THE FAILURE RE-OCCURRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURES. THE APPROXIMATE FAILURE MILEAGE WAS 13,500.

- *NHTSA ID Number 10948941, 2015 Ford F-150, 12,500 miles*

ON FEBRUARY 17, 2016 I EXPERIENCED TOTAL BRAKE LOSS OF MY 2015 F-150. THE BRAKE LOSS OCCURRED AT LOW SPEED, LESS THAN 10MPH. I HAD TO FRANTICALLY PUMP THE BRAKES TO STOP ON A FLAT LEVEL SURFACE. WHERE THE BRAKE LOSS OCCURRED THERE WAS NO SNOW OR ICE. I TOOK THE VEHICLE TO THE FORD DEALER AND THEY SAID THEY COULD NOT FIND ANY ISSUES. NO WARNING LIGHTS TURNED ON. THE VEHICLE BRAKES FUNCTIONED

NORMALLY UNTIL TODAY WHEN I AGAIN EXPERIENCED TOTAL LOSS OF BRAKES! AGAIN IT WAS AT LOW SPEED, THIS TIME ON A STEEP GRADE WITH MINOR SNOW ACCUMULATION. THE ANTI LOCK BRAKES DID NOT ACTIVATE AND THE BRAKE PEDAL WENT TO THE FLOOR. I WAS BARELY ABLE TO STOP THE VEHICLE WHEN I REACHED A LEVEL SURFACE. AS OF TODAY THE BRAKE PEDAL CONTINUES TO GO TO THE FLOOR. THE VEHICLE BRAKES SEEM TO FUNCTION OK AT HIGH SPEEDS, HOWEVER WHILE PARKED AT A STOP LIGHT THE PEDAL CONTINUES TO DEPRESS. I CALLED FORD BECAUSE I AM VERY CONCERNED ABOUT WHAT IS HAPPENING., HOWEVER THEY DO NOT SEEM TO TAKE THE COMPLAINT SERIOUSLY. I ASKED THEM TO TOW THE VEHICLE TO A DEALERSHIP BECAUSE IT'S UNDER WARRANTY AND I ALSO HAVE ROADSIDE ASSISTANCE AND AN EXTENDED WARRANTY. I WAS TOLD BY FORD THAT THEY COULD NOT TOW IT UNTIL NEXT WEDNESDAY. I FINALLY ENDED UP DRIVING AN UNSAFE VEHICLE OVER 45 MILES TO A DEALERSHIP. THE VEHICLE WILL BE LOOKED AT TOMORROW, HOPEFULLY!!! THIS IS A DANGEROUS SITUATION THAT HAS HAPPENED TWICE, AND I FEEL FORD IS SWEEPING IT UNDER THE RUG. PLEASE LOOK INTO THIS BEFORE SOMEONE NEEDLESSLY DIES. THANK YOU!

- *NHTSA ID Number 10985533, 2015 Ford F-150, 13,500 miles*

SUDDEN TOTAL BRAKE FAILURE. NO ABILITY TO STOP VEHICLE. FORTUNATELY IN A RESIDENTIAL ZONE AND WAS TRAVELLING AT LOW SPEED.. BRAKE WAS FUNCTIONING NORMALLY WHEN DRIVEN TO NEIGHBORHOOD RETAIL SHOP. WHEN RE-ENTERED THE VEHICLE AND BEGAN TO ACCELERATE, BRAKE WARNING LAMP LIT AND I HAD NO BRAKING ABILITY!

- *NHTSA ID Number 10862418, 2016 Ford F-150, 3,259 miles*

THE PICKUP TRUCK IS NO OLDER THAN 3 MONTHS AND WHILE DRIVING ON THE EXPRESSWAY I SUDDENLY LOST FUNCTION OF MY BRAKES. THE BRAKE PEDAL WENT ALL

THE WAY DOWN WITH NO BRAKE REACTION. THE MIDWAY FORD DEALERSHIP INFORMED ME THE MASTER CYLINDER BRAKE WAS DEFECTIVE. THANKFULLY NO ONE WAS INJURED, NOR ANY PHYSICAL DAMAGE TO PROPERTY; HOWEVER THE TRAUMATIC INCIDENT DID CAUSE ME ANGINA DUE TO MY HEART CONDITION. I WAS EXTREMELY LUCKY TO HAVE BEEN ABLE TO HAVE CONTROLLED THE HEALTH CONDITION WITH NITROGLYCERIN. ALL I ASK IS THAT FORD TAKE THIS INCIDENT SERIOUSLY TO AVOID ANY FUTURE ACCIDENTS WHICH MAY POTENTIAL RESULT IN A FATALITY. I NO LONGER HAVE FAITH IN MY VEHICLE AND PREFER A DIFFERENT CAR MOVING FORWARD.

