UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL WEIDMAN, RAUL VALENTIN,
ERICA GOMEZ, PERRY BURTON,
TERESA PERRY, and ROY NAASZ,
Individually and on behalf of all others
similarly situated,

        Plaintiffs,

v.

FORD MOTOR COMPANY,

        Defendant.
_____/

Case No.: 18-cv-12719
Honorable Gershwin A. Drain

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT [#35]

### I. INTRODUCTION

Presently before the Court is the Defendant, Ford Motor Company's, Motion to Dismiss Consolidated Class Action Complaint, filed on December 18, 2018. Plaintiffs filed their Response in Opposition on January 23, 2019. Defendant filed a Reply in support of its Motion to Dismiss on February 6, 2019. Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter. Accordingly, the Court will resolve the Defendant's Motion for Summary Judgment on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For

the reasons that follow, the Court will grant in part and deny in part Defendant's Motion to Dismiss Consolidated Class Action Complaint.

## II. FACTUAL BACKGROUND

Plaintiffs are six individuals from five different states who, at varying times between 2015 through 2017, purchased a Ford F-150 truck. Plaintiffs allege that each of these vehicles contains a defective front brake master cylinder that places it at risk of suddenly and unexpectedly losing braking ability. Plaintiffs assert that the master cylinders in all the F-150 trucks, model years 2013 through 2018, have a "defective sealing mechanism that is inadequate to prevent brake fluid . . . from leaking," causing reduced or lost braking ability. Compl. at §§ 4-5. Plaintiffs Paul Weidman, Roy Naasz, and Teresa Perry allege that they experienced some loss of braking force while driving. Specifically, Plaintiff Weidman maintains that his brakes failed within five months of purchasing his truck. Plaintiff Perry's brakes failed with less than 20,000 miles on her truck and Plaintiff Naasz's brakes failed while he was trying to slow down for a freeway off-ramp. In each case, Ford technicians diagnosed the problem as a failed master cylinder.

Plaintiffs further allege that Ford's pre-sale knowledge of the master cylinder defect is evident from internal documents that it provided to the National Highway Traffic Safety Administration. For example, on June 16, 2015, a Ford engineer sent an email stating "Master Cylinder leaks are getting a lot of attention

at Ford." Compl. § 76. Plaintiffs further assert that there are an exceptionally high number of consumer complaints regarding the master cylinder defect, beginning with the model year 2013.

Ford admitted the existence of the master cylinder defect in a safety recall. However, Plaintiffs complain that the recall was inadequate because it only covered F-150s from model years 2013 through 2014. The recall was also inadequate because it simply provided for the replacement of the defective master cylinder with another defective master cylinder.

Plaintiffs seek to certify a nationwide class of all "current or former owners and/or lessees" of model year 2013 through 2018 Ford F-150 trucks under federal law, as well as seek to certify, on multiple claims, separate Alabama, California, Florida, Georgia and Texas state classes for vehicles purchased or leased in those states.

### III. LAW & ANALYSIS

#### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is

and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

4

misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* at 1950.

The district court generally reviews only the allegations set forth in the complaint in determining whether to grant a Rule 12(b)(6) motion to dismiss, however "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account. *Amini v. Oberlin College*, 259 F. 3d 493, 502 (6th Cir. 2001). Documents attached to a defendant's "motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.*

### B. Breach of Express Warranty

Defendant argues that Plaintiffs' allegations show that Ford fully complied with the terms of its Limited Warranty. The Complaint alleges Ford breached its express warranty to repair defective parts because when the Plaintiffs presented their vehicles for repair of the master cylinder, Ford installed the same defective master cylinder. Compl. §§ 202, 318. Defendant argues that Plaintiffs failure to allege that any problems have reoccurred is fatal to their express warranty claim. Plaintiffs rely on two out-of-circuit cases in support of their position. *See Benkle v. Ford Motor Co.*, No. SA CV 16-1569-DOC, 2017 U.S. Dist. LEXIS 222317 (C.D. Cal. Dec. 22, 2017); *Gertz v. Toyota Motor Corp.*, No. CV 10-1089, 2011 U.S. Dist. LEXIS 158165 (C.D. Cal. Apr. 28, 2011).

