UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL WEIDMAN, *et al.*,

        Plaintiff,

v.

FORD MOTOR COMPANY,

        Defendants.
_____/

Case No.: 18-cv-12719
Hon. Gershwin A. Drain

## OPINION AND ORDER REGARDING CLASS NOTICE AND AMENDING CLASS DEFINITION

### I.  INTRODUCTION

On April 8, 2022, this Court issued a Redacted Opinion and Order granting in part and denying in part Plaintiffs' Motion for Class Certification, among other relief. *See* ECF No. 218.  In its Opinion and Order, the Court certified an issue class[1] pursuant to Fed. R. Civ. P. 23(b)(3) and 23(c)(4) consisting of all persons who purchased or leased a 2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in Safety Recall 20S31 in Alabama, California, Florida, Georgia and Texas, for the determination of the following issues:  (1)  Whether the Class Vehicles' brake systems are defective; (2)  whether

---

[1] As described below, this aspect of the Court's certification order must be amended to conform with Plaintiffs' requested relief in the Motion for Class Certification.

Defendant possessed pre-sale knowledge of the defect, and (3) whether information about the defect that was concealed would be material to a reasonable buyer. *Id.*, PageID.16541.

The Court's Opinion and Order also directed the parties to meet and confer and submit a proposal for class notice and a method for delivering notice to absent class members. In their Joint Proposal, the parties indicate they cannot reach consensus on the most practicable procedure for notice to absent class members. Nor can the parties agree on the content of the long form notice. A status conference on the parties' joint proposal for class notice was held on May 23, 2022.

## II. LAW & ANALYSIS

### A. Class Definition

As an initial matter, the Court finds that an amendment to the class definition is warranted so that certification conforms to the plaintiffs' requested relief. *See* Fed. R. Civ. P. 23(c)(1)(C) (district court may alter or amend class certification order any time before final judgment). Specifically, in their motion for class certification, Plaintiffs requested, in the alternative, that the Court grant issue certification for five separate state classes, rather than a single-five state issue class. As such, the Court amends the order granting in part and denying in part class certification to clarify that the three certified issues extend to five separate

state issue classes for Alabama, California, Florida, Georgia, and Texas.

"[D]istrict courts have broad discretion to modify class definitions[.]" *Powers v. Hamilton Cty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007); *see also Barney v. Holzer Clinic*, 110 F.3d 1207, 1213 (6th Cir. 1997)(amending "*sua sponte* the class certification to conform to the arguments that the parties have made in this court and below.").

Accordingly, the 3 certified issues extend to five separate state issue classes pursuant to Rule 23(c)(4):

1. <u>Alabama Class</u>: All persons who purchased or leased in Alabama a 2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in Safety Recall 20S31.

2. <u>California Class</u>: All persons who purchased or leased in California a 2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in Safety Recall 20S31.

3. <u>Florida Class</u>: All persons who purchased or leased in Florida a 2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in Safety Recall 20S31.

4. <u>Georgia Class</u>: All persons who purchased or leased in Georgia a 2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in in Safety Recall 20S31.

5. <u>Texas Class:</u> All persons who purchased or leased in Texas a 2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in Safety Recall 20S31.

### B. Procedure for Class Notice

#### 1. Direct Mailing

Pursuant to Fed. R. Civ. P. 23(c)(2)(B), the Court must "direct to class members the best notice that is practicable under the circumstances." The parties agree that the best practicable notice includes direct mailing to class members, identified by a search of the records of the five states' department of motor vehicles. The parties further advise that Plaintiffs have selected, and Ford will not object to, Postlethwaite & Netterville (P&N), to serve as the Notice Administrator. Ford will provide the vehicle identification numbers (VINs) for Class Vehicles sold through Ford-authorized dealerships in Alabama, California, Florida, Georgia and Texas. Once P&N gathers the names and addresses, it will provide direct mailed notice to all identifiable Class Members, through a short form notice sent via the United States Postal Service. Plaintiffs also propose that P&N create and maintain an official case website dedicated to this lawsuit on which the long form notice will be located. The case website will also provide class members access to Court documents and other important information about the case, including the proposed long form notice. *Id.*

#### 2. Ford's Objection No. 1 to Plaintiffs' Proposed Procedure

Plaintiffs have further proposed that Ford supplement the name, mailing address, and e-mail address information that P&N will gather with any such

information contained in Ford's own databases, so that P&N may cross-check with Ford's data and use it to fill any holes. Plaintiffs argue this information is necessary because the certified classes includes both current and former owners and lessees of over 760,000 Class Vehicles. The consumer contact information in Ford's database—which is tethered to the Class Vehicle VINs—will allow P&N to achieve the widest reach possible for the direct notice program. Plaintiffs assert Ford has previously agreed to do so in connection with providing class notice in *In re MyFord Touch Consumer Litigation*, No. 3:13-cv-03072-EMC (N.D. Cal.), another multistate automotive defect class action that involved many of the same counsel representing the parties here.

    Ford counters that the state DMV records are the best source for identifying class members, once Ford identifies the relevant VINs. Defendant argues its contact information records of original purchasers are incomplete and, past experience has shown, may contain inaccuracies or outdated information, and Ford is not provided with comprehensive and complete records of all subsequent purchasers.

    Here, the Court finds that Ford has failed to substantiate its assertion of burden that would justify failing to supplement the third-party information with the information it already possesses. Ford's information need not be perfect, and the combined information from Ford's database and third-party sources will allow

5

P&N to comprehensively identify the potential Class members and deliver the "best notice that is practicable under the circumstances" pursuant to Rule 23(c).

Accordingly, Ford's objection number 1 is overruled.

### 3. Ford's Objection No. 2 to Plaintiffs' Proposed Procedure

Ford also objects to being ordered to produce email addresses that are connected to the Class Vehicles' VINs. Ford asserts some email addresses are private, and others may have been collected subject to additional privacy rights. Ford maintains Plaintiffs have not explained why email addresses Ford may possess are needed for proper class notice, given the additional costs, privacy concerns and that P&N's representative asserts direct mailing provides the best notice that is practicable. *See* ECF No. 226, PageID.16823.

This objection is also overruled. Defendant's cited authority is thirty years old. Since then, email notice is commonplace. *See, e.g., In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64 (D.D.C. 2018) (collecting authorities); *see also, In re: FCA US LLC Monostable Electronic Gearshift Litigation*, MDL No. 2744, ECF No. 538, PageID.22299 (notice plan requires notice by postal mail, as well as notice "by electronic means to those class members for whom an email address is available."). Ford's purported "privacy" concerns are not well taken. *See Prejean v. O'Brien's Response Management, Inc.,* 2013 WL 5960674, at *10 (E.D. La. Nov. 6, 2013)(ordering class notice by email and noting that "production

of e-mail addresses is not significantly more invasive of class members' privacy than is production of their home addresses").

Ford's second objection is overruled.

### 4. Ford's Objection No. 3 to Plaintiffs' Proposed Procedure

In addition to notice via direct mail and electronic means where available, Plaintiffs also propose a supplemental digital campaign whereby notice is provided via social media websites, such as Facebook and Instagram, where Class Members are likely to visit. Plaintiffs further suggest that P&N place banner notifications on social media websites, which P&N estimates will result in over 50 million impressions. Plaintiffs assert this digital program is designed to replace what would have been publication notice in a more traditional notice program and is designed to compensate for the fact that name and address information may not be available or accurate for every Class Vehicle.

Ford complains that Plaintiffs have not identified other key aspects of the proposed supplemental digital campaign, including the length of the campaign, the number and identity of all websites on which the campaign would be run, or a description of the contents of the proposed banner notices, among other things. Ford asserts the supplemental digital campaign notice provisions are designed to reach anyone who is interested in Ford products or pickup trucks, rather than class

7

members. The campaign is estimated to receive 51 million impressions, even though the number of class vehicles is less than 1 million.

While Plaintiffs were able to provide additional information concerning their proposed digital media campaign during the May 23, 2022 status conference, the Court will sustain Ford's objection to the proposed supplemental digital media campaign, which is overbroad in its potential reach to Class Members. Direct mailing of notice using state DMV records and cross checking those records with the contact information Ford has in its databases has now been required and will provide the best notice that is practicable under the circumstances. *See In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, No. C 06 02069 SBA, CV 06-05411 SBA, 2008 WL 1990806 (N.D. Cal. May 5, 2008) (concluding that "notice by publication is only used when the identity and location of class members cannot be determined through reasonable efforts, which is not the case here since the identity and location of class members can be determined through reasonable efforts using Wal-Mart's electronic records."). Ford's third objection is sustained.

### B. Content of the Long Form Notice

#### 1. Page 1

Under Rule 23(c)(2)(B), the class notice "must clearly and concisely state in plain, easily understood language" the key terms of certification. Fed. R. Civ. P. 23(c)(2)(B). The notice "must contain information a reasonable person would

consider material in making an informed, intelligent decision of whether to opt out of or to remain a member of the class and be bound by a final judgment." *Bremiller v. Cleveland Psychiatric Inst.*, 898 F. Supp. 572, 581 (N.D. Ohio 1995). "[N]otice that is 'incomplete or erroneous or [that] . . . fails to apprise the absent class members of their rights' does not satisfy due process." *Faber v. Ciox Health, LLC*, 944 F.3d 593, 603 (6th Cir. 2019) (quoting *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 423 (6th Cir. 2012)).

Plaintiffs argue their proposed description of the issues certified for class treatment accurately tracks the language this Court used in its own class certification order, apart from some minor modifications in the interests of employing "plain, easily understood language." *See* Fed. R. Civ. P. 23(c)(2)(B); *see also* ECF No. 214 at PageID.16418. Ford's proposed version, according to Plaintiffs, substantively departs from the language of the issues certified by the Court.

Ford argues Plaintiffs' proposed notice language omits or misstates several key issues with respect to the issue class certified by the Court's Order. For example, Ford maintains that the notice must explain that to prevail on each of the three issues, Plaintiffs will be required to prove their answers to all class members at the same time. Ford's proposed notice thus modifies the words used in the Court's certification order to make this point clear to all class members.

Ford's argument is not well taken. The Court will sustain Plaintiff's objection to Ford's proposed language on Page 1.

**2. Question 3**

Plaintiff objects to Ford's attempt to amend the class definition in question 3 to cut off membership in the class as of the date of the notice. Plaintiffs argue the efficiencies of class treatment extend equally to current Class members and to future Class members who purchase a Class Vehicle after the notice date alike, and there is no reason not to include them. Plaintiffs maintain any due process concerns affecting class members who may prefer to opt out can be resolved by a separate order clarifying their status.

Ford counters that Plaintiffs' notice omits a class-cutoff date, which should be the date of the notice itself. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 628 (1997). Ford argues Plaintiffs' suggestion that "due process concerns . . . can be resolved by a separate order" is completely inadequate—if the notice does not include a cut-off date, any individual who purchases a vehicle after the date the initial notice is sent would also need to receive notice of their rights and the option to opt-out, which in practice could only be achieved by serial additional notice and opt-out periods.

Based on the foregoing considerations, Ford's due process concerns have merit. The state issue classes as currently defined will require Plaintiffs and

10

Defendant to identify new class members as the case progresses. Without a cutoff date, the Court cannot ensure the due process rights of future class members will be adequately protected. *See In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 2008 WL 1990806, \*4-5; *see also Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D. 281, 285-86 (W.D. Mich. 2001) (reforming class definition by changing it from extending to "the date of judgment" to extending only to "the date of the filing of the Complaint."). Accordingly, Plaintiff's objection to a cutoff date is overruled.

### 3. Questions 6-9 and 16

Next, Plaintiffs object to Ford's proposed insertions in response to questions 6-9 and 16 regarding what individual class members might have to do to obtain relief in some hypothetical future scenario. Plaintiffs argue this language is similarly inaccurate and misleading and makes things more complicated than necessary at this stage. The point of this notice is to inform the Class of the three issues that the Court has certified – that is it. Later, the Court will decide what happens after that, and Class members will get another notice then to inform them of that – and their options at that time. The next step could be a global settlement, or it could be claims through a special master, or it could be trials, or it could be something else. This notice now should not be confusing and misleading the Class by speculating on all the options of what might happen later.

Ford counters that the notice must explain that, even if Plaintiffs prevail on all three certified issues, the class trial will not resolve Ford's liability issues. Ford complains that Plaintiffs' proposed notice fails to inform the class that without proving these individual issues, the class members will not receive any direct benefit from the litigation. Ford also asserts the notice must inform class members that by remaining in the class they will be prohibited from bringing subsequent individual claims for the same alleged wrongful conduct if Plaintiffs do not prevail with regard to all three of the certified questions.

Plaintiffs' objection to Ford's proposed language in questions 6-9 and 16 is sustained. Ford's proposed language is confusing and misleading.

### 4. Question 8

For the same reasons as above (misleading and confusing the Class by including unnecessary information at this time), Plaintiffs disagree with Ford's proposed language on damages. Conversely, Ford maintains Plaintiffs' proposed language under Question 8 stating "Plaintiffs will ultimately seek an award for damages from Ford, including payment for the money that they overpaid to buy or lease their defective Class Vehicles" is misleading and should be omitted. In context, the statement implies that Plaintiffs will ultimately seek damages relevant to the class, which is inaccurate because, as the Court already held, no damages class can be certified here because individual issues predominate. ECF No. 218,

PageID.16539. Ford argues this information is essential to provide potential class members with the full scope of information about the class and the issues to be resolved to permit those individuals to make an informed decision about whether to opt out.

Plaintiffs' objection to Ford's proposed language in question 8 is sustained in part. The following sentence shall be included before the last sentence in the proposed response to question no. 8: *These requests have not been certified for class wide-treatment, however, and will not be addressed at the trial*.

### 5. Question 14

Finally, Plaintiffs believe it is important to inform Class members of how Class Counsel may be paid in this litigation in question 14. Ford contends that Plaintiff's statement in response to question number 14 suggests that a class wide judgment from which attorneys' fees may be recovered is misleading. And to the extent that statement suggests only that Plaintiffs' counsel will seek fees and expenses for successful judgments on behalf of the named Plaintiffs, Ford maintains it is unnecessary to include in the class notice to absent class members. Ford asserts the language regarding attorney fees should be omitted.

Plaintiffs' objection to Ford's proposed language is sustained. Ford's argument is not well taken. The Class should be informed that counsel will not seek out-of-pocket attorney fees from the Class.

### III. CONCLUSION

Accordingly, for the reasons articulated above, the class definition is amended to clarify that the 3 certified issues extend to five separate state issue classes:

1. <u>Alabama Class</u>: All persons who purchased or leased in Alabama a 2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in Safety Recall 20S31.

2. <u>California Class</u>: All persons who purchased or leased in California a 2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in Safety Recall 20S31.

3. <u>Florida Class</u>: All persons who purchased or leased in Florida a 2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in Safety Recall 20S31.

4. <u>Georgia Class</u>: All persons who purchased or leased in Georgia a 2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in in Safety Recall 20S31.

5. <u>Texas Class:</u> All persons who purchased or leased in Texas a 2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in Safety Recall 20S31.

The class definition is further amended to cut off membership in the class to the date of the notice.

Plaintiffs shall submit an amended proposed long form notice consistent with the Court's rulings herein <u>no later than June 1, 2022</u>.

Defendant shall provide Plaintiffs' counsel and P&N with a list of VINs for all Class Vehicles <u>no later than June 6, 2022</u>. Defendant shall provide all

associated contact information, including email addresses where available, for the purchasers of those vehicles that is within the defendant's possession on the same date.

P&N shall serve as the notice administrator for the purpose of conveying notice to class members about the proceedings for determination of certified class issues.

The plaintiffs and P&N SHALL cause notice to be given in the following manner:

A. <u>On or before August 17, 2022</u>, copies of the notice to class members by first-class mail with postage prepaid to each class member.

B. <u>On or before August 17, 2022</u>, copies of the notice to class members also must be sent by electronic means to those class members for whom email addresses are available.

C. The notice must explain that requests to opt out from the state issue classes must be delivered to the claim administrator <u>no later than October 17, 2022</u>.

Plaintiffs shall pay all of the expenses incurred from printing, mailing, and publishing all notices required by the Court.

A status conference shall be held on <u>June 23, 2022 at 10:00 a.m.</u>

SO ORDERED.

Dated: May 25, 2022                             /s/Gershwin A. Drain
                                                GERSHWIN A. DRAIN

15

United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 25, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager