UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL WEIDMAN, *et al.*,

                Plaintiffs,                    Case No.: 18-cv-12719
                                                    Hon. Gershwin A. Drain

v.

FORD MOTOR COMPANY,

                Defendant.
_____/

## REDACTED[1] OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#157, #158] AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [#150, #154]

## I. INTRODUCTION

Plaintiffs are purchasers and lessees of 2013-2018 F-150 trucks ("Class Vehicles") from Alabama, California, Colorado, Connecticut, Florida, Georgia, Michigan, New York, South Carolina, Texas and West Virginia who filed the instant putative class action alleging Defendant Ford Motor Company sold them trucks with a defective brake system ("Brake System Defect"). All of the Plaintiffs

[1] The Court entered a Sealed Opinion and Order on March 29, 2022 and required the parties to submit a proposed opinion and order with redactions consistent with this Court's orders. Accordingly, on April 7, 2022, Ford submitted its proposed redactions indicating the Plaintiffs have no objection to the proposed redactions. As such, the Court files the instant Redacted Opinion and Order.

allege they experienced brake system failure due to the Brake System Defect. Plaintiffs bring claims against Ford for common law fraud and violation of consumer protection statutes.

Now before the Court is the Defendant's Motion for Summary Judgment. Also, before the Court is the Plaintiffs' Motion to Certify Class. These motions are fully briefed, and a hearing was held on March 25, 2022.  For the reasons that follow, the Court grants in part and denies in part the Defendant's Motion for Summary Judgment and grants in part and denies in part the Plaintiffs' Motion to Certify Class.

## II.   FACTUAL BACKGROUND

During the 2013 through 2018 model years, the Class Vehicles were sold with eight different engine packages.  All of the Class Vehicles' engines have a Hitachi manufactured, step-bore master cylinder.  The master cylinders are covered by Ford's 3-year/36,000-mile warranty, thus any parts that fail within that period are to be replaced at no charge to the consumer.

A brake master cylinder is a component of a vehicle's braking system that converts the mechanical force drivers apply to the brake pedal into hydraulic pressure on the vehicle's brake fluids, which in turn pushes that output to the calipers at wheel ends and allows the pedal force to activate the brake system. There are five seals within the master cylinder which maintain brake fluid pressure.

A pressurized, closed system like the Hitachi-made, step-bore master cylinder used in the Class Vehicles is dependent on seal integrity and seal performance. Plaintiffs' maintain the Brake System Defect causes the seals in the master cylinders to fail resulting in loss of hydraulic brake fluid pressure. This causes longer brake pedal travel and requires longer distances to stop the vehicle.

The Brake System Defect manifests in the Class Vehicles in at least two ways. The first–leak into booster–occurs when the master cylinder's rearmost containment seal ███████████████████████ thereby rolling ███████████████ ████████████ allowing pressurized brake fluid to leak from the master cylinder into the brake booster. The second manifestation of the Brake System Defect– bypass failure–occurs when brake fluid pushes the master cylinder's ████████ ███████████████████████████████████████████████████████ ██████████████████████ allowing brake fluid to escape or bypass through and around the seal.

Plaintiffs maintain Defendant knew about the Brake System Defect prior to the Plaintiffs' purchase of their vehicles. Plaintiffs argue the first red flag came in 2011 when Ford engineers learned Subaru issued a recall for some of its models that used Hitachi-made master cylinders like those used in Ford's F-150 line. However, Ford executives were informed by Hitachi that ██████████████████████

████████████████████████████████████████████████

█████████████████████████ ECF No. 154, PageID.8137 (filed under seal).

Plaintiffs also point to pre-sale testing that led Ford to issue a stop shipment order for some Class Vehicles in March of 2013 because they were experiencing █████████████████████████ which are associated with the bypass failure in the Hitachi master cylinders.  Ford disputes the stop shipment order related to the Brake System Defect.

Once the Class Vehicles entered the market, Ford monitored warranty claims data, replacement parts data, and customer complaints.  Plaintiffs argue that as early as January of 2013–the first model year of the Class Vehicles–replacement parts sales data for master cylinders doubled from 2012 to 2013.   In March of 2013, Ford brake engineer Kam Aynessazian emailed Hitachi noting ██████

████████████████████████████████████████████████

███████ ECF No. 154, PageID.8182 (filed under seal).  Plaintiffs also rely on the fact Ford and Hitachi convened to study master cylinder in-warranty failure issues in September of 2014.  By 2015, Plaintiffs argue replacement master cylinders were selling at such a fast rate that they reached backorder status.  Around this time, Ford issued a TSB to its dealerships for all 2013-2014 F-150s for the leak into booster failure mode.

Ford denies knowledge of the Brake System Defect until late 2015 or early 2016 when it first began to detect an abnormal level of warranty claims for master cylinders leaking brake fluid into the brake booster. Ford asserts that once it evaluated this data, it became clear that the elevated warranty claims were limited to F-150s built in late 2013 and early 2014 equipped with the 3.5L GTDI engine, one of the eight engines available in the Class Vehicles. Ford asserts that out of the approximately 3.3 million F-150s from model years 2013 through 2018 sold in the United States, only 32.5% were equipped with the affected 3.5L GTDI engine. Additionally, out of the remaining 67.5% of F-150s with other engine types, the master cylinder warranty claim rate is merely ██████

In May of 2016, Ford announced a recall of all F-150s equipped with the 3.5L GTDI engine built between August 1, 2013 and August 31, 2014. The 2016 Recall entitled owners of affected vehicles to a replacement of the master cylinder with a purported redesigned master cylinder. Specifically, Ford claims Hitachi undertook numerous manufacturing changes including adding a silicone lubricant to the rearmost seal in the master cylinder to prevent the seal from rolling or lifting. This redesigned master cylinder was available on August 1, 2016. Ford maintains it did not include F-150s produced after August 31, 2014 in the 2016 Recall because other F-150s did not have an elevated rate of master cylinder repairs at the time.

Ford further claims that at the time of the 2016 Recall, it believed the 2016 Hitachi redesign of the master cylinder would address the concerns that led to the recall.  Ford asserts that its belief proved accurate because "the silicone lubricant addition, along with the other manufacturing improvements made by Hitachi, essentially eliminated the external leak to the brake booster."  ECF No. 157, PageID.9486.  Ford highlights that its analysis of warranty data for all master cylinder issues fell to less than 0.5% after the August 2016 redesigned master cylinder was introduced.

Plaintiffs argue the 2016 changes made by Hitachi did not cure the leak into booster issue.  Rather, the change merely served to delay the manifestation of the defect so that failures happened outside of the warranty period.

Additionally, Plaintiffs complain the 2016 "redesign," did not address the bypass failure in the master cylinders.  Ford argues it was not aware of an abnormal rate of warranty claims associated with the bypass condition until late 2016, when it learned of an elevated claim rate in vehicles produced beginning in 2015.  However, Ford asserts it worked with NHTSA to investigate the bypass condition and both NHTSA and Ford determined no recall was necessary given the low occurrence rate, the less severe failure mode, and the fact the problem typically occurred at low mileage–or within the warranty period.

It is Plaintiffs' contention that the 2016 Recall was not a "fix" as represented by Ford, but an effort to conceal the full scope and nature of the Brake System Defect and the 2016 Recall failed to correct the problem. Plaintiffs maintain this is evidenced by the fact Ford implemented a production level design change to address the Brake System Defect in September of 2018. Plaintiffs complain that Ford did not provide the newly designed master cylinders to Class Vehicle owners until years later in its recall number 20S31, or the 2020 Recall. Ford claims began to notice the warranty claim rate rise for F-150s with the 3.5L GTDI engine built between September 1, 2014 and August 1, 2016 sometime in 2019. Thus, in June of 2020, Ford extended its recall to cover that population, again providing free replacements to affected owners, along with a reimbursement right for prior repairs. The 2020 Recall only included F-150s equipped with a 3.5L GTDI engine built between September of 2014 and August of 2016.

Plaintiffs assert that because the 2020 Recall only covered a small subset of 2013-2018 F-150s, and ignored the bypass failure altogether, there are over one million Class Vehicles that still have the Brake System Defect rendering those master cylinders susceptible to failure via leak into booster or bypass modes. As to the bypass failure, Plaintiffs rely on the testimony of Ford engineer Robin Miller who explained Ford's mitigation efforts in regard to the bypass failure were not successful until sometime in 2019. *See* ECF No. 154, PageID.7780 (filed under

seal). At that time, Hitachi implemented changes to the production mold and chamfer angles to try and remedy the bypass failure. Plaintiffs also offer evidence that Ford's testing shows loss of braking power and increased stopping distance as a result of the bypass failure in the master cylinder. ECF No. 154, PageID.8213. For example, Ford's testing showed an F-150 experiencing bypass failure required ███ meters to stop, or ███ over the ███ meter F-150 baseline. Plaintiffs maintain the bypass failure mode is especially dangerous because it is intermittent and does not trigger a dashboard warning light for the driver.

After the Court resolved the Defendant's Rule 12(b)(6) Motion to Dismiss the First Amended Consolidated Class Action Complaint, the remaining claims in this action include: Counts 2 (violation of Alabama's Deceptive Trade Practices Act, Ala. Code §§ 8-19-1 *et seq.*), 5 (fraudulent omission under Alabama law), 7 (violation of the Colorado Consumer Protection Act, C.R.S.A. §§ 6-1-105 *et seq.*), 10 (fraudulent omission under Colorado law), 12 (violation of Connecticut's Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110A *et seq.*), 15 (fraudulent omission under Connecticut law), 17 (violation of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 502.201 *et seq.*), 18 (fraudulent omission under Florida law), 20 (violation of Georgia's Fair Business Practices Act, Ga. Stat. Ann. §§ 10-1-390 *et seq.*), 22 (fraudulent omission under Georgia law), 24 (violation of Texas's Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. & Com.

Code §§ 17.01 *et seq*.), 27 (fraudulent omission under Texas law), 29 (violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq*.), 30 (violation of California's Unfair Competition law, Cal. Bus. & Prof. Code §§ 17200 *et seq*.), 33 (fraudulent omission under California law), 35 (violation of New York General Business Law, Deceptive Acts and Practices, N.Y. GBL § 349), 38 (fraudulent omission under New York law), 40 (violation of the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act, S.C. Code Ann. §§ 56-151-10 *et seq*.), 43 (fraudulent omission under South Carolina law), 45 (violation of the West Virginia Consumer Credit and Protections Act, W. Va. Code §§ 46A-6-101 *et seq*.), 48 (fraudulent omission), 50 (violation of the Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.903 *et seq*.), and 52 (fraud by concealment under Michigan law).

## III.  LAW & ANALYSIS

### A.  Defendant's Motion for Summary Judgment

### 1.  Standard of Review

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light

most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

## 2. Damages

Defendant argues Plaintiffs' claims fail because the undisputed evidence establishes they suffered no cognizable damages.  Ford maintains it has provided most Plaintiffs with access to a free repair, either through recall or warranty, with a redesigned master cylinder that addresses the Brake System Defect. Additionally, some of the Plaintiffs have sold their vehicle, thus they have suffered no damages.

In this case, Plaintiffs' damages theory seeks benefit of the bargain damages. *See, e.g., Nguyen v. Nissan N. Am., Inc*., 932 F.3d 822 (9th Cir. 2019) ("Plaintiff's theory of liability—that Nissan's manufacture and concealment of a defective clutch system injured class members at the time of sale—is consistent with his proposed recovery based on the benefit of the bargain.")  Plaintiffs rely on the testimony and report of their damages expert, Edward Stockton.  Mr. Stockton

opined that damages can be analyzed as an "overpayment associated with the defect," which can be valued "by at least the value or cost of remedying the defect." Courts have recognized the cost to repair a defect is a proper measure of the plaintiffs' damages because they are restored to the position they would have occupied but for the defect. *See Nguyen v. Nissan N. Am., Inc.,* 932 F.3d 811 (9th Cir. 2019); *see also Falco v. Nissan N. Am. Inc*., No. CV 13-00686, 2016 U.S. Dist. LEXIS 46115, at *37 (C.D. Cal. Apr. 5, 2016) ("By receiving restitution in the amount of average repairs, the class would be getting the benefit of the bargain[.]"); *Sloan v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2020 U.S. Dist. LEXIS 71982, at *48 (N.D. Cal. Apr. 23, 2020) (concluding the Ninth Circuit in *Nguyen, supra,* "approved of the damages model that plaintiffs put forward here. In addition, benefit-of-the-bargain theories, as the one asserted by the plaintiffs herein, are a classic measure of damages in both contract and tort contexts . . . One obvious measure of such damages is the cost to repair the defective product."); *Siqueiros v. GM LLC*, No. 16-cv-0724-EMC, 2022 U.S. Dist. LEXIS 3651, at *45 (N.D. Cal. Jan. 7, 2022) (rejecting GM's challenge to the reliability of Mr. Stockton's benefit-of-the-bargain methodology).

Defendants argument that plaintiffs eligible for a free replacement with a redesigned master cylinder have no injury is not well taken. As an initial matter, the Court notes there is evidence in the record suggesting the 2016 redesign and

Recall did not remedy the Brake System Defect.  The supposed redesign was merely the addition of a silicone lubricant which Plaintiffs argue only served to delay manifestation of the defect's symptoms as to the leak into booster failure and did nothing to address the bypass failure. Moreover, Defendants have issued two subsequent recalls related to the Brake System Defect, which undermines Defendant's argument that the 2016 changes remedied the defect. Moreover, Defendant ignores the testimony of its own engineer who claimed the bypass failure was not remedied by Ford until sometime in 2019.  It remains a question of fact whether the 2016 changes remedied the Brake System Defect.

In any event Ford's reliance on this Court's decision in *Flores v. US LLC*, No. 19-10417, 2020 WL 7024850, at *11-12 (E.D. Mich. Nov. 30, 2020) is misplaced.  In *Flores*, this Court concluded the plaintiffs sustained no actual injury when the defendant manufacturer offered free repairs to the class vehicles. *Id*.  The *Flores* case is distinguishable from this action because the *Flores* plaintiffs sought "monetary damages due to the Defendant's failure to correct the defective product," and not for overpayment at the point of purchase as Plaintiffs seek here. Ford's remaining authority is distinguishable because those cases either lacked expert testimony, involved a manufacturer repair at the time of sale or a damages theory based on delay in remedying the defect as in *Flores*.  *See, e.g., Kommer*,

No. 1:17-CV-296, 2017 WL 3251598 (N.D.N.Y. Jul. 28, 2017); *see also Hadley v. Chrysler Grp.*, 624 F. App'x 374, 375 (6th Cir. 2015).

Finally, Ford also argues Plaintiffs who sold their vehicles before or during the pendency of this lawsuit have no claim because they lack any evidence of receiving a diminished price. This argument again misconstrues Plaintiffs' damages theory.  Even if some of the Plaintiffs sold their vehicles, they still suffered economic injury because their damages theory is founded on an overpayment at the point of purchase and, that overpayment was not recouped at trade-in or resale.  On this record, the Court cannot conclude Defendant is entitled to judgment in is favor because the Plaintiffs have suffered no injury.

### 3.  Knowledge

Defendant also argues summary judgment in its favor on all of Plaintiffs' claims is warranted because they cannot demonstrate Ford was aware of any material defect in their vehicles at the time of sale.  Ford maintains that without evidence of pre-sale knowledge, Plaintiffs' claims fail as a matter of law.

Specifically, Ford explains that Plaintiffs Cobb (GA) and Bonasera (CA) purchased their vehicles on September 3, 2014 and January 24, 2015, respectively. Ford asserts there is no evidence that Ford had any awareness of elevated master cylinder failures for their vehicles at that time.  Ford relies on evidence that its Critical Concern Review Group—the group tasked with early detection issues with

Ford's vehicles—first became aware of elevated failure rates in master cylinders in January 2016–and only F-150s from model years 2013 through 2014 equipped with 3.5L GTDI engines.

Ford further argues eleven other Plaintiffs—Leandro (CA), Naasz (CA), and Thuotte (CA) (for his 2016 F-150), Sanchez (CO), Ginsberg (CT), Tauriainen (MI), Adams (NY), Groce (SC), Epperson (TX) and Gollott (TX) (for her 2015 F-150), and Wilburn (WV)—all leased or purchased F-150s between June of 2015 and July of 2016, when Ford believed the Brake System Defect was limited to trucks produced before August 31, 2014 and equipped with 3.5L GTDI engines. Finally, Ford asserts five of the Plaintiffs—Weidman (AL), Thoutte (CA) (for his 2018 F-150), Michell (FL), Gollot (TX) (for her 2018 F-150) and Perry (TX)—all purchased or leased vehicles produced after August 1, 2016, which was after Ford implemented the August 2016 redesign.  Ford maintains Plaintiffs' evidence is insufficient to show a question of material fact remains as to Ford's knowledge of master cylinder issues prior to September 2016.

Contrary to Defendant's argument, there is sufficient evidence for a reasonable jury to conclude Ford knew the Class Vehicles were defective but sold them to Plaintiffs anyway.  The record reveals that in 2011, Ford's brake engineers began to discuss a recall Subaru issued for its vehicles containing Hitachi-made master cylinders that suffered from a bypass failure mode like the bypass failure in

the Class Vehicles.   Additionally, Ford issued a stop shipment order in March of 2013 because the trucks were experiencing ███████████████████  While Ford has claimed the stop shipment concerned ███████████████  Ford's records suggest that it was a stop shipment due to ████████████████ ███ due to a ████████████████████████  which are symptoms consistent with the bypass failure mode.

The record further reveals that from 2012 to 2013, Ford's sale of replacement master cylinders doubled.   Even though Ford downplays the early figures, they are startling when Ford expected the master cylinders to last with the vehicles.   Indeed, Ford's Automotive Safety Office testified that components such as the master cylinder should generate zero warranty replacement claims.   Of the ████ replacement master cylinders that Ford sold in 2013, ████ of those master cylinders were installed in model year 2013 F-150s rather than older vehicles, which suggests the master cylinder exhibited failures in the Class Vehicles from the start.   As such, a reasonable jury could find the spike in master cylinder warranty repairs in 2013 should have put Ford on notice that the brake master cylinders in its F-150 line, like the master cylinders in the Subaru, were defective.

Ford's internal communications also support a finding of pre-sale knowledge.  For instance, in early 2014, Ford brake engineers internally discussed leak into booster warranty returns.  In September of 2014, Ford and Hitachi met

about master cylinder ██████████████████████████████████████

██████████████████████████████ In June of 2015, Ford engineer

Jessica Ruiz emailed Hitachi engineers, stating, ████████████████████

██████████████████████ In August of that year, Ford engineer David Allen

emailed Hitachi engineers, stating, █████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████ An undated memorandum was

circulated concerning ████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████ ECF No. 154, PageID.8192 (filed

under seal).

       In March of 2016, NHTSA opened a formal investigation into the Brake

System Defect and Ford responded in April of 2016 and issued its first recall in

May of that year. Plaintiffs claim that Ford knew the 2016 Recall did not address

the totality of the Brake System Defect in the Class Vehicles because it knew it

installed the same master cylinder in all of its F-150 line, and not just in the 3.5L

GTDI engine.  Ford's internal repair data reveals that for vehicles not included in

the 2016 Recall for leak into booster, ██████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

Plaintiffs also claim that Ford knew the 2016 Recall did not fix the Brake System Defect because it failed to address the bypass failure even though it had evidence of this issue.  For example, on October 11, 2016, Ford brake engineer Martin Kapanowski wrote to Hitachi engineers and noted that, ██████████

██████████████████████████████████████  On October 21, 2016, Ford received NHTSA's formal inquiry and responded on December 9, 2016.  Ford engineers met with NHTSA to study the master cylinder bypass. While Ford claims NHTSA did not conclude a recall for this issue was warranted, Plaintiffs argue the master cylinder would not have gone through yet another redesign.  Ford brake engineer Robin Miller testified that Ford did not effectively remedy bypass failure until 2019.

Moreover, Plaintiffs maintain Ford never considered the 2016 redesign of adding lubricant during assembly as a permanent fix to the leak into booster problem.  Ford documents and engineers designated the assembly process change in 2016 as an "ICA" or interim corrective action while continuing efforts to develop a "PCA" or permanent corrective action.  Plaintiffs maintain Ford's silicone lubricant assembly change merely pushed onset of the leak into booster to later times in service while failing to address the underlying design flaw.  This is demonstrated by the fact Ford continued to pay master cylinder warranty claims

for failing master cylinders in Class Vehicles built after the redesign rollout in 2016.

Based on this record, a reasonable jury could conclude Ford was aware of the Brake System Defect at the time the Plaintiffs' purchased their vehicles.

### 4.  Plaintiffs Gollott and Thuotte

Ford also argues that undisputed evidence shows that Plaintiffs Thuotte (CA) and Gollott (TX) cannot establish the reliance on an undisclosed material fact required for their individual fraud-based claims.  Ford asserts Thuotte's claims fail because he testified during his deposition that he felt a "soft brake pedal" during a test drive before leasing his 2018 F-150, an issue he believed was indicative of the master cylinder failure he had previously experienced with his 2016 F-150, yet he still chose to lease the vehicle.  Thus, Ford argues Thuotte's claim fails as a matter of law for a lack of reliance.  *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012). Ford further notes that Gollott purchased her 2018 F-150 even though she admitted that she "had [her] doubts" about the reliability of the master cylinder, and she thought that a master cylinder incident failure could happen in the 2018 vehicle too.  Ford maintains that Plaintiffs' lack of reliance on information about the reliability of the master cylinder for their second vehicle purchases also means they cannot plausibly claim that they "relied" on any non-disclosures for their first purchases either.  *See Algarin v. Maybelline, LLC*, 300

F.R.D. 444, 454 (S.D. Cal. 2014) (repeat purchases defeats presumption of reliance).

Here, Plaintiffs Thuotte and Gollott each purchased two Class Vehicles and were deceived by Ford's fraudulent omissions in each purchase. Rather than address the fraudulent omissions that belied each purchase, Ford challenges only the purchases/leases of Plaintiffs' second Class Vehicles and provides no evidence to challenge Plaintiffs' reliance on Ford's material omissions when purchasing/leasing their first Class Vehicles. Thus, even if Ford's arguments regarding the second vehicle purchases had merit, Plaintiffs Thuotte and Gollott's fraud claims still survive as to their first Class Vehicles.

In any event, Plaintiffs Thuotte and Gollott are not the same as the "repeat purchasers" in *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 451 (S.D. Cal. 2014), who repeatedly bought the same makeup product and were ostensibly satisfied with the results. *Id.* at 453-55. Instead, Plaintiffs Thuotte and Gollott acquired different Class Vehicles with different model years and expected that the second purchases would be better than the first. Whether these Plaintiffs purchased one, two, or ten Class Vehicles makes no difference if they were unaware that the subsequent vehicles were plagued by the same Brake System Defect.

Plaintiff Thuotte testified at his deposition that prior to his lease of the 2018 F-150, he believed that the Brake System Defect had been rectified in the vehicle

and that he was unaware that the defect still persisted in model year 2018 vehicles. While Ford attempts to cherry pick Plaintiff Thuotte's testimony about a "soft brake pedal" during a test drive, his testimony shows that when he traded in his truck for a new F-150, he "made the assumption that Ford had fixed the damn problem." It was not until after Plaintiff Thuotte leased his 2018 F-150 that he learned of Ford's 2016 Recall (which did not include his 2018 F-150) and became aware that the brake issues were an ongoing problem.  For these reasons, Ford's motion as to Plaintiff Thuotte will be denied. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226-27 (9th Cir. 2015) (denying Ford's motion for summary judgment where there was a genuine issue of material fact as to whether plaintiffs would have relied on Ford's disclosure of a defect if it had disclosed it to consumers).

Similarly, Ford omits portions of Plaintiff Gollott's testimony that she spoke with specific employees at the Ford dealership who reassured her that the 2018 F-150 did not have the same master cylinder problems as her 2015 F-150. Plaintiff Gollott testified that it was not until after she purchased the 2018 F-150 that she learned her previous 2015 F-150 was subject to a recall for the brake master cylinder. *See Click General Motors, LLC*, No. 2:18-CV-455, 2020 WL 3118577, at *4-8 (S.D. Tex. Mar. 27, 2020) (refusing to dismiss fraud claims where plaintiff relied on omissions made by vehicle manufacturer).  As Plaintiffs Thuotte and Gollott's testimony show, neither Plaintiff knew about the Brake System Defect

when they purchased their Class Vehicles because Ford omitted this material information.

Based on the foregoing considerations, Ford is not entitled to summary judgment in its favor on Thuotte's or Gollot's claims.

### 5. Plaintiff Bonasera

Ford also argues Plaintiff Bonasera (CA) lacks standing to enforce her claim under California's CLRA because she does not qualify as a "consumer."  The CLRA defines "consumer" as an individual who acquires any goods or services "for personal, family, or household purposes."  Cal. Civ. Code § 1761(d).  Anyone who acquires goods for business purposes lacks standing to bring a cause of action under the CLRA.  *E.g., Lazar v. Hertz Corp.,* 143 Cal. App. 3d 128, 142 (1983) (attorney who rented cars for business purposes lacks standing to bring CLRA claim); *Mazur v. eBay Inc.*, 257 F.R.D. 563, 568 (N.D. Cal. 2009) (individual who used eBay to purchase items for her business and not her own use could not represent a putative class in a CLRA action against eBay).

In this case, Plaintiff Bonasera testified that she purchased her vehicle for her tennis coaching business, Bonasera Tennis, LLC.  She purchased it specifically to haul her coaching supplies as part of her business, and she claims the vehicle as a business expense on her taxes since "that truck is mainly for my business."  Thus,

contrary to Plaintiffs' argument, Bonasera does not have standing to enforce her claim where she testified use of the car was primarily for business use and claimed her F-150 as a business expense on her taxes. Ford is therefore entitled to judgment in its favor on Bonasera's claims.

### 6. Plaintiff Epperson

Finally, Ford argues summary judgment should be granted in its favor against Plaintiff Epperson (TX) because he disposed of his vehicle before Ford had an opportunity to inspect it. Epperson joined this lawsuit on August 14, 2019, but disposed of his truck by trading it in as of April 2020. He admitted that he traded it in without being inspected by Ford and without notifying Ford. Under these circumstances of spoliation, dismissal is the appropriate remedy. The Court agrees. *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) (affirming grant of summary judgment where the plaintiff disposed of an allegedly defective vehicle without giving notice to GM and confirming that the "duty to preserve evidence arises . . . during litigation"). Epperson's disposal of his truck is prejudicial to Ford because it denied Ford the opportunity to inspect the master cylinder. Ford is entitled to judgment in its favor on Epperson's claims.

### B. Plaintiffs' Motion to Certify Class

Plaintiffs Paul Weidman (AL), Jean Louis Thoutte, Sr. (CA), Steve Mitchell (FL), Marty Cobb (GA), Amanda Gollett (TX) and Teresa Perry (TX) move for

class certification pursuant to Federal Rule of Civil Procedure 23(a)(1)-(4), (b)(2), and (b)(3), or in the alternative, (c)(4), on behalf of themselves and all others similarly situated and for the appointment of E. Powell Miller, W. Daniel "Dee" Miles, III, Adam J. Levitt, and Mark P. Chalos as Co-Lead Class Counsel and class representatives pursuant to Federal Rule of Civil Procedure 23(g).

Plaintiffs propose certification of the following injunctive relief class pursuant to Fed. R. Civ. P. 23(b)(2):

> All persons in Alabama, California, Florida, Georgia, and Texas who currently own or lease a 2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in Safety Recall 20S31.

Plaintiffs also propose certification of the following damages classes pursuant to Fed. R. Civ. P. 23(b)(3):

> 1.   Alabama Class: All persons who purchased or leased in Alabama a 2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in Safety Recall 20S31.

> 2.   California Class: All persons who purchased or leased in California a 2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in Safety Recall 20S31.

> 3.   Florida Class: All persons who purchased or leased in Florida a 2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in Safety Recall 20S31.

> 4.   Georgia Class: All persons who purchased or leased in Georgia a 2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in in Safety Recall 20S31.

> 5.    Texas Class: All persons who purchased or leased in Texas a 2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in Safety Recall 20S31.

In the alternative, Plaintiffs seek issue certification pursuant to Fed. R. Civ. P. 23(c)(4) for the (b)(3) classes defined above.

### 1.  Standard of Review

Class actions are designed to "achieve economies of time, effort, and expenses, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  At the class certification stage, the Court conducts a "rigorous analysis" to determine whether the prerequisites of Rule 23 are met. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013). While that "rigorous analysis" may "entail some overlap with the merits of the plaintiff's underlying claim," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011), the Supreme Court "admonishes district courts to consider at the class certification stage only those matters relevant to deciding if the prerequisites of Rule 23 are satisfied." *Whirlpool*, 722 F.3d at 851-852 (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)).

### 2.  Proposed Injunctive Relief Class

Plaintiffs seek certification of an injunctive relief class under Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) "permits certification when the defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief ... is appropriate respecting the class as a whole." *Gooch v. Life Inv'rs Ins. Co. of Am.,* 672 F.3d 402, 427 (6th Cir. 2012).

Plaintiffs argue an injunctive relief class is appropriate to remedy Ford's ongoing failure to alleviate the dangers caused by the Brake System Defect.  Class members are in danger because Ford's 2016 Recall focused only on the leak into booster failure mode and did not address the bypass failure mode. Because of the Brake System Defect, all Class Vehicles are susceptible to both the leak into booster and the bypass failure modes. To remedy Ford's failure to act, Plaintiffs propose injunctive relief in the form of a corrective service program with class-wide notice explaining the Brake System Defect and that drivers, passengers, and the public are at risk of the Class Vehicles exhibiting brake failure.

Ford responds Plaintiffs cannot show they are entitled to injunctive relief under any of the applicable state laws because they have not shown there is no adequate remedy at law.  Indeed, Ford notes that Plaintiffs seek significant monetary damages.  Ford further asserts that Rule 23(b)(2) does not "authorize class certification when each class member would be entitled to an individualized award of money damages." *Dukes*, 564 U.S. at 360-61.  Lastly, Ford argues

25

Plaintiffs' injunctive relief is preempted by the Safety Act which gives NHTSA the exclusive authority over when an auto manufacturer must conduct a safety recall.

Here, certification of an injunctive class would be improper.  The primary basis for Plaintiffs' lawsuit is recovery of the amount they overpaid for their F-150 trucks.  While the *Dukes* court "held open the possibility, however, that (b)(2) certification might be appropriate when monetary relief is 'incidental to . . . injunctive or declaratory relief[,]" the money damages sought by the Plaintiffs in this case are not incidental to the injunctive relief requested. *See  In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 108 (E.D. Mich. 2019).

Plaintiffs argue certification of an injunctive class under Rule 23(b)(2) and a damages class under Rule 23(b)(3) is permissible consistent with the Sixth Circuit Court of Appeals' decision in *Gooch*, 672 F.3d at 427.  However, *Gooch* certified a declaratory judgment claim involving the interpretation of a contract under Rule 23(b)(2).  *Id*. at 428.  Subsequent to *Gooch*, the Sixth Circuit clarified, "certification under Rule 23(b)(2) 'remains available when the plaintiffs seek a declaration about the meaning of a contract even when the declaratory relief serves as a predicate for later monetary relief.'"  *Clemons v. Norton Healthcare Inc*., 890 F.3d 254, 279 (6th Cir. 2018) (quoting *Gooch*, 672 F.3d at 427, 429).  As such, *Gooch* does not allow Plaintiffs to certify an injunctive class where the monetary relief they seek is not incidental to the injunctive relief sought as in *Gooch*.  The

Court will therefore deny certification under Rule 23(b)(2) on this basis and declines to address Ford's remaining arguments opposing certification of an injunctive relief class.

### 3. Proposed Damages Classes

#### a. Numerosity

Pursuant to Rule 23(a)(1), the numerosity requirement is satisfied when "the class is so numerous that joinder of all members [of the class] is impracticable." Fed. R. Civ. P. 23(a)(1).  A "substantial" number of affected individuals is enough to satisfy this requirement.  *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012).  There is no exact number that must be met for a class to be certified.  *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 406 (E.D. Mich. 2012).  Courts within this District and other courts generally consider a variety of factors when determining numerosity, including the type of action; the size of the individual claims; the location of the members; and the ability to easily ascertain identities of proposed class members. *See Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 406 (E.D. Mich. 2012).

In this case, Ford manufactured and sold over one million Class Vehicles to putative Class members. Class members can be defined by reference to an objective purchase or lease of a particular vehicle, thus class members are

identifiable through Ford's records and sources otherwise available to Ford.  This factor is satisfied.

### b. Commonality

Class certification is appropriate only when there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  In order to demonstrate commonality under Rule 23(a)(2), the plaintiff must identify a "common contention" that is "capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  "[T]here need only be one question common to the class – though that question must be a 'common issue the resolution of which will advance the litigation.'" *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003) (internal citation omitted).

Plaintiffs argue they can satisfy the commonality requirement easily because all of the class members' claims involve the same common Brake System Defect. Plaintiffs rely on *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 105 (E.D. Mich. 2019), where the court concluded recovery under the plaintiffs' numerous legal theories, including fraud and consumer protection statutes, demands proof of a defect in the vehicle and that one issue was sufficient to meet the commonality requirement. Plaintiffs argue other common questions exist, such as whether Ford was aware of, and concealed the Brake System Defect,

whether Ford's omissions were material, whether Ford's actions have harmed the Plaintiffs and class members, and the relief, if any, to which the plaintiffs and class members are entitled.

Here, Plaintiffs' claims are based on the same Brake System Defect across all Class Vehicles. *See Falco v. Nissan N. Am.*, No. 13-00686, 2016 WL 1327474, *5 (C.D. Cal. Apr. 5, 2016) (rejecting Nissan's argument that there was no single defect because the putative class members' vehicles had undergone slight, inconsequential modifications); *see also In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 105 (E.D. Mich. 2019).

This factor is satisfied.

### c. Typicality

A class representative's claims must be "typical of the claims ... of the class." Fed. R. Civ. P. 23(a).  Rule 23(a)(3) typicality is satisfied if the plaintiffs' claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. Century Tel, Inc.*, 234 F.R.D. 160, 169 (E.D. Mich. 2006). Plaintiffs argue typicality is easily satisfied here because all class members are alleged to have suffered injury as a result of the same conduct by Ford.  Defendant responds none of the class representatives claims are typical because all of them purchased F-150s equipped with the GTDI engine.

In this case, Plaintiffs' claims arise from a common course of conduct and common legal theories: Ford engaged in unfair and deceptive conduct in violation of state consumer protection laws and committed fraudulent omission by knowingly selling vehicles with a concealed Brake System Defect. Further, Plaintiffs' vehicles have the same alleged defect as all other vehicles in the classes for which Plaintiffs are proposed representatives. Because each Class member's claims arise from the same course of Ford's conduct, and each Class member has similar legal arguments to prove Ford's liability, the typicality requirement is satisfied.

### d. Adequacy

Per Rule 23(a)(4), Plaintiffs must: (i) have common interests with the Class; and (ii) vigorously prosecute the interests of the Class through qualified counsel. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012). "[O]nly when attacks on the credibility of [Plaintiffs] are so sharp as to jeopardize the interests of [the Class] should such attacks render [them] inadequate." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013). Where the interests of the class representatives are not "antagonistic to those of the Class," courts find that class representatives are adequate. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 494 (E.D. Mich. 2008).

Adequacy is satisfied here.  First, there are no potential intra-class conflicts and no hint of antagonism between Plaintiffs' claims and those of Class members. Plaintiffs are members of the Classes they seek to represent, have the same brake master cylinders as other Class members, and assert the same claim for damages. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006) (citing *Amchem*, 521 U.S. at 625-27). All Plaintiffs seek to hold Ford responsible for the legal violations that Ford has committed.

Second, Plaintiffs have been and are committed to exercising good faith and sound judgment in vigorously prosecuting this litigation. Plaintiffs have already devoted substantial time producing documentary discovery, responding to discovery requests, sitting for lengthy depositions, presenting their vehicles for inspections by Ford, and retaining and working with class counsel – all in the interests of the Class.

### e.  Fed. R. Civ. P. 23(b)(3)

Plaintiffs can satisfy Rule 23(b)(3) by showing: (i) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (ii) a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The predominance analysis under Rule 23 examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."

*Amchem*, 521 U.S. at 623. The inquiry focuses on efficiency: it asks not whether common issues exist (which is the focus of 23(a)(2) commonality) but whether they "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). In other words, predominance exists where "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:49 at 195-96 (5th ed. 2012)).

Plaintiffs argue that in consumer cases like this one – where an aggregated, streamlined adjudication of Ford's liability for the Brake System Defect would be far more efficient than thousands or millions of individual proceedings involving the same defect and course of conduct – predominance is "readily met."

Conversely, Ford asserts numerous individual issues predominate which defeat the purposes of certification. Ford argues materiality, reliance, causation, manifestation of defect, and defenses such as the statute of limitations and whether the claims are subject to arbitration cannot be resolved on a class-wide basis.

Here, Plaintiffs bring claims for fraudulent concealment and/or omission under state common law and analogous state consumer protection statutes. The elements of common law fraud are largely uniform across the state classes. *See, e.g.*, *Culpepper v. Stryker Corp.*, 968 F. Supp. 2d. 1144, 1156 (M.D. Ala. 2013)

(plaintiff must show "(1) the defendant had a duty to disclose material facts; (2) the defendant concealed or failed to disclose those facts; (3) the concealment or failure to disclose induced the plaintiff to act; and (4) the defendant's action resulted in harm to the plaintiff"); *Peel v. BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149, 1159 (C.D. Cal. 2011) (fraudulent omission involves "(1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would have acted differently if she had known of the concealed or suppressed fact; and (5) the plaintiff sustained damage as a result of the concealment or suppression"); *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 335 (Bankr. S.D. Fla. 2013) ( "[(1)] The defendant concealed or failed to disclose a material fact; [(2)] The defendant knew or should have known that the material fact should be disclosed or not concealed; [(3)] The defendant acted in bad faith; [(4)] The defendant knew that by concealing or failing to disclose the material fact, the plaintiff would be induced to act; [(5)] The plaintiff suffered damages as a result of the concealment or failure to disclose; and [(6)] The defendant had a duty to speak"); *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1350 (N.D. Ga. 2015) (fraud elements include "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming

fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages as the proximate result of defendant's action").

Plaintiffs' state consumer protection statutes overlap with fraud. *See Gregorio v. Ford Motor Co.*, 2021 WL 778913, at *4 (E.D. Mich. Mar. 1, 2021) (state consumer protection statutes "at heart, are claims of fraud"); *see also* Ala. Code 1975 § 8-19-5 (unlawful to "[r]epresent[] that goods . . . have . . . characteristics . . . that they do not have"); Cal. Civ. Code § 1770(a)(3)(5) (same); Fla. Stat. Ann. § 501-204(1) (outlawing "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce"); O.C.G.A. § 10-1-393(b)(5) (unlawful to "[r]epresent[] that goods . . . have . . . characteristics . . . that they do not have"); Tex. Bus. & Com. Code § 17.46(b)(5) (same); id. § 17.46(b)(24) (unlawful to "fail[] to disclose information concerning goods . . . which was known at the time of the transaction if such failure to disclose such information was intended to induce the customer into a transaction into which the consumer would not have entered had the information been disclosed").

Plaintiffs' common law fraud and statutory consumer protection claims share common elements that will be subject to generalized proof.  As an initial matter, common evidence will show whether there is a design defect.  While Defendant argues the design defect is not a common issue across class vehicles

because of the 2016, 2018 and 2019 design changes, F-150s built with the 2018 and 2019 redesigned master cylinder are not included in the proposed classes. Further, a jury might conclude a design defect continued to exist after the 2016 redesign. Common evidence will also show whether and when Ford knew about the Brake System Defect for all Class Members.

Common evidence will also show whether the existence of the Brake System Defect is material. Materiality is an objective standard that is readily subject to class-wide proof. *See Amgen*, 568 U.S. at 459-60 ("Because materiality is judged according to an objective standard, the materiality of Amgen's alleged misrepresentations and omissions is a question common to all members of the class . . . The alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all investors composing the class."); *see also In re FCA Monostable Elec. Gearshift Litig.*, 334 F.R.D. at 115 (collecting cases and holding that materiality "can be answered by common, class-wide proofs concerning whether reasonable consumers would have been concerned about the information withheld.").

However, the Court cannot conclude that the common issues predominate over the individual questions. First, individualized questions of reliance defeat predominance. Plaintiffs admit that their common law fraudulent omission claims require proof of reliance. Reliance, or loss causation from the alleged non-

35

disclosure, also is required for Plaintiffs' statutory consumer fraud claims. *See* Ala. Code § 8-19-10; *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326-27 (2011); *Crown Ford, Inc. v. Crawford*, 473 S.E.2d 554, 557 (Ga. Ct. App. 1996); *Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 685 (S.D. Fla. 2008); Tex. Bus. & Com. Code § 17.50 (a)(1)(B). Courts deny class certification where proof of reliance is required because it presents individual issues of what each member of the class would have done had they known of the supposedly undisclosed facts. *See In re St. Jude Med., Inc*., 522 F.3d 836, 838 (8th Cir. 2008); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996).

Plaintiffs contend that the Court may "infer[]" or "presume[]" reliance because the alleged "defect" involves an "unreasonable safety risk." However, Plaintiffs have not established that such a presumption exists for their common law fraud claims. *In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 221-22 (E.D. La. 1998) (noting that the vast majority of states have never adopted a presumption of reliance in common law fraud cases); *Humana, Inc. v. Castillo*, 728 So. 2d 261 (Fla. Dist. Ct. App. 1999) (no presumption for Florida common law fraud). Similarly, Texas and Georgia do not permit a presumption for statutory claims either, effectively precluding certification of all claims of those proposed classes. *Cormier v. Carrier Corp.*, No. 2:18-cv-07030-CAS(Ex), 2019 WL 1398903, at *14 (C.D. Cal. Mar. 25, 2019) (Georgia FBPA); *In re Clorox*

*Consumer Litig.*, 301 F.R.D. 436, 446 (N.D. Cal. 2014) (Texas DTPA) (citing

*Peltier Enters., Inc. v. Hilton*, 51 S.W.3d 616, 624 (Tex. App. 2000)).

Some Plaintiffs testified they purchased or leased their F-150s for separate

reasons, some based on brand loyalty and others based on power and towing

capacity, not on reliability statistics. Because "[v]ehicle purchase decisions ... may

be based on a variety of factors," "there is simply no way—without inquiring on a

customer-by-customer basis—to determine whether the non-disclosure ... affected

the purchase price." *Oscar v. BMW of N. Am., LLC*, No. 09. Civ. 11 (PAE), 2012

U.S. Dist. LEXIS 84922, at \*16, \*21 (S.D.N.Y. June 19, 2012). Certification thus

is not appropriate because reliance or causation presents individualized questions.

Moreover, there are other individualized issues that defeat predominance.

Whether a proposed class member actually experienced a problem with their

master cylinder is a required element for all the claims asserted under Texas,

Alabama, and Florida law. *Ford Motor Co. v. Rice*, 726 So. 2d 626, 628-29 (Ala.

1998) (in fraud case, holding that "it is well established that purchasers of an

allegedly defective product have no legally recognizable claim where the alleged

defect has not manifested itself in the product they own"); *S. Bakeries, Inc. v.

Knipp*, 852 So. 2d 712, 716 (Ala. 2002); *Kia Motors Am. Corp. v. Butler*, 985 So.

2d 1133, 1139 & n.5 (Fla. Dist. Ct. App. 2008) (Florida law rejects claims of

owners whose brakes have not "manifested a deficiency"); *In re Gen. Motors LLC*

*Ignition Switch Litig.*, 257 F. Supp. 3d 372, 452 (S.D.N.Y. 2017) (Texas DPTA

claim); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 857 n.11 (Tex. App. 2005)

(fraud claim).  To confirm manifestation would require individualized adjudication

for each class member.  A class cannot be certified on this basis.  *See In re Ford

Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-4358; MDL No. 1687, 2012 WL

379944, at *21, *30 (D.N.J. Feb. 6, 2012).

Ford's statute of limitations defenses are an additional issue that is not

common to the proposed classes.  The proposed classes include vehicles sold as far

back as 2013, but this lawsuit was not filed until August 30, 2018.  Claims under

the Alabama DTPA must be brought "in no event … more than four years from the

date of the transaction."  Ala. Stat. Ann. § 8-19-14.  Claims under the Texas DTPA

must have been filed within two years after the alleged practice was discovered or

should have been discovered, with a maximum tolling of 180 days for fraudulent

concealment.  For other statutes of limitations, e.g., Fla. Stat. § 95.11(3)(j) & Cal.

Civ. Proc. Code § 338(d) (3 years for fraud), individualized issues exist about (1)

when different class members may have had reason to know of the alleged issues

giving rise to their claims, and (2) application of equitable tolling doctrines.  *E.g.,

Jim Moore Ins. Agency, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 02-80381, 2003

WL 21146714, at *9, *12 (S.D. Fla. May 6, 2003); *Gonzales v. Sw. Olshan Found.

Repair Co.*, 400 S.W.3d 52, 58-59 (Tex. 2013).

Further, California's CLRA claims may only be brought by "consumers," who purchased or leased "for personal, family, or household purposes."  Cal. Civ. Code § 1761(d), 1780.  But the proposed California class includes those who are not consumers.  Plaintiff Bonasera testified that she purchased her vehicle "mainly" for her tennis coaching business, and she claims it as a business expense on her taxes. Ex. GG at 26:16-17, 31:17-32:22, 197:6-9.  The Court would have to undertake an individual inquiry into whether each California vehicle's sale or lease was to a consumer as defined by the statute, further weighing against certification. *Arabian v. Sony Elecs., Inc.*, No. 05-cv-1741, 2007 WL 627977, at *5 (S.D. Cal. Feb. 22, 2007); *Mazur v. eBay Inc.*, 257 F.R.D. 563, 568 (N.D. Cal. 2009).

Finally, under Texas law, "a downstream buyer ... cannot sue under the DTPA."  *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 89 (Tex. 2004).  Individual inquiry is therefore required to determine which class members purchased used vehicles, which would identify transactions in which Ford "had no involvement or pecuniary interest" required for a Texas DTPA claim. *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 149 (Tex. 2004); *Roe v. Ford Motor Co*., No. 18-12528, 2021 WL 2529825, at *13 (E.D. Mich. June 21, 2021).

Because the Plaintiffs have failed to carry their burden demonstrating common issues predominate over individualized issues, the Court cannot certify the proposed state classes under Rule 23(b)(3).

### 4.  Issue Certification under Fed. R. Civ. P. 23(c)(4)

Even though the Court concludes Plaintiffs have failed to meet their burden under Rule 23(b)(3) to warrant certification of their proposed damages classes, there are issues that are suitable for class-wide adjudication.  "When appropriate, an action may be brought or maintained as a class action with respect to particular issues."  Fed. R. Civ. P. 23(c)(4).  "[A] majority of the courts of appeals have concluded that in appropriate cases Rule 23(c)(4) can be used even though full Rule 23(b)(3) certification is not possible due to the predominance infirmities."  *In re Flint Water Cases*, Case Nos. 21-0103, *et al.* (6th Cir. Jan. 24, 2022) (citing *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259 (3d Cir. 2021); *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 439-45 (4th Cir. 2003); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012); *In re St. Judge Medical, Inc.*, 522 F.3d 836, 841 (8th Cir. 2008); *Valentino Inc.*, 97 F.3d at 1234; *Harris v. Med. Transp. Mgmt., Inc.*, No. 17-CV-01371, 2021 WL 3472381, at *7 (D.D.C. Aug. 6, 2021)).  Otherwise, "a requirement that predominance must first be satisfied for the entire cause of action

would undercut the purpose of Rule 23(c)(4) and nullify its intended benefits." *Id.* (citing *Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 411-12, 415 (6th Cir. 2018).

In this case, like *In re Flint Water Cases, supra,* and *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 108 (E.D. Mich. 2019), common questions predominate with certain issues. Plaintiffs' common law fraud and statutory consumer protection claims share common elements that will be subject to generalized proof. For instance, whether there is a Brake System Defect in the Class Vehicles, whether Ford had pre-sale knowledge of the Brake System Defect and whether the Brake System Defect is material. Even though certification of these issues will not resolve the Defendant's liability, resolving these issues will materially advance the litigation because each of these issues bear directly on the elements of Plaintiffs' common law fraud and consumer protection statutory claims. "Resolving the certified issues could resolve every claim against" the Defendant "in one fell swoop." *Martin*, 896 F.3d at 316. If the jury concludes there is no defect or that the defect is not material, Plaintiffs' claims fail. Conversely, if the jury finds there is a material defect then the scope of subsequent trials will be narrowed significantly. For these reasons, the Court will certify an issue class pursuant to Rule 23(c)(4).

## IV. CONCLUSION

Accordingly, for the reasons articulated above, Defendant's Motion for Summary Judgment [#157, #158] is GRANTED IN PART and DENIED IN PART.

Plaintiffs Richard Epperson's and Joyce Bonasera's claims are DISMISSED.

Plaintiffs' Motion to Certify Class [#150, 154] is GRANTED IN PART and DENIED IN PART.

Pursuant to Rule 23(c)(4), a class is certified in this case consisting of all persons who purchased or leased a 2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in Safety Recall 20S31 in Alabama, California, Florida, Georgia and Texas, for determination of the following issues:

1)  Whether the Class Vehicles' brake systems are defective?

2)  Whether Defendant possessed pre-sale knowledge of the defect?

3)  Whether information about the defect that was concealed would be material to a reasonable buyer?

Plaintiffs Paul Weidman, Jean Louis Thuotte, Sr., Steve Mitchell, Marty Cobb, Amanda Gollot and Teresa Perry are designated as class representative for their respective jurisdictions.

E. Powell Miller, W. Daniel "Dee" Miles, III, Adam J. Levitt, and Mark P. Chalos are appointed as Co-Lead Class Counsel pursuant to Fed. R. Civ. P. 23(g).

Counsel for the parties shall meet and confer and present to the Court on or before April 21, 2022 a proposal for a notice to class members that complies with Fed. R. Civ. P. 23(c)(2)(B), and a method of delivering notice to absent class members.

Counsel for the parties shall submit a Proposed Joint Redacted Opinion and Order no later than April 7, 2022.

SO ORDERED.

Dated: April 8, 2022                          /s/Gershwin A. Drain
                                              GERSHWIN A. DRAIN
                                              United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 8, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Deputy Clerk