UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL WEIDMAN, *et al.*,

        Plaintiff,

v.

        Case No.: 18-cv-12719
        Honorable Gershwin A. Drain

FORD MOTOR COMPANY,

        Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO EXCLUDE DEFENDANT'S EXPERT JAMES WALKER, JR. [ECF Nos. 152, 153]**

**I.     INTRODUCTION**

Presently before the Court is the Plaintiffs' Motion to Exclude Defendant's Expert James Walker Jr., filed on June 23, 2021. Defendant filed a Response on July 20, 2021. A reply was filed on August 3, 2021. A hearing was held on December 7, 2022. For the reasons that follow, the Court grants in part and denies in part Plaintiffs' Motion to Exclude Defendant's Expert James Walker, Jr.

**II.    FACTUAL BACKGROUND**

The instant product liability class action involves certain model years 2013-2018 Ford F-150s (the "Class Vehicles") that all contain a purported defective

brake master cylinder that can cause sudden and unexpected loss of hydraulic brake fluid pressure, resulting in diminished braking ability.

Ford's expert, James Walker, Jr., has provided his commonality opinions concerning the Class Vehicles. Specifically, Mr. Walker has opined that the Class Vehicles "do not share a common component design or manufacturing process" and the existence of the defect "is not a class-wide question with entirely common evidence."

### III. LAW & ANALYSIS

**A. Standards of Review**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. A party offering an expert's opinion bears the burden of establishing the admissibility of such opinion by a preponderance of the evidence. *Nelson v. Tennessee Gas Pipeline Co.,* 243 F.3d 344, 251 (6th Cir. 2001). Expert testimony is admissible only if it satisfies the requirements of Rule 702 of the Federal Rules of Evidence, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>     (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>     (b)  the testimony is based on sufficient facts or data;
>     (c)  the testimony is the product of reliable principles and methods, and;

2

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district court must determine whether the expert's testimony meets three requirements: (1) the expert witness must be qualified by "knowledge, skill, experience, training or education," (2) the proffered testimony is relevant and "will assist the trier of fact to understand the evidence or to determine a fact in issue," and (3) the testimony is reliable in that it is based on scientific, technical or other specialized knowledge. Fed. R. Evid. 702; *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529 (6th Cir. 2008).

The standard to exclude an expert's testimony is high, and "rejection of expert testimony is the exception, rather than the rule." *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 956 (E.D. Mich.); *Innovation Ventures, L.L.C. v. Custom Nutrition Lab'ys, L.L.C.*, No. 4:12-cv-13850, 2021 WL 598545, at *2 (E.D. Mich. Feb. 16, 2021) (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008)); *Kamp v. FMC Corp.*, 241 F. Supp. 2d 760, 761 (E.D. Mich. 2002) ("[T]he trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system."). If there is a reasonable factual basis for expert testimony, it should be admitted. *See Keyes*, 335 F. Supp. 3d at 956 (citing Rule 702; *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993)).

Additionally, it is important to distinguish between genuine questions of reliability and questions of credibility and accuracy. *In re Scrap Metal*, 527 F.3d at 529–30. Any issue regarding the credibility or accuracy of admitted expert testimony goes not to the admissibility of the evidence, but to the weight of the evidence, and can be addressed via cross-examination and "presentation of contrary evidence" by opposing counsel. *Id*. at 532 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 570, 596 (1993)).

### B. Mr. Walker's Qualifications

Mr. Walker has more than 30 years of automotive engineering experience including component design, vehicle dynamics, electro-mechanical control system development, failure analysis, and crash reconstruction—including extensive experience with brake systems specifically. From 1989 until 1995, he was employed as a Powertrain System Test Engineer at a division of General Motors, where he was responsible for the specification, design, and testing of multiple vehicle systems and components. In 1994, he received a bachelor's degree in Automotive Mechanical Engineering from General Motors Institute in Flint, Michigan. From 1995 until 2006, he was employed as a Brake Controls Engineer and Manager at a variety of automotive manufacturers and industry-leading suppliers of hydraulic brake systems and electronic brake and chassis control

4

systems, including Kelsey-Hayes, Saturn Corporation (a division of General Motors), the Robert Bosch Corporation, Ford Motor Company, and Delphi. In these roles, Mr. Walker was responsible for the specification, design, calibration, testing, integration, and validation of hydraulic brake systems and electronic brake and chassis control systems. From 2006 until the present, Mr. Walker has been employed as a Principal Engineer at Carr Engineering, Inc., where his role includes evaluating braking capacities, acceleration capacities, handling capacities, stability capacities, and the possible interactions with active chassis and brake control systems such as anti-lock braking systems, traction control systems, and electronic stability control.

As a result of his professional work, Mr. Walker has been commissioned by SAE International (previously the Society of Automotive Engineers), an international organization with more than 100,000 members, to create and instruct five separate Professional Development Seminars in the areas of hydraulic brake systems, electronic brake control systems, and vehicle dynamics. Hundreds of automotive industry engineers have attended these courses since their inception, and in recognition of the quality of the seminars, he was awarded the SAE Forest R. McFarland Award in 2005 and was designated as an SAE Master Instructor in 2010. He was also commissioned by CarTech Books to author a book focusing on brake system design and analysis. Published in 2007, High-Performance Brake

5

Systems has sold nearly ten thousand copies worldwide and has been reprinted three times.

Based on Mr. Walker's education and experience, the Court concludes he is qualified to provide expert testimony on brake systems.

### C. Plaintiffs' Motion to Exclude

Plaintiffs argue Mr. Walker's commonality opinions conflict with the testimony of Ford's own engineers. Moreover, Plaintiffs assert his opinion is based on an unreliable methodology because he conducted no independent investigation or analysis but simply parroted the data from Ford's documents. Plaintiffs further argue Mr. Walker has offered mere speculation relative to an acceptable rate of brake failure. Finally, Plaintiffs maintain Mr. Walker is not qualified to draw a legal conclusion on whether the Brake System Defect is a "class-wide" question with common evidence under Rule 23.

As an initial matter, Plaintiffs assert that Mr. Walker's opinion conflicts with the testimony of Ford's engineers. Plaintiffs cite the testimony of Mr. Miller to suggest that "it would have been the same part number, the same master cylinder, you know, in other respects," but neglect to mention that the question to which Mr. Miller was replying asked only whether the master cylinder installed in a 2014 F-150 with a 3.5L engine and a 2014 F-150 with a 5.0L engine built on the same production line at the same time would have been the same. There is absolutely

zero conflict between that very limited statement and Mr. Walker's opinion that manufacturing and engineering design changes over a six-year period rendered the master cylinder installed in a 2013 F-150 distinct from one in a 2018 F-150. Moreover, as Mr. Miller explained, a part could retain the same part number even if it had experienced a number of updates, meaning that even master cylinders with the same part number could have significant differences.

As such, the Court cannot conclude as a matter of law that Mr. Walker's opinion "clearly contradicts" the testimony of Ford's engineers. Even if there is some conflict between his opinions and the testimony of Ford's engineers, that would go to the weight of the evidence, and not its admissibility. *See Greenwell v. Boatright*, 184 F.3d 492, 497 (6th Cir. 1999) (denying motion to exclude because "[e]xpert testimony is not inadmissible simply because it contradicts eyewitness testimony.")

As to Plaintiffs' complaint that Mr. Walker never inspected the master cylinder in any of the Class Vehicles, this argument is easily rejected based upon well settled authority. Plaintiffs' argument ignores the fact that three engineers working under Mr. Walker's direct supervision examined master cylinders on 14 of the Plaintiffs' vehicles, representing model years 2014 through 2018. In addition to verbal reports from the engineers, Mr. Walker was provided with extensive notes, measurements, pictures, and videos of those inspections, allowing

7

him to closely analyze the different master cylinders installed in those vehicles.

The fact that Mr. Walker did not personally perform those inspections is irrelevant as a matter of law. Federal Rule of Evidence 703 states quite explicitly that experts "may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703; *see also Daubert*, 509 U.S. at 592 ("an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation"); *Bray & Gillespie IX, LLC v. Hartford Fire Ins. Co.,* No. 6:07-cv-326, 2009 WL 1046354, at *5 (M.D. Fla. Apr. 20, 2009) ("There is no requirement that an expert has to have first-hand information as to all relevant facts and verify same; nor is there a requirement that the expert must perform all testing personally.").

There is no requirement that an expert must physically inspect or test items on which they offer an opinion. Here, Mr. Walker reviewed numerous technical documents provided by Ford, including those describing in detail the various manufacturing and engineering design changes Ford and Hitachi implemented over time, the deposition transcript of a Ford witness, photographs of master cylinders in Plaintiffs' vehicles, and other sources to render his opinions on the nature and impact of changes to master cylinders installed in 2013-2018 F-150s over time. Those types of materials are entirely appropriate and sufficient for Mr. Walker to use to form admissible opinions. *Rice v. SalonCentric Inc.*, No. SAG-18-1980,

8

2020 WL 42760, at *5 (D. Md. Jan. 3, 2020); *Rivas v. Preston*, No. SA-11-CA-0193, 2012 WL 7782960, at *5 (W.D. Tex. Feb. 29, 2012); *Contreras v. Brown*, No. CV-17-08217, 2018 WL 7254917, at *5 (D. Ariz. Dec. 4, 2018).

Further, Plaintiffs' argument that Mr. Walker's opinion is unnecessary because the jury is capable of reading Ford's documents is not well taken. Mr. Walker's engineering background allows him to understand the master cylinder design and manufacturing changes and their impact in ways that the average jury member may not appreciate, meaning his opinions would assist the trier of fact. *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016 WL 7507848, at *16 (S.D. Fla. Aug. 1, 2016) (finding expert's opinions "helpful to the fact-finder because [he] can describe charts, checklists, and data in a meaningful way and provide context that is not apparent from the face of [the] documents"); *In re Com. Money Ctr., Inc.*, 737 F. Supp. 2d 815, 835 (N.D. Ohio 2010) ("Given the special expertise required to properly interpret the CMC financial statements, the Court believes that [the expert]'s testimony will be helpful to the jury.").

Plaintiffs' reliance on *Johnson v. Williams*, 15-13856, 2017 WL 11318160 (E.D. Mich. Aug. 7, 2017), is distinguishable from the facts present here. The *Johnson* court excluded expert testimony only to the extent it relied on tests and data that were never produced in discovery and could not be made available, and the portion of the decision Plaintiffs cite merely recites general legal standards for

9

expert opinions while acknowledging that whether those opinions are helpful to the trier of fact should be interpreted broadly. *Id.* at *4, 11.

Plaintiffs also incorrectly argue that the manufacturing and assembly line improvements mentioned by Mr. Walker do not address the underlying defect and that Mr. Walker does not attempt to explain how those changes "purport to remedy" the defect. Mr. Walker explicitly explains that the manufacturing changes were intended to "reduce particulate contamination," which he notes was expected to "reduce the risk of master cylinder failures over time." Walker Rpt. at 21. Particulate contamination during the manufacturing process was identified by Ford's engineers as one of the key causes of the master cylinder leaks during the relevant time frame. Ex. 3 at 80:9-16.

Next, Plaintiffs assert that Mr. Walker's suggestion the Brake System Defect was a common problem only among the recalled vehicle population is flawed because he did not identify the acceptable ambient level of master cylinder leaks. Here, Mr. Walker examined comparative and trend-over-time data. He testified that he examined Ford documents analyzing warranty data that demonstrated "an obvious level of ambient noise," and "obvious trends that showed the recall population had a certain response that was greater than the non-recalled populations." He further explained that the existence of ambient warranty rates was "similar to what I've experienced at other manufacturers doing similar work."

10

Finally, he explained that "[t]here isn't just one number" that defines ambient noise, but rather that it requires looking at warranty data over time to determine unexpected differences (spikes) in trends of vehicle performance over time.

Contrary to Plaintiffs' argument, Mr. Walker compared warranty rates in different vehicle populations to identify elevated return rates indicative of a potential defect. Plaintiffs' complaint that Mr. Walker's opinion is only based on warranty claims data is not well taken. At best, this argument goes to the weight to accord Mr. Walker's testimony, and not to its admissibility. *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 181 (6th Cir. 2009) ("Admissibility under Rule 702 does not require perfect methodology[.]"); *In re Scrap Metal*, 527 F.3d at 523 (allegations that an expert witness used "erroneous data," and therefore "necessarily produced an erroneous conclusion" are not enough to exclude an expert opinion).

Plaintiffs also attack Mr. Walker's opinion that the "question of alleged defect in proposed F-150 class vehicles' master cylinder is not a class-wide question with entirely common evidence" as an improper "legal conclusion." This aspect of Plaintiffs' present motion has merit. "The principle that an expert may not make legal conclusions is indeed well established." *Jones v. Pramstaller*, 874 F. Supp. 2d 713, 720 (W.D. Mich. 2012) (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994)). While Mr. Walker may offer opinions regarding

11

similarities and differences among the brake master cylinders in Class Vehicles, he cannot offer legal opinions as to whether use of Rule 23's class mechanism is appropriate in this case.

Ford conflates expert opinions that may support a legal conclusion, which are generally permissible so long as they are reliable (e.g., whether the Class Vehicles' brake master cylinders have different designs), with opinions that are themselves legal conclusions, and thus inadmissible (e.g., whether the evidence Plaintiffs will use to prove their claims is common to class members). *See Berry*, 25 F.3d at 1353 ("We would not allow a fingerprint expert in a criminal case to opine that a defendant was guilty (a legal conclusion), even though we would allow him to opine that the defendant's fingerprint was the only one on the murder weapon (a fact)."). Mr. Walker's opinion about whether the existence of the defect is a common question, couched in the language of Fed. R. Civ. P. 23(a)(2), amounts to an impermissible legal conclusion and it will be excluded from trial.

## IV. CONCLUSION

Accordingly, for the reasons articulated above, Plaintiff's Motion to Exclude the Expert Testimony of James Walker, Jr. [ECF No. 152, 153] is GRANTED IN PART AND DENIED IN PART.

SO ORDERED.

Dated: December 16, 2022 /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys on December 16, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Deputy Clerk