- *NHTSA ID Number 10891829, 2016 Ford F-150, 1,800 miles*

I HAD JUST LEFT MY HOUSE AND REACHED THE MAIN INTERSECTION OF KELLOGG (HIGHWAY 54) AND OLIVER TO TURN WEST ONTO THE RAMP TO GET ON KELLOGG WHERE THE SPEED OF TRAFFIC IS 60MPH. I APPROACHED A RED LIGHT AND ATTEMPTED TO STOP NORTH OF KELLOGG ON OLIVER. AS I PRESSED MY FOOT ON THE BREAK PEDAL TO STOP AT THE LIGHT, MY FOOT WENT ALL THE WAY DOWN TO THE FLOOR. I COASTED INTO THE INTERSECTION AND DIRECTED THE STEERING WHEEL TO THE RIGHT TOWARDS THE ON RAMP. I WAS ABLE TO SLOW DOWN ENOUGH SINCE I HADN'T EVEN REACHED 35MPH AND PUT MY HAZARDS LIGHTS ON AND PLACED MY TRUCK IN PARK. I WAS CONVINCED SOMEONE HAD TAMPERED WITH MY BRAKES AND THEY WERE TRYING TO KILL ME! I FRANTICALLY CALLED MY BOYFRIEND WHO WAS ABLE TO CALM ME DOWN ENOUGH TO CALL A TOW TRUCK. I HAD ONLY HAD MY BRAND NEW TRUCK FOR LESS THAN A MONTH! IT IS CURRENTLY AT A FORD DEALERSHIP TO BE REPAIRED AND HAS BEEN THERE FOR ALMOST A MONTH. I WAS TOLD BY THE FORD DEALERSHIP THAT THE MASTER CYLINDER WAS THE CAUSE OF THE PROBLEM AND THAT THE PARTS NEEDED FOR REPAIR ARE ON BACKORDER. I RESEARCHED AND SAW THAT THE FORD F-150 TRUCKS IN 2013 AND 2014 HAD BEEN RECALLED FOR FAULTY MASTER CYLINDERS. I

ASSUMED THAT BY NOW FORD WOULD HAVE CORRECTED THE ISSUE BUT CLEARLY THEY HAVE NOT.

- *NHTSA ID Number 10915273, 2016 Ford F-150, 1,200 miles*

TL* THE CONTACT OWNS A 2016 FORD F-150. THE CONTACTS STATED THAT THE VEHICLE WAS INVOLVED IN A FRONT END COLLISION BECAUSE THE BRAKES FAILED WHEN THE BRAKE PEDAL WAS DEPRESSED. THE FAILURE OCCURRED WITHOUT WARNING. THE VEHICLE WAS TOWED TO THE DEALER, BUT WAS NOT DIAGNOSED OR REPAIRED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THERE WERE TWO INJURIES THAT REQUIRED MEDICAL ATTENTION. THE OCCUPANTS OF THE OTHER VEHICLE EXPERIENCED SOME NECK DISCOMFORT. A POLICE REPORT WAS NOT FILED. THE FAILURE MILEAGE WAS APPROXIMATELY 1,200.

- *NHTSA ID Number 10926076, 2016 Ford F-150, 2,500 miles*

TL* THE CONTACT OWNS A 2016 FORD F-150. WHEN THE BRAKE PEDAL WAS DEPRESSED AT 35 MPH, THE PEDAL TRAVELED TO THE FLOOR WITHOUT WARNING. THE VEHICLE EVENTUALLY STOPPED INDEPENDENTLY. THE CONTACT MENTIONED THAT THE FAILURE OCCURRED ON SEVERAL OCCASIONS. THE VEHICLE WAS TAKEN TO A DEALER WHERE IT WAS DETERMINED THAT THE VEHICLE WAS OPERATING AS DESIGNED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 2,500.

- *NHTSA ID Number 10927388, 2016 Ford F-150, 5,000 miles*

TL* THE CONTACT OWNS A 2016 FORD F-150. WHILE DRIVING 55 MPH, THE BRAKE PEDAL WAS DEPRESSED AND TRAVELED TO THE FLOORBOARD WITHOUT WARNING. THE CONTACT WAS ABLE TO SHIFT THE VEHICLE INTO MANUAL, DOWNSHIFT, AND PUMP THE BRAKES IN ORDER TO COME TO A COMPLETE STOP. THE VEHICLE WAS TOWED TO THE DEALER WHERE IT WAS DETERMINED THAT THE

MASTER CYLINDER FAILED AND NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 5,000.

- *NHTSA ID Number 10950413, 2016 Ford F-150, 78 miles*

I AGREED TO PURCHASE THIS F150 ON 1/27/2016 BUT REQUESTED THAT THE MUSHY BRAKES BE REPAIRED FIRST (PEDAL GOES TO FLOOR). WENT BACK TO DEALER 1/27 TO COMPLETE PAPERWORK AND PICK UP REPAIRED TRUCK. WAS TOLD THAT THE TRUCK WAS CHECKED BY THE SERVICE DEPT. AND THAT BRAKES WERE NORMAL. I COMPLETED THE PAPERWORK BUT LEFT THE TRUCK THERE TO BE CHECKED BY THE SERVICE DEPT. AGAIN THE NEXT MORNING. I GOT A PHONE CALL THE NEXT MORNING SAYING THE BRAKES HAD BEEN FIXED AND THE TRUCK WAS READY FOR PICKUP. WHEN I ARRIVED AT THE DEALERSHIP I WENT TO THE TRUCK AND PRESSED THE BRAKE PEDAL AND IT WENT TO THE FLOOR. I WAS TOLD THAT IT HAD BEEN CHECKED BY FOUR SERVICE TECHS AND ALL AGREED THAT THE BRAKES WERE FINE. THEY ALSO GAVE ME A SERVICE REPORT SAYING THE BRAKE OPERATION WAS NORMAL. I TOOK THE TRUCK HOME THAT AFTERNOON SINCE IT DIDN'T APPEAR THAT THIS SERVICE DEPT WAS NOT QUALIFIED . ON 1/31 I TOOK THE TRUCK TO A DIFFERENT DEALER. THEY SAID THE MASTER CYLINDER WAS BY-PASSING AND ORDERED A NEW ONE. IT CAME IN THE NEXT DAY AND I TOOK THE TRUCK IN FOR REPAIR. AFTER THE TRUCK WAS "REPAIRED" I GOT IN THE TRUCK TO HEAD BACK HOME. THE BRAKE PEDAL WENT TO THE FLOOR. I WENT BACK IN AND REPORTED THAT IT WAS THE SAME AS BEFORE. AFTER DISCUSSIONS, THE SERVICE DEPT GOT A NEW TRUCK OFF OF THE SALES LOT AND SHOWED ME THAT THIS BREAK PEDAL ALSO WENT TO THE FLOOR, SO THIS PEDAL OPERATION WAS NORMAL. I TOOK MY TRUCK AND RETURNED HOME. NOW I HAVE A VERY EXPENSIVE TRUCK THAT I AM AFRAID TO DRIVE. AFTER AN INTERNET SEARCH FOR MUSHY BRAKES I FIND THAT

THERE ARE MANY OTHER OWNERS WITH THE SAME
PROBLEM.

## V.     TOLLING OF THE STATUTE OF LIMITATIONS

### A.     Discovery Rule Tolling

88.     Neither Plaintiffs nor the other Class members could have discovered
through reasonable diligence that their Class Vehicles were defective within the time
period of any applicable statutes of limitation.

89.     Among other things, neither Plaintiffs nor the other Class members
knew or could have known that the Class Vehicles are equipped with defective
Master Cylinders.

### B.     Fraudulent Concealment Tolling

90.     Throughout the time period relevant to this action, Ford concealed from
and failed to disclose to Plaintiffs and the other Class members vital information
about the potentially deadly Master Cylinder Defect described herein.

91.     Ford kept Plaintiffs and the other Class members ignorant of vital
information essential to the pursuit of their claims, and as a result, neither Plaintiffs
nor the other Class members could have discovered the Master Cylinder Defect.

92.     Specifically, throughout the relevant time period, Ford has known that
the Master Cylinders it installed in the Class Vehicles lose hydraulic pressure and
fail.

93.     Despite its knowledge of the Master Cylinder Defect, Ford failed to disclose, concealed, and continues to conceal, this critical information from Plaintiffs and the other members of the Class even though, at any point in time, it could have done so through individual correspondence, media release, or any other means.

94.     Instead of disclosing the Master Cylinder Defect to Plaintiffs and the other Class members, Ford instituted an inadequate recall, as described above, that deterred further investigation and any adequate remedial action.

95.     Plaintiffs and the other Class members justifiably relied on Ford to disclose these material defects in the Ford vehicles that they purchased or leased, as such defects were hidden and not discoverable through reasonable efforts by Plaintiffs and the other Class members.

96.     Thus, the running of all applicable statutes of limitation have been tolled and suspended with respect to any claims that the Plaintiffs and the other Class members have sustained as a result of the Master Cylinder Defect by virtue of the fraudulent concealment doctrine.

## C.     Estoppel

97.     Ford was under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the Class Vehicles.

98.     Ford knowingly failed to disclose or concealed the true nature, quality, and character of the Class Vehicles for consumers.

99.     Based on the foregoing, Ford is estopped from relying on any statutes of limitation in defense of this action.

## VI.     CLASS ACTION ALLEGATIONS

100.   Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

101.   Plaintiffs seek to represent a class ("the Nationwide Class") defined as:

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased in the United States.

102.   Plaintiffs also respectively seek to represent the following statewide classes ("the Statewide Classes") defined as follows:

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Alabama ("the Alabama Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Florida ("the Florida Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Georgia ("the Georgia Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Texas ("the Texas Class").

46

103.   Excluded from both the Nationwide and Statewide Class are Defendants Ford Motor Company and any of its affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the Court staff assigned to this case and their immediate family members. Plaintiffs reserve the right to modify or amend these Nationwide and Statewide Class definitions, as appropriate, during the course of this litigation.

104.   The Classes expressly disclaim any recovery in this action for personal injury resulting from the Master Cylinder Defect, without waiving or dismissing any such claims.

105.   This action has been brought and may properly be maintained on behalf of the Nationwide and Statewide Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

106.   **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Nationwide and Statewide Classes are so numerous and geographically dispersed that individual joinder of all class members is impracticable. While Plaintiffs are informed and believe that there are not less than 1.5 million members of the Nationwide and Statewide Classes, the precise number of Nationwide and Statewide Classes is unknown to Plaintiffs, but may be ascertained from Ford's books and records. Nationwide and Statewide Class Members may be notified of the pendency of this action by recognized, Court-

approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

107. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Nationwide and Statewide Class members, including, without limitation:

a. whether Ford engaged in the conduct alleged herein;

b. whether Ford's alleged conduct violates applicable law;

c. whether Ford designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

d. whether Ford misled Nationwide and Statewide Class members about the safety of the Class Vehicles;

e. whether the Class Vehicles contain the Master Cylinder Defect alleged herein;

f. whether Ford had actual or imputed knowledge about the alleged defect but failed to disclose it to Plaintiffs and the other Nationwide and Statewide Class members;

g.      whether Ford's omissions and concealment regarding the quality of the Class Vehicles were likely to deceive Statewide Class members in violation of the state consumer protection statutes alleged herein;

h.      whether Ford breached its express warranties to the Nationwide and Statewide Class members with respect to the Class Vehicles;

i.      whether Ford breached its implied warranties to the Nationwide and Statewide Class members with respect to the Class Vehicles;

j.      whether Nationwide and Statewide Class members overpaid for their Class Vehicles as a result of the defect alleged herein;

k.      whether Nationwide and Statewide Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

l.      the amount and nature of relief to be awarded to Plaintiffs and the other Nationwide and Statewide Class members.

108.    **Typicality – Federal Rule of Civil Procedure 23(a)(3)**. Plaintiffs' claims are typical of the other Nationwide and Statewide Class members' claims because Plaintiffs and the Nationwide and Statewide Class members purchased or leased Class Vehicles that suffer from the Master Cylinder Defect. Neither Plaintiffs nor the other Nationwide and Statewide Class Members would have purchased the Class Vehicles, or, alternatively, would have paid less for the Class Vehicles, had

they known of the Master Cylinder Defect. Plaintiffs and the other Nationwide and Statewide Class members suffered damages as a direct proximate result of the same wrongful practices in which Ford engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Nationwide and Statewide Class members.

109. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)**. Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Nationwide and Statewide Classes that they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The Nationwide and Statewide Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

110. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2)**. Ford has acted or refused to act on grounds generally applicable to Plaintiffs and the other Nationwide and Statewide Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Nationwide and Statewide Class members as a whole.

111. **Superiority – Federal Rule of Civil Procedure 23(b)(3)**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the

management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Nationwide and Statewide Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Ford, so it would be impracticable for the Nationwide and Statewide Class members to individually seek redress for Ford's wrongful conduct. Even if the Nationwide and Statewide Class members could afford litigation the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.  CLAIMS FOR RELIEF

**A.**  **Claims Brought on Behalf of the Nationwide Class**

### COUNT 1
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. §§ 2301, *et seq.*

112.  Plaintiffs repeat and reallege paragraphs 1-111 as if fully set forth herein.

113.  Plaintiffs bring this Count individually and on behalf of the other members of the Nationwide Class (the "Class," for purposes of this Count).

114. This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332(a) and (d).

115. Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

116. Ford is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

117. The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

118. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

119. In its Limited Warranty, Ford expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. Ford provides the following language in its F-150 Owner's Manual, which upon information and belief, is substantially identical for all models:

> Your Bumper to Bumper Coverage lasts for three years-unless you drive more than 36,000 miles before three years elapse. In that case, your coverage ends at 36,000 miles....Your NEW VEHICLE LIMITED WARRANTY gives you specific legal rights....Under your New Vehicle Limited Warranty if: your Ford vehicle is properly operated and maintained, and was taken to a Ford dealership for a warranted repair during the warranty period, then authorized Ford Motor Company dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use

during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship.

120.   Ford's Limited Warranty is a written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranty of merchantability is covered by 15 U.S.C. § 2301(7).

121.   With respect to Class members' purchases or leases of the Class Vehicles, the terms of Ford's written warranty and implied warranty became part of the basis of the bargain between Ford, on the one hand, and Plaintiffs and each of the other Class members, on the other.

122.   Ford breached the implied warranty of merchantability. Without limitation, the Class Vehicles have brakes that lose hydraulic pressure and fail, as described above, and which thus render the Class Vehicles unmerchantable.

123.   Ford breached its express Limited Warranty by refusing to repair the defective Master Cylinder in the Class Vehicles. Plaintiffs Weidman and Perry presented their vehicle for repair after the Master Cylinders in their truck failed, and instead of providing a non-defective replacement master cylinder, Ford installed the same defective Master Cylinder that is causing the Master Cylinder Defect in all Class Vehicles.

124.   Plaintiff Weidman, individually and on behalf of the other Class members, notified Ford of the Master Cylinder Defect in the Class Vehicles, and its corresponding breach of warranty, through a notice letter delivered by courier on

May 24, 2018 to Ford's registered agent in Montgomery, Alabama. Ford acknowledged receipt through a response letter from its counsel dated June 7, 2018. Ford was also provided notice of the Master Cylinder Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge. Ford has not remedied its breach.

125. Further, Ford has refused to provide an adequate warranty repair for the Master Cylinder Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty repair due to Master Cylinder failure have simply been provided replacement defective Master Cylinders.

126. At the time of sale or lease of each Class Vehicle, Ford knew, should have known, or was reckless in not knowing of the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Master Cylinder Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiff and the other Class members resort to an informal dispute resolution procedure and/or afford Ford a reasonable opportunity to cure its breach of warranties is excused and thus deemed satisfied.

127. The amount in controversy of Plaintiffs' individual claims meet or exceed the sum of $25. The amount in controversy in this action exceeds the sum of

$50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

128.   As a direct and proximate result of Ford's breaches of its Limited Warranty and the implied warranty of merchantability, Plaintiffs and the other Class members have sustained damages in an amount to be determined at trial.

129.   Plaintiffs, individually and on behalf of all the other Class members, seeks all damages permitted by law, including the diminution in value of their vehicles, in an amount to be proven at trial.

**B.     Claims Brought on Behalf of the Alabama Class**

<u>**COUNT 2**</u>
**VIOLATIONS OF ALABAMA'S**
**DECEPTIVE TRADE PRACTICES ACT**
**Ala. Code. §§ 8-19-1,** *et seq.*

130.   Plaintiff Weidman ("Plaintiff," for purposes of the Alabama Class's claims) repeats and realleges paragraphs 1-111 as if fully set forth herein.

131.   Plaintiff brings this claim individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

132.   The Alabama Deceptive Trade Practices Act, Ala. Code. § 8-19-5, prohibits "[e]ngaging in . . . unconscionable, false, or deceptive act[s] or practice[s] in business, commerce, or trade."

133.   By the conduct described in detail above and incorporated herein, Ford engaged in deceptive trade practices.

134.   Plaintiff Weidman, individually and on behalf of the other Class members, notified Ford of the Master Cylinder Defect in the Class Vehicles, and its violation of the Alabama Deceptive Trade Practices Act, through a notice letter delivered by courier on May 24, 2018 to Ford's registered agent in Montgomery, Alabama. Ford acknowledged receipt through a response letter from its counsel dated June 7, 2018. Ford was also provided notice of the Master Cylinder Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

135.   Ford's omissions regarding the Master Cylinder Defect, described above, which causes the brakes to lose hydraulic pressure and fail, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

136.   Ford intended for Plaintiff and the other Class members to rely on Ford's omissions regarding the Master Cylinder Defect.

137.   Plaintiff and the other Class members justifiably acted or relied to their detriment upon Ford's omissions of fact concerning the above-described Master Cylinder Defect, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

138.   Had Ford disclosed all material information regarding the Master Cylinder Defect to Plaintiff and the other Class members, Plaintiff and the other

56

Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

139.   Ford's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

140.   As a direct and proximate result of Ford's deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Master Cylinder Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Ala. Code. §§ 8-19-1, *et seq.*

## COUNT 3
## BREACH OF EXPRESS WARRANTY
### Ala. Code §§ 7-2-313 and 7-2A-210

141.   Plaintiff Weidman ("Plaintiff," for purposes of the Alabama Class's claims) repeats and realleges paragraphs 1-111 as if fully set forth herein.

142.   Plaintiff brings this claim individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

143.   Ford is and was at all relevant times a merchant with respect to the Class Vehicles.

144.   In its Limited Warranty, Ford expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period. Ford provides the following language in its F-150 Owner's Manual, which upon information and belief, is substantially identical for all models:

> Your Bumper to Bumper Coverage lasts for three years-unless you drive more than 36,000 miles before three years elapse. In that case, your coverage ends at 36,000 miles….Your NEW VEHICLE LIMITED WARRANTY gives you specific legal rights….Under your New Vehicle Limited Warranty if: your Ford vehicle is properly operated and maintained, and was taken to a Ford dealership for a warranted repair during the warranty period, then authorized Ford Motor Company dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship.

145.   Ford's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles.

146.   Ford breached its express warranty to repair defective parts in the Class Vehicles. Ford has not repaired the Class Vehicles' Master Cylinder Defect. Plaintiff Weidman presented his vehicle for repair after the Master Cylinder in his truck failed, and instead of providing a non-defective replacement master cylinder, Ford

installed the same defective Master Cylinder that is causing the Master Cylinder Defect in all Class Vehicles.

147.   Plaintiff Weidman, individually and on behalf of the other Class members, notified Ford of the Master Cylinder Defect in the Class Vehicles, and its corresponding breach of warranty, through a notice letter delivered by courier on May 24, 2018 to Ford's registered agent in Montgomery, Alabama. Ford acknowledged receipt through a response letter from its counsel dated June 7, 2018. Ford was also provided notice of the Master Cylinder Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.  Ford has not remedied its breach.

148.   Further, Ford has refused to provide an adequate warranty repair for the Master Cylinder Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty repair due to Master Cylinder failure have simply been provided replacement defective Master Cylinders.

149.   The Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Ford has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

150. Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

151. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Ford improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the Ford Vehicles under false pretenses.

152. As a direct and proximate result of Ford's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT 4
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Ala. Code §§ 7-2-314 and 7-2A-212

153. Plaintiff Weidman ("Plaintiff," for purposes of the Alabama Class's claims) repeats and realleges paragraphs 1-111 as if fully set forth herein.

154. Plaintiff brings this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

155. Ford is and was at all relevant times a merchant with respect to motor vehicles under Ala. Code §§ 7-2-104 and 7-2A-103.

156.   Pursuant to Ala. Code §§ 7-2-314 and 7-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

157.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Master Cylinder Defect which causes the Class Vehicles' brakes to lose hydraulic pressure and fail.

158.   Plaintiff Weidman, individually and on behalf of the other Class members, notified Ford of the Master Cylinder Defect in the Class Vehicles, and its corresponding breach of warranty, through a notice letter delivered by courier on May 24, 2018 to Ford's registered agent in Montgomery, Alabama. Ford acknowledged receipt through a response letter from its counsel dated June 7, 2018. Ford was also provided notice of the Master Cylinder Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.  Ford has not remedied its breach.

159.   Further, Ford has refused to provide an adequate warranty repair for the Master Cylinder Defect, thus rendering the satisfaction of any notice requirement futile.  As stated above, customers that have presented their vehicles for warranty

repair due to Master Cylinder failure have simply been provided replacement defective Master Cylinders.

160.  Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and Ford's breach of the warranty of merchantability.

161.  As a direct and proximate result of Ford's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## COUNT 5
## FRAUDULENT OMISSION

162.  Plaintiff Weidman ("Plaintiff," for purposes of the Alabama Class's claims) repeats and realleges paragraphs 1-111 as if fully set forth herein.

163.  Plaintiff brings this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

164.  Ford was aware of the Master Cylinder Defect within the Class Vehicles when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

165.  Having been aware of the Master Cylinder Defect within the Class Vehicles, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Master Cylinder Defect, Ford had

a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

166.   Ford did not disclose the Master Cylinder Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

167.   For the reasons set forth above, the Master Cylinder Defect within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

168.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on Ford to disclose known material defects with respect to the Class Vehicles.

169.   Had Plaintiff and the other members of the Class known of the Master Cylinder Defect within the Class Vehicles, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

170.   Through its omissions regarding the Master Cylinder Defect within the Class Vehicles, Ford intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

171.   As a direct and proximate result of Ford's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have

purchased the Class Vehicles at all if the Master Cylinder Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT 6
## UNJUST ENRICHMENT

172.   Plaintiff Weidman ("Plaintiff," for purposes of the Alabama Class's claims) repeats and realleges paragraphs 1-111 as if fully set forth herein.

173.   Plaintiff brings this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

174.   Ford has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Ford's concealment of the Master Cylinder Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

175.   Ford has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

176.   It is inequitable and unconscionable for Ford to retain these benefits.

177.   Because Ford concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

178.   Ford knowingly accepted the unjust benefits of its wrongful conduct.

179.   As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**C.    Claims Brought on Behalf of the Florida Class**

<u>COUNT 7</u>
**VIOLATIONS OF THE FLORIDA DECEPTIVE
AND UNFAIR TRADE PRACTICES ACT
Fla. Stat. §§ 502.201, *et seq.***

180.   Plaintiffs Raul Valentin and Erica Gomez ("Plaintiffs," for purposes of the Florida Class's claims) repeat and reallege paragraphs 1-111 as if fully set forth herein.

181.   Plaintiffs bring this claim individually and on behalf of the other members of the Florida Class (the "Class," for purposes of this Count).

182.   The Florida Deceptive and Unfair Trade Practices Act, F.S.A. §§ 501.201, et seq., states that, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

183.   By the conduct described in detail above and incorporated herein, Ford engaged in unfair or deceptive acts in violation of F.S.A. § 501.204.

184.   Ford's omissions regarding the Master Cylinder Defect, described above, which causes the brakes to lose hydraulic pressure and fail, are material facts

that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

185.   Ford intended for Plaintiffs and the other Class members to rely on Ford's omissions regarding the Master Cylinder Defect.

186.   Plaintiffs and the other Class members justifiably acted or relied to their detriment upon Ford's omissions of fact concerning the above-described Master Cylinder Defect, as evidenced by Plaintiffs and the other Class members' purchases of Class Vehicles.

187.   Had Ford disclosed all material information regarding the Master Cylinder Defect to Plaintiffs and the other Class members, Plaintiffs and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

188.   Ford's omissions have deceived Plaintiffs, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

189.   As a direct and proximate result of Ford's unfair and deceptive trade practices, Plaintiffs and the other Class members have suffered ascertainable loss and actual damages. Plaintiffs and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Master Cylinder

Defect been disclosed. Plaintiffs and the other Class members also suffered diminished value of their vehicles. Plaintiffs and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under F.S.A. §§ 501.201, *et seq.*

## COUNT 8
## FRAUDULENT OMISSION

190.   Plaintiffs Raul Valentin and Erica Gomez ("Plaintiffs," for purposes of the Florida Class's claims) repeat and reallege paragraphs 1-111 as if fully set forth herein.

191.   Plaintiffs bring this Count individually and on behalf of the other members of the Florida Class (the "Class," for purposes of this Count).

192.   Ford was aware of the Master Cylinder Defect within the Class Vehicles when it marketed and sold the Class Vehicles to Plaintiffs and the other members of the Class.

193.   Having been aware of the Master Cylinder Defect within the Class Vehicles, and having known that Plaintiffs and the other members of the Class could not have reasonably been expected to know of the Master Cylinder Defect, Ford had a duty to disclose the defect to Plaintiffs and the other members of the Class in connection with the sale or lease of the Class Vehicles.

194.   Ford did not disclose the Master Cylinder Defect to Plaintiffs and the other members of the Class in connection with the sale of the Class Vehicles.

195. For the reasons set forth above, the Master Cylinder Defect within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

196. In purchasing the Class Vehicles, Plaintiffs and the other members of the Class reasonably relied on Ford to disclose known material defects with respect to the Class Vehicles.

197. Had Plaintiffs and the other members of the Class known of the Master Cylinder Defect within the Class Vehicles, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

198. Through its omissions regarding the Master Cylinder Defect within the Class Vehicles, Ford intended to induce, and did induce, Plaintiffs and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

199. As a direct and proximate result of Ford's omissions, Plaintiffs and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Master Cylinder Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT 9
## UNJUST ENRICHMENT

200.   Plaintiffs Raul Valentin and Erica Gomez ("Plaintiffs," for purposes of the Florida Class's claims) repeats and realleges paragraphs 1-111 as if fully set forth herein.

201.   Plaintiffs brings this Count individually and on behalf of the other members of the Florida Class (the "Class," for purposes of this Count).

202.   Ford has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Ford's concealment of the Master Cylinder Defect, and Plaintiffs and the other members of the Class have overpaid for these vehicles.

203.   Ford has received and retained unjust benefits from Plaintiffs and the other members of the Class, and inequity has resulted.

204.   It is inequitable and unconscionable for Ford to retain these benefits.

205.   Because Ford concealed its fraud and deception, Plaintiffs and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

206.   Ford knowingly accepted the unjust benefits of its wrongful conduct.

207.   As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and the other members of the Class in an amount to be proven at trial.

**D.    Claims Brought on Behalf of the Georgia Class**

<u>COUNT 10</u>
**VIOLATIONS OF GEORGIA'S
FAIR BUSINESS PRACTICES ACT
Ga. Stat. Ann. §§ 10-1-390, *et seq.*

208.    Plaintiff Perry Burton ("Plaintiff," for purposes of the Georgia Class's claims) repeats and realleges paragraphs 1-111 as if fully set forth herein.

209.    Plaintiff brings this claim individually and on behalf of the other members of the Georgia Class (the "Class," for purposes of this Count).

210.    The Georgia Fair Business Practices Act, Ga. Stat. Ann. § 10-1-393, states that, "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful."

211.    By the conduct described in detail above and incorporated herein, Ford engaged in deceptive trade practices.

212.    Plaintiff Weidman, individually and on behalf of the other Class members, notified Ford of the Master Cylinder Defect in the Class Vehicles, and its deceptive practices, through a notice letter delivered by courier on May 24, 2018 to Ford's registered agent in Montgomery, Alabama. Ford acknowledged receipt through a response letter from its counsel dated June 7, 2018. Ford was also provided notice of the Master Cylinder Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

213.   Ford's omissions regarding the Master Cylinder Defect, described above, which causes the brakes to lose hydraulic pressure and fail, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

214.   Ford intended for Plaintiff and the other Class members to rely on Ford's omissions regarding the Master Cylinder Defect.

215.   Plaintiff and the other Class members justifiably acted or relied to their detriment upon Ford's omissions of fact concerning the above-described Master Cylinder Defect, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

216.   Had Ford disclosed all material information regarding the Master Cylinder Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

217.   Ford's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

218.   As a direct and proximate result of Ford's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the

Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Engine Overheat/Fire Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Ga. Stat. Ann. § 10-1-399.

**COUNT 11**
**BREACH OF IMPLIED WARRANTY**
**OF MERCHANTABILITY**
**Ga. Stat. Ann. §§ 84-2-314 and 84-2A-212**

219.   Plaintiff Perry Burton ("Plaintiff," for purposes of the Georgia Class's claims) repeats and realleges paragraphs 1-111 as if fully set forth herein.

220.   Plaintiff brings this Count individually and on behalf of the other members of the Georgia Class (the "Class," for purposes of this Count).

221.   Ford is and was at all relevant times a merchant with respect to motor vehicles under Ga. Stat. Ann. §§ 11-2-104 and 11-2A-103.

222.   Pursuant to Ga. Stat. Ann. §§ 11-2-314 and 84-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

223.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the

72

trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Master Cylinder Defect which causes the Class Vehicles' brakes to lose hydraulic pressure and fail.

224. Plaintiff Weidman, individually and on behalf of the other Class members, notified Ford of the Master Cylinder Defect in the Class Vehicles, and its corresponding breach of warranty, through a notice letter delivered by courier on May 24, 2018 to Ford's registered agent in Montgomery, Alabama. Ford acknowledged receipt through a response letter from its counsel dated June 7, 2018. Ford was also provided notice of the Master Cylinder Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge. Ford has not remedied its breach.

225. Further, Ford has refused to provide an adequate warranty repair for the Master Cylinder Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty repair due to Master Cylinder failure have simply been provided replacement defective Master Cylinders.

226. Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and Ford's breach of the warranty of merchantability.

227.   As a direct and proximate result of Ford's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

### COUNT 12
### FRAUDULENT OMISSION

228.   Plaintiff Perry Burton ("Plaintiff," for purposes of the Georgia Class's claims) repeats and realleges paragraphs 1-111 as if fully set forth herein.

229.   Plaintiff brings this Count individually and on behalf of the other members of the Georgia Class (the "Class," for purposes of this Count).

230.   Ford was aware of the Master Cylinder Defect within the Class Vehicles when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

231.   Having been aware of the Master Cylinder Defect within the Class Vehicles, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Master Cylinder Defect, Ford had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

232.   Ford did not disclose the Master Cylinder Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

233.   For the reasons set forth above, the Master Cylinder Defect within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

234.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on Ford to disclose known material defects with respect to the Class Vehicles.

235.   Had Plaintiff and the other members of the Class known of the Master Cylinder Defect within the Class Vehicles, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

236.   Through its omissions regarding the Master Cylinder Defect within the Class Vehicles, Ford intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

237.   As a direct and proximate result of Ford's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Master Cylinder Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT 13
## UNJUST ENRICHMENT

238.    Plaintiff Perry Burton ("Plaintiff," for purposes of the Georgia Class's claims) repeats and realleges paragraphs 1-111 as if fully set forth herein.

239.    Plaintiff brings this Count individually and on behalf of the other members of the Georgia Class (the "Class," for purposes of this Count).

240.    Ford has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Ford's concealment of the Master Cylinder Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

241.    Ford has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

242.    It is inequitable and unconscionable for Ford to retain these benefits.

243.    Because Ford concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

244.    Ford knowingly accepted the unjust benefits of its wrongful conduct.

245.    As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**E.    Claims Brought on Behalf of the Texas Class**

## COUNT 14
## VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES – CONSUMER PROTECTION ACT
### Tex. Bus. & Com. Code §§ 17.01, *et seq.*

246.   Plaintiff Teresa Perry ("Plaintiff," for purposes of the Texas Class's claims) repeats and realleges paragraphs 1-111 as if fully set forth herein.

247.   Plaintiff brings this Count individually and on behalf of the other members of the Texas Class (the "Class," for purposes of this Count).

248.   The Texas Deceptive Trade Practices—Consumer Protection Act ("TDTPA") states that it is unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46.

249.   By the conduct described in detail above and incorporated herein, Ford engaged in false, misleading and deceptive trade practices.

250.   Ford was provided notice of these issues and defects through numerous complaints filed against it, as well as internal knowledge derived from testing and internal expert analysis.

251.   Ford's omissions regarding the Master Cylinder Defect, described above, which causes the brakes to lose hydraulic pressure and fail, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

252.   Ford intended for Plaintiff and the other Class members to rely on Ford's omissions regarding the Master Cylinder Defect.

253.   Plaintiff and the other Class members justifiably acted or relied to their detriment upon Ford's omissions of fact concerning the above-described Master Cylinder Defect, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

254.   Had Ford disclosed all material information regarding the Master Cylinder Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

255.   Ford's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

256.   As a direct and proximate result of Ford's deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Master Cylinder Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of

their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under the TDTPA.

## COUNT 15
## BREACH OF EXPRESS WARRANTY
### Tex. Bus. & Com. Code §§ 2.313 and 2A.210

257. Plaintiff Teresa Perry ("Plaintiff" for purposes of the Texas Class's claims) repeats and realleges paragraphs 1-111 as if fully set forth herein.

258. Plaintiff brings this Count individually and on behalf of the Texas Class (the "Class," for purposes of this Count).

259. Ford is and was at all relevant times a merchant with respect to the Class Vehicles.

260. In its Limited Warranty, Ford expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period. Ford provides the following language in its F-150 Owner's Manual, which upon information and belief, is substantially identical for all models:

> Your Bumper to Bumper Coverage lasts for three years-unless you drive more than 36,000 miles before three years elapse. In that case, your coverage ends at 36,000 miles….Your NEW VEHICLE LIMITED WARRANTY gives you specific legal rights….Under your New Vehicle Limited Warranty if: your Ford vehicle is properly operated and maintained, and was taken to a Ford dealership for a warranted repair during the warranty period, then authorized Ford Motor Company dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship.

261. Ford's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles.

262. Ford breached its express warranty to repair defective parts in the Class Vehicles. Ford has not repaired the Class Vehicles' Master Cylinder Defect. Plaintiff Perry presented her vehicle for repair after the Master Cylinder in her truck failed, and instead of providing a non-defective replacement master cylinder, Ford installed the same defective Master Cylinder that is causing the Master Cylinder Defect in all Class Vehicles.

263. Plaintiff Weidman, individually and on behalf of the other Class members, notified Ford of the Master Cylinder Defect in the Class Vehicles, and its corresponding breach of warranty, through a notice letter delivered by courier on May 24, 2018 to Ford's registered agent in Montgomery, Alabama. Ford acknowledged receipt through a response letter from its counsel dated June 7, 2018. Ford was also provided notice of the Master Cylinder Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge. Ford has not remedied its breach.

264. Further, Ford has refused to provide an adequate warranty repair for the Master Cylinder Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty

repair due to Master Cylinder failure have simply been provided replacement defective Master Cylinders.

265.   The Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Ford has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

266.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

267.   Also, as alleged in more detail herein, at the time that Ford warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Ford improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the Ford Vehicles under false pretenses.

268.   As a direct and proximate result of Ford's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT 16
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Tex. Bus. & Com. Code §§ 2.314 and 2A.212

269.   Plaintiff Teresa Perry ("Plaintiff," for purposes of the Texas Class's claims) repeats and realleges paragraphs 1-111 as if fully set forth herein.

270.   Plaintiff brings this Count individually and on behalf of the Texas Class (the "Class," for purposes of this Count).

271.   Ford is and was at all relevant times a merchant with respect to motor vehicles under Tex. Bus. & Com. Code §§ 2.104 and 2A.103.

272.   Pursuant to Tex. Bus. & Com. Code §§ 2.314 and 2A.212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

273.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Master Cylinder Defect which causes the Class Vehicles' brakes to lose hydraulic pressure and fail.

274.   Plaintiff Weidman, individually and on behalf of the other Class members, notified Ford of the Master Cylinder Defect in the Class Vehicles, and its

corresponding breach of warranty, through a notice letter delivered by courier on May 24, 2018 to Ford's registered agent in Montgomery, Alabama. Ford acknowledged receipt through a response letter from its counsel dated June 7, 2018. Ford was also provided notice of the Master Cylinder Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge. Ford has not remedied its breach.

275.   Further, Ford has refused to provide an adequate warranty repair for the Master Cylinder Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty repair due to Master Cylinder failure have simply been provided replacement defective Master Cylinders.

276.   Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and Ford's breach of the warranty of merchantability.

277.   As a direct and proximate result of Ford's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## COUNT 17
## FRAUDULENT OMISSION

278.   Plaintiff Teresa Perry ("Plaintiff," for purposes of the Texas Class's claims) repeats and realleges paragraphs 1-111 as if fully set forth herein.

279.   Plaintiff brings this Count individually and on behalf of the other members of the Texas Class (the "Class," for purposes of this Count).

280.   Ford was aware of the Master Cylinder Defect within the Class Vehicles when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

281.   Having been aware of the Master Cylinder Defect within the Class Vehicles, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Master Cylinder Defect, Ford had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

282.   Ford did not disclose the Master Cylinder Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

283.   For the reasons set forth above, the Master Cylinder Defect within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

284.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on Ford to disclose known material defects with respect to the Class Vehicles.

285. Had Plaintiff and the other members of the Class known of the Master Cylinder Defect within the Class Vehicles, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

286. Through its omissions regarding the Master Cylinder Defect within the Class Vehicles, Ford intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

287. As a direct and proximate result of Ford's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Master Cylinder Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT 18
## UNJUST ENRICHMENT

288. Plaintiff Teresa Perry ("Plaintiff," for purposes of the Texas Class's claims) repeats and realleges paragraphs 1-111 as if fully set forth herein.

289. Plaintiff brings this Count individually and on behalf of the other members of the Texas (the "Class," for purposes of this Count).

290. Ford has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Ford's concealment of the

Master Cylinder Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

291.  Ford has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

292.  It is inequitable and unconscionable for Ford to retain these benefits.

293.  Because Ford concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

294.  Ford knowingly accepted the unjust benefits of its wrongful conduct.

295.  As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

## VIII.  <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Nationwide and Statewide Classes, respectfully requests that the Court enter judgment in his favor and against Defendant Ford Motor Company as follows:

a.  Declaring that this action is a proper class action, certifying the Nationwide and Statewide Class as requested herein, designating Plaintiffs as Nationwide and Statewide Class Representative, and appointing Plaintiffs' attorneys as Class Counsel;

b.      Enjoining Ford from continuing the unfair business practices alleged in this Complaint;

c.      Ordering Ford to pay actual and statutory damages (including punitive damages) and restitution to Plaintiff and the other and Statewide Class members, as allowable by law;

d.      Ordering Ford to pay both pre- and post-judgment interest on any amounts awarded;

e.      Ordering Ford to pay attorneys' fees and costs of suit; and

f.      Ordering such other and further relief as may be just and proper.

## IX. **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: August 30, 2018

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, Michigan  48307
Telephone:  (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com

W. Daniel "Dee" Miles, III*
H. Clay Barnett, III*
**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone:  334-269-2343
Dee.Miles@Beasleyallen.com
Clay.Barnett@BeasleyAllen.com

Adam J. Levitt
John E. Tangren
Daniel R. Ferri
**DICELLO LEVITT & CASEY LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Telephone:  312-214-7900
alevitt@dlcfirm.com
jtangren@dlcfirm.com
dferri@dlcfirm.com

*Counsel for Plaintiffs and the Proposed Classes*

**\*** *admitted to the Eastern District of Michigan*