However, Plaintiffs' claims are governed by Alabama and Texas law. Plaintiff has provided no authority from these jurisdictions demonstrating that replacing an allegedly defective part with the same part amounts to a breach of an express warranty. *See Rhodes v. Gen. Motors Corp., Chevrolet Div.*, 621 So.2d 945, 948 (Ala. 1993) (finding no breach of express warranty where "it is undisputed that each time [plaintiffs] brought the vehicle in for repairs, it was repaired" and plaintiffs "produced no evidence that the . . . repair failed to remedy the car's transmission problem."); *Am. Med. Oxygen Sales Corp. v. Inova Labs, Inc.*, No. 1:14-CV-278-LY, 2015 U.S. Dist. LEXIS 181369 (W.D. Tex. Oct. 19, 2015) (finding no breach of express warranty where plaintiff "has not alleged that [defendant] has failed to provide such repairs or replacements when requested.").

Ford's Limited Warranty states that "[n]othing in this warranty should be construed as requiring defective parts to be replaced with parts of a different type or design than the original part, so long as the vehicle functions properly with the replacement part." Plaintiffs have not alleged that they experienced any problems subsequent to the replacement of the master cylinder. Plaintiffs rely on *Benkle*, but that case involves California law and allegations that the "replacement [parts] are substantially certain to fail." *Benkle*, 2017 U.S. Dist. LEXIS 222317, at *37. Unlike the *Benkle* plaintiffs, Plaintiffs do not allege the replacement parts are substantially certain to fail.

Plaintiffs further assert that Ford's argument is precluded by the "essential purpose" provision of the UCC. Plaintiffs maintain that since the warranty explicitly states its purpose is "to remedy" any "defects that result in vehicle part malfunction or failure during the warranty period[,]" by replacing the defective master cylinders with the same defective part, Ford failed to remedy the brake system defect. As such, Ford's repair failed in its essential purpose under both Texas and Alabama law. Ala. Code § 7-2-719 ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title."); Tex. Bus. & Com. Code Ann. § 2.719 (same). However, this argument appears to suffer from the same problem. Namely, Plaintiffs fail to allege that the problems with the brake system reoccurred.

Ford also argues that Plaintiff Perry's express warranty claim fails for the additional reason that she does not allege that she provided Ford with notice of the defects. Under Texas law, a claim for breach of express warranty requires a plaintiff to have provided pre-suit notice of the alleged breach to both the seller and remote manufacturer of the defective product. *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 706-07 (5th Cir. 2014).

Here, Plaintiff Perry only alleges that Plaintiff Weidman notified Ford of the alleged defect "on behalf of the other Class Members." Compl. ¶ 319. Plaintiff argues this is enough because Texas's notice requirement is to be liberally

construed citing to *Vintage Homes, Inc. v. Coldiron*, 585 S.W.2d 886, 889 (Tex. Ct. App. 1979). However, in *Vintage Homes*, the defendant became aware of the defective mobile home because the buyer contacted the dealer, who in turn contacted the defendant. *Id*. at 887. The defendant then sent a repairman to inspect the unit. *Id*. at 887.

Plaintiff does not similarly allege that she took any steps to put Ford on notice of the defect with her vehicle's brake system. Nor does she offer any authority suggesting that U.*S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 201-02 (Tex. App. 2003), authority provided by Defendant, has been overturned. In *U.S. Tire-Tech*, the Texas Court of Appeal held that "[t]he manufacturer must be made aware of a problem with a particular product purchased by a particular buyer." *Id*. For this additional reason, Plaintiff Perry's breach of express warranty claim fails.

Based on the foregoing, counts 3 and 15 will be dismissed.

**C. Breach of Implied Warranty of Merchantability**

Ford next raises several reasons that the Court should dismiss Plaintiffs' breach of implied warranty of merchantability claims. First, Ford argues that the Court should dismiss the implied warranty of merchantability claims for lack of privity as to Plaintiffs Weidman (AL), Burton (GA), and Naasz (CA) (counts 4, 11, and 22), because the laws of those states preclude a plaintiff from suing for breach

of an implied warranty of merchantability unless the warranted product was purchased directly from the warrantor. Plaintiffs Weidman, Burton and Naasz allege that they purchased their trucks from independent Ford dealers, thus these Plaintiffs are not in privity with Ford and their implied warranty claims must fail. *Williams v. Yamaha Motor Corp.*, U.S.A., No. CV 13-05066 BRO (VBKx), 2015 U.S. Dist. LEXIS 193825, at *14-17 (C.D. Cal. Jan. 7, 2015); *Rampey v. Novartis Consumer Health, Inc.*, 867 So. 2d 1079, 1087 (Ala. 2003) ("[A] claim for breach of an implied warranty is not available against a manufacturer who was not involved in the transaction pursuant to which the complaining party purchased the product."); *Keaton v. A.B.C. Drug Co.*, 467 S.E.2d 558, 561 (Ga. 1996) (same).

Plaintiffs acknowledge the privity requirement, but maintain there are exceptions to the privity rule, including where a plaintiff is the intended third-party beneficiary of an agreement between the manufacturer and the retailer. *See In re MyFord Touch Consumer Litig.*, 46 F. Supp.3d 936, 983-84 (N.D. Cal. 2014). The *MyFord Touch* court held that "the third-party beneficiary exception remains viable under California law." *Id*. at 984. The court also noted that the Ninth Circuit's decision in *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008), a case relied on by Defendant, did not clearly hold that the third-party beneficiary exception is unavailable under California law. Upon consideration of the parties' arguments, the Court is not inclined to dismiss Plaintiffs Burton's and

Naasz's breach of implied warranty claims based on a lack of privity because the they have identified cases that have recognized the exception for the privity requirement. *Id., see also Terrill v. Electrolux Home Prod., Inc*., 753 F. Supp. 2d 1272, 1288 (S.D. Ga. 2010).

However, Plaintiff Weidman has failed to identify any case law from Alabama suggesting an exception to the privity requirement. Therefore, Plaintiff Weidman's implied warranty claim must be dismissed because there is an absence of authority contrary to the holding in *Rampey v. Novartis Consumer Health, Inc.,* 867 So. 2d 1079, 1087 (Ala. 2003)("[A] claim for breach of an implied warranty is not available against a manufacturer who was not involved in the transaction pursuant to which the complaining party purchased the product."). Count 4 is dismissed.

Defendant further asserts that Plaintiff Naasz's claim for breach of the implied warranty of merchantability under California's Song-Beverly Act fails because that law's protections apply only to new vehicles. Thus, because Plaintiff Naasz leased his vehicle for two years prior to purchasing it, Defendant argues he has no claim under the Song-Beverly Act. However, as a lessee, Naasz has a viable breach of implied warranty claim under the Act. *See* Song-Beverly Act. Cal. Code § 1791(a)(defining "consumer goods" to include a lease of a new product); *see also D.L. Edmonson Selective Serv. Inc. v. LCW Auto. Corp.,* 689 F.

Supp.2d 1226, 1236 (C.D. Cal. 2010)(a "lessee has the same rights against the manufacturer that the lessee would have 'if the goods had been purchased by the lessee.'"). Contrary to Defendant's argument, the Song-Beverly Act's protections apply to leased vehicles.

However, Defendant also argues that all of the implied warranty claims fail because the alleged "defect" referenced in the Complaint is insufficient to render the vehicles unmerchantable. Defendant argues that Plaintiffs have not alleged that their vehicles are unfit for their ordinary purpose of providing transportation. Plaintiff Naasz only alleges that he experienced a single instance of reduced braking power and that he sought and received a repair. He does not allege any further experiences that have prevented the vehicle from providing transportation. He does not allege that the purported master cylinder defect prevents him from using his vehicle. Therefore, Defendant argues Plaintiff Naasz cannot maintain his implied warranty claim for this separate reason. *See Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995).

Plaintiff Naasz counters that the implied warranty of merchantability is breached when an alleged defect affects the "drivability, safety, and usefulness" of a vehicle. *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp.3d 1277, 1287 (N.D. Ga. 2018). However, the *Amin* plaintiffs alleged that their cars HVAC system had a defect that caused "accumulation of mold . . . caus[ing] the Vehicles passenger

cabin to be unbearable and thus, unusable for its intended purpose[,]" and that the system was known to secrete toxins that are harmful to humans and animals. *Id*. at 1288. In the instant case, Naasz does not allege his vehicle cannot brake nor that he is unable to use his vehicle. It would appear that Naasz's implied warranty claims fail for this reason. Counts 21 and 22 are likewise dismissed.

Defendant further argues that Plaintiff Barton has failed to allege that he ever experienced any issues with the operation of his vehicle. Defendant argues that the overwhelming majority of courts recognize that a product that never manifests an alleged defect cannot serve as the basis for a claim for breach of the implied warranty of merchantability. *See Briehl v. Gen. Motors Corp*., 172 F.3d 623, 627-29 (8th Cir. 1999) (collecting cases); *Hines v. Mercedes-Benz USA*, LLC, 358 F. Supp.2d 1222, 1233 (N.D. Ga. 2005).

Plaintiffs counter that the fact Plaintiff Burton's brakes have not yet failed does not affect the viability of his implied warranty claim. However, the cases Plaintiff cites either involve manifested defects, *Willis Mining, Inc. v. Noggle*, 509 S.E.2d 731 (Ga. Ct. App. 1998); *Sloan v. Gen. Motors LLC*, 287 F. Supp.3d 840 (N.D. Cal. 2018), or did not apply Georgia law, *In re Gen. Motors LLC Ignition Switch Litig*., 257 F.Supp.3d 372, 426 (S.D.N.Y. 2017). Plaintiff has not provided controlling authority that the Georgia courts would permit an implied warranty

claim to proceed without allegations that the vehicle was inoperable or unusable. Thus, Count 11 is also dismissed.

Lastly, Defendant also maintains that similar to her express warranty claim, Plaintiff Perry failed to provide the required pre-suit notice for her implied warranty claim. The notice requirement applies equally to her implied warranty claims. *Martin v. Home Depot, U.S.A., Inc.*, 369 F. Supp.2d 887, 893 (W.D. Tex. 2005). As such, Plaintiff Perry's implied warranty claim (Count 16) is similarly dismissed.

### D. Magnuson-Moss Warranty Act

Defendant next argues that since Plaintiffs have failed to allege any viable breach of warranty claims, their claims under the MMWA (count 1) also fail. Defendant is correct that if the Court finds Plaintiffs have failed to adequately plead express and implied warranty claims, their claim under the MMWA also fails. *Gill v. Bluebird Wanderlodge*, No. 5:02-CV-328-2(CAR), 2004 WL 5311477, at *4 (M.D. Ga. Feb. 4, 2004); *Zea v. Ford Motor Co.*, No. H-14-3290, 2017 WL 979067, at *2 (S.D. Tex. Mar. 10, 2017); *Chase v. Kawasaki Motors Corp., U.S.A.*, 140 F. Supp.2d 1280, 1291 (M.D. Ala. 2001); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 n.3 (9th Cir. 2008). Count 1 is therefore dismissed.

## E. Fraud

Defendant also argues that Plaintiffs' fraud based claims fail because they do not sufficiently allege Ford's knowledge of the defect. Defendant also complains that Plaintiffs fail to allege the requisite particularity concerning how they relied upon any statement or omission by Ford.

Ford maintains that Weidman's demand letter was insufficient to provide pre-suit notice under Alabama's Deceptive Trade Practices Act ("ADTPA"). The Act requires that a consumer provide a potential defendant with "a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." Ala. Code § 8-19-10(e).

As an initial matter, Plaintiff argues that the demand provision does not apply here because the act states that pre-suit notice "shall not apply if the prospective respondent does not maintain a place of business or does not keep assets within the state." Ala. Code § 9-19-10(e). Because Ford neither maintains a place of business nor keeps assets in Alabama, pre-suit notice is not required. Ford does not address this argument other than to complain that these allegations are not in the Complaint.

Even if Defendant is correct that pre-suit notice is required, Weidman's letter satisfied the requirements of the statute. It described Weidman's experience

of "a loss of brake function involving the master cylinder and brake booster" in his 2017 F-150 truck, and asserted that Ford violated ADTPA Section § 8-19-5(27) by selling F-150 trucks with knowledge that they were materially defective and by knowingly concealing this material information. The letter explained the substance of Weidman's claims, including that Ford failed to disclose "a uniform defect" in its F-150 trucks: a brake system "prone to lose hydraulic pressure and fail during normal operation" due to a faulty master cylinder. The letter also made a written demand for relief.

Similarly, Plaintiff Burton satisfied the Georgia Fair Business Practices Act's notice requirement. "The notice requirement of [the FBPA] is to be liberally construed, and the sufficiency of notice is a question for the court." *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1292 (N.D. Ga. 2018). In the class action context, notice from one consumer expressing intent to bring representative claims on behalf of others satisfies the FBPA's notice requirement for all putative claimants, named or otherwise. *Id.* (holding that plaintiff who did not send separate demand letter could "rely on the pre-suit demand sent by" another plaintiff individually and "on behalf of all others similarly situated."); *see also Schorr v. Countrywide Home Loans, Inc.*, 697 S.E.2d 827, 829 (Ga. 2010) (demand from named plaintiffs satisfies FBPA requirement for unnamed class members); *In re Arby's Rest. Grp. Inc. Litig.*, No. 1:17-cv-0514-AT, 1:17-cv-1035-

AT, 1:17-mi-55555-AT, 2018 WL 2128441, at *19 (N.D. Ga. Mar. 5, 2018) (permitting one plaintiff to "rely on the pre-suit demand" sent by other plaintiffs on behalf of "all others similarly situated.")

Moreover, Plaintiffs have adequately alleged Ford's pre-sale knowledge contrary to Defendant's assertion. The Complaint includes allegations showing Ford's pre-sale knowledge of the brake system defect through "pre-release evaluation and testing; repair data, replacement part sales data; early consumer complaints made directly to Ford, collected by NHTSA, testing done in response to those complaints, aggregate data from Ford dealers; and other internal sources." Compl., ¶¶ 83-105. Construed liberally, these allegations are sufficient to demonstrate Ford's knowledge of the defect in the brake system.

Contrary to Defendant's argument, Plaintiffs also adequately allege reliance. Plaintiffs have alleged that they relied to their detriment on Ford's omissions concerning the brake system defect when making the decision to purchase or lease their F-150s. Compl., ¶¶ 193-94, 224-25, 242-43, 252-53, 271-72, 290-91, 309-10, 340-41, 365-66, 380, 422. Plaintiffs further allege that they would not have purchased, or would not have paid as much for, their F-150s had they known of the brake system defect. *Id*.

Ford argues that Plaintiffs Valentin, Gomez and Burton's fraudulent omission claims also fail pursuant to the economic loss doctrine. Contrary to

Defendant's argument, neither Florida nor Georgia applies the economic loss doctrine to bar claims involving fraudulent inducement.

In *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So.3d 399, 406-07 (Fla. 2013), the Supreme Court of Florida addressed the need to limit the "over-expansion of the economic loss rule," expressly holding that the economic loss rule does not apply to claims based on fraudulent inducement or negligent misrepresentation. *Id.* at 406. With respect to fraudulent inducement, the court cited to its previous opinion in *HTP, Ltd. v. Lineas Aeras Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996), in which it held that "fraud in the inducement is an independent tort and is not barred by the economic loss rule." *Id.* Following *Tiara*, federal courts have refused to apply the economic loss doctrine to bar fraudulent concealment claims under Florida law. *See MyFord Touch*, 46 F. Supp. 3d at 965; *In re Volkswagon Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 WL 1902160, at *18 (D.N.J. May 8, 2017). Here, Plaintiffs' fraudulent omission claim falls within the fraudulent inducement exception recognized in *Tiara* and *MyFord Touch*, as these claims stem from Ford's intent to induce the Florida Plaintiffs into purchasing their F-150s by concealing the Brake System Defect. *See Tiara*, 110 So. 3d at 406; *MyFord Touch*, 46 F. Supp. 3d at 965.

The economic loss doctrine is likewise no bar to the Georgia Plaintiff's fraudulent omission and Fair Business Practices Act claims, as Georgia does not

recognize the economic loss rule for claims arising from fraudulent inducement. *See James v. Terex USA, LLC*, No. CV 516-60, 2017 WL 2126596, at *1-2 (S.D. Ga. May 16, 2017) ("Georgia courts . . . have repeatedly recognized an exception to the economic loss rule for fraudulent inducement claims"); *Holloman v. D.R. Horton, Inc.*, 524 S.E.2d 790, 797 (Ga. Ct. App. 1999) ("The economic loss rule is inapplicable in the presence of passive concealment or fraud.")

### F. Unjust Enrichment

Lastly, Defendant argues that Plaintiffs' unjust enrichment claims (counts 6, 9,13,18 and 24) fail because Ford's Limited Warranty covers the same subject matter. Plaintiff counters that it is well established in the Sixth Circuit that a plaintiff may plead unjust enrichment in the alternative. However, Defendant acknowledges the existence of the limited warranty. While Plaintiff argues that it would be improper at the pleading stage to dismiss this claim because Defendant may dispute the allegation in a subsequent stage of the proceeding, Defendant does not appear likely to do that. Because Ford "admits to the existence of a valid contract such that whether a contract exists is not at issue for the factfinder[,]" Plaintiffs' unjust enrichment claims fail. *See Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 182 (6th Cir. 1996). Counts 6, 9, 13, 18 and 24 should be dismissed.

## IV. CONCLUSION

Accordingly, for the reasons articulated above, Defendant Ford Motor Company's Motion to Dismiss Consolidated Class Action Complaint [#35] is GRANTED IN PART and DENIED IN PART.

Counts 1, 3, 4, 6, 9, 11, 13, 15, 16, 18, 21, 22 and 24 are dismissed.

Counts 2, 5, 7, 8, 10, 12, 14, 17, 19, 20 and 23 remain.

SO ORDERED.

Dated: July 10, 2019

s/Gershwin A. Drain  
HON. GERSHWIN A. DRAIN  
United States District Court Judge

CERTIFICATE OF SERVICE
Copies of this Order were served upon attorneys of record on
July 10, 2019, